# Exhibit 001



## AAA Case Number 01-18-0003-7337

### Veronica McCluskey

Claimant

v.

### Airbnb, Inc.

Respondent

### AWARD OF ARBITRATOR

Per their agreement and with the consent of the undersigned Arbitrator, both parties submitted dispositive motions, opposition to the other's motion, and replies. Claimant's motion was previously heard and denied, and on October 10, 2019, Respondent's motion heard telephonically. Michael Mogen appeared for Claimant Virginia McCluskey and Michele Floyd appeared for Respondent Airbnb, Inc. Having reviewed all of the briefs, declarations, and exhibits submitted by both parties in connection with this motion and having heard oral argument by counsel, the undersigned Arbitrator GRANTS the motion and issues his Award of Arbitrator as follows.

### IN GENERAL –THE NATURE OF THIS MOTION

This motion, as a dispositive motion, is in general designed as in effect a motion for summary judgment. In such a motion, the inquiry is whether there are any material facts that remain to be "tried" (i.e. heard and determined in an evidentiary hearing). The burden is thus on Respondent to establish by evidence that it is entitled to judgment as a matter of law. If Respondent does so, Claimant must then show that there are material facts that remain to be resolved or that she is entitled to prevail as a matter of law. If Claimant does so, Respondent then must demonstrate that Claimant's factual assertions are without evidence or legally insufficient to defeat Respondent's claim. See generally *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855-856.

While this motion is not an evidentiary hearing per se, Claimant is tasked with putting on sufficient evidence to justify an evidentiary hearing. If the Claimant cannot persuade the arbitrator that under the evidence she is arguably entitled to an award, or if the Respondent shows by undisputed evidence that it has a defense to the claim and is therefore entitled to an award, the arbitrator can in those circumstances grant the motion and issue an award in favor of the Respondent.

In the end, if the material facts are not in dispute, the party that demonstrates that she or it is entitled to an award as a matter of law will prevail on this motion. Since Claimant is not a moving party, a denial of Respondent's motion will simply leave the matter to an evidentiary hearing. However, if Respondent is the prevailing party, it is entitled to an award at this time, which is just a variant of the summary judgment proceeding in a court.

Here, the material evidence is not in substantial dispute. However, even if there was some dispute in the evidence, I believe that I have the power to weigh that evidence even at this juncture to see whether the Claimant has a claim that based upon the evidence, might prevail. In other words, even if the Claimant successfully raises a triable issue of fact, I can, if I find it appropriate, disregard that evidence because either I simply choose not to believe it, I decline to credit the evidence that supports the fact urged by Claimant, or find that the materiality of the fact is so tenuous that I as a practical matter elect to ignore it. As noted, the evidence that relates to the key factors upon which the issue is decided is not in dispute, but even if there were technically some disputed facts, they would not be enough to change the decision.

## SYNOPSIS OF MATERIAL FACTS

### 1. General Overview

The facts set forth here reflect my determination of those facts that collectively determine the outcome of this matter. I have not attempted to set forth all of the facts or even all of the material facts, but those that I think are the key facts that determined the outcome of this matter. Any fact not set forth here is not for that reason immaterial, as this recitation is not intended to be exhaustive. Any fact not recited here is deemed to have been found to support this ruling.

The vast bulk of the material facts come from the Declaration of Ms. McCluskey submitted in opposition to the motion. Some of the facts come from declarations submitted by Respondent that are not disputed by Claimant (mostly having to do with the nature of Airbnb and the use of its platform under the Terms of Service). A few facts are drawn from Claimant's brief in opposition to the motion, and of course I have reviewed the Terms of Service and other documentary evidence (including emails) submitted by both parties.

There are factual assertions in Claimant's brief for which there does not appear to be any supporting evidence (and in fairness, Claimant generally so recognizes). In the absence of such evidence, there is no inference that the facts exist and for that reason, there is in most cases no discussion of such asserted facts.

### 2. The Nature of Airbnb and its Platform

Airbnb is a well-known and often used computer-based matching service, not unlike Tinder or other dating match programs. Instead of prospective dates, Airbnb matches people who wish to rent all or part of their homes for short-term stays with vacationers,

business people, or others looking for an attractive property to rent for a short time. There is no charge to users of the system, although Respondent gets a portion of the rental price as its fee. An ancillary company, Airbnb Payments, Inc. receives the initial deposit and future payments and distributes them to the host less its commission. Respondent does not deal with rents.

The Airbnb platform is based upon a contract between Respondent and its users. This contract is reflected in Respondent's Terms of Service ("TOS"). The TOS govern the use of, and participation in, Respondent's platform designed to match people willing to rent out all or a portion of their homes to those who are willing to rent for a short time all or a portion of someone's home, either while on vacation or temporary business.

While there was a question as to which version of the TOS is applicable here (version 6 or 7), I find that version 6 is the applicable version, as that was the version that existed at the time of the events that are material here. All further references to the TOS are to version 6 (which is Exhibit J to the Declaration of Kyle Miller submitted by Respondent in the Superior Court action prior to this arbitration). For the purposes of this motion, there is no substantive difference between the two versions.

Airbnb is purely a matching service. It does not get involved in the setting of prices or the terms of any agreement between the homeowner, called a "host," and the user. It simply lists properties available and puts the potential parties in touch with one another. The terms of the rental, if a rental results, are purely the result of negotiations between the host and the user, in which Airbnb is not involved.

The TOS also provides for co-hosting, in which one host in effect "covers" for another host because the other host is unable to do so in person. Co-hosting is entirely a matter of agreement between the hosts with which Airbnb is not involved. It is analogous to a multiple listing guide in the real estate business or the New York Stock Exchange. Neither actually conducts the business of buying or selling (real estate or stocks), but merely furnishes a marketplace where others (buyers/sellers/brokers or stock purchasers or sellers) meet to conduct business. In some ways, it is like a matchmaking service like Tinder.

Hosts can achieve superior status on the Airbnb platform if they host enough users and meet other specified requirements. These are called "Superhosts" which can co-host for another host if that host is unable at any given time to personally perform the requirements of a host. The co-host relationship with the host is purely between the two of them, and Airbnb is not involved in that relationship.

### 3. Claimant Co-Hosts for the Hendricks

Claimant was prior to June 2017 a host and, in fact, a superhost. She had read and agreed to the TOS. Claimant rented rooms under two names, which was contrary to the TOS (see §14, 14th bullet point).

In May, 2017, Claimant was contacted by William and Roxanne Hendricks (unless specified otherwise, "Hendricks" shall refer to William Hendricks) via the Airbnb web portal and asked to serve as a co-host for Hendricks' property at 312 West 5th Street, Unit #705, Los Angeles, California ("the Property"). Hendricks was listed as a superhost on the Airbnb website. As the usual custom, rental payments were to be funneled through Airbnb Payments, Inc. and paid to Hendricks and Claimant according to the agreement between Hendricks and Claimant.

As part of Claimant's duties as a co-host, she opened letters and packages addressed to Hendricks and delivered to the Property and shipped them to the Hendricks' home in Iowa. On June 6, 2017, Claimant arrived at the Property and collected the mail and packages addressed to the Hendricks from the property management firm that had been holding them for Hendricks. When she opened one of the packages,[1] as was part of her duty as co-host, she found that it contained a number of prescription drugs that Hendricks acknowledged were his. He asked Claimant to give this package to a friend of his who would pick them up at the Property. Claimant refused. Hendricks then told Claimant that he would have someone pick up the package when Claimant was not there.

Claimant refused to meet with Hendricks or with any friend of Hendricks, including any person whom Hendricks asked pick up the package at the Property, and Claimant never did meet with Hendricks or anyone associated with Hendricks. She decided on June 6 that she wanted nothing more to do with Hendricks, including being a co-host for him. She never returned to the Property or provided any further service for Hendricks as a co-host.

### 4. Respondent Terminates Claimant's Use of the Airbnb Platform

On June 6, Claimant reported her find to Respondent, telling Respondent that she was ending her co-hosting relationship with Hendricks. According to Clamant, Respondent urged Claimant to continue as Hendricks' co-host until it could investigate the complaint and Hendricks asked Claimant to continue on for a month so Hendricks could secure a replacement co-host. While Claimant agreed to continue for a short time, that was entirely Claimant's decision, No one forced her to do so. Nothing of significance happened during that short additional period in June.

In the course of its investigation, Respondent learned that Claimant had made other complaints about co-hosts, including drug-related complaints. In addition, Claimant had maintained multiple Airbnb accounts in different names (which she admitted). Claimant made some disparaging remarks about Airbnb on her Twitter account. On June 21, Respondent terminated Claimant's Airbnb account so that she was thenceforth unable to utilize the Airbnb platform as a host or co-host.

Thereafter, Claimant recommenced her hosting service on Airbnb not in her own name, because she was not permitted to use the service, but under the name of her

---

[1] Claimant states that Hendricks asked Claimant to open packages.

attorney. That account apparently is still active.[2]

## ANALYSIS

### 1. Overview

Claimant contends that the termination by Respondent of her Airbnb account has cost her money as a host and co-host. The amount of her damages is not clear, but this motion is not the place to prove them. Whether she was damaged at all could be, however, an issue, because if she was not damaged, she has no viable claim against Respondent. See *Oasis West Realty LLC v. Goldman* (2011) 51 Cal.4th 811, 8221 [damages is one of the essential elements of a negligence or breach of contract claim].

Claimant contends that the TOS are unenforceable because Respondent is really a real estate broker operating without a license. She also claims that Respondent did not do a diligent investigation of her claim, did not protect Claimant from Hendricks, and in effect exposed Claimant to a dangerous situation. None of these contentions has any support in the evidence.

Everything Claimant did, she did on her own according to her own analysis of what was best for her. There is no evidence that (i) Claimant was in a dangerous situation, (ii) she was ever, or would ever be, in the physical presence of Hendricks (and there is no evidence that he was dangerous), or (iii) Respondent failed to investigate the claim. Claimant consistently violated the TOS by maintaining multiple Airbnb accounts and, after termination, getting around that termination by fraudulently using her lawyer as the name on what was really her account. Claimant has no equities here, assuming that the equities would play some part in the resolution of this claim.

Claimant ascribes to Respondent a desire to punish Claimant for her critical tweets and, at least by inference, Respondent's desire to protect Hendricks, a long-time customer of Respondent. This contention is meritless. Respondent is a large nationwide (indeed, worldwide) company that is hardly likely to be hurt by a few tweets from an individual host. There was no evidence that a single person ever read or believed any of Claimant's tweets or that Respondent cared anything about them (other than preferring, as any provider of service would, that a host would not criticize Respondent).

There is no evidence of any kind that Respondent terminated Claimant's account due to Claimant's adverse tweets or her reporting of her drug find to the police. The mere allegation that the termination was so motivated is not proof that it was, and nothing I have seen supports that allegation.

---

[2] Needless to say, this kind of arrangement triggers a number of ethical concerns, both as to counsel's use (or misuse) of the Airbnb platform to get around Respondent's decision to bar Claimant from use of the platform, but also as to counsel's relationship with his client. It is not within the scope of this arbitration to address those issues, but it is difficult to ignore them.

The key defenses asserted by Respondent are that (i) all of Claimant's claims are contractual, rather than tortious, (ii) the TOS specifically waive Claimant's rights to bring these claims and exonerate Respondent from any such claims, (iii) Respondent neither breached the TOS in some fashion nor otherwise did something wrong, and (iv) Claimant herself breached the terms of the TOS.

## 2. The Alleged Wrongful Acts are not Torts, but Breaches of Contract

No authority cited by Claimant even suggests that Respondent has a common law duty of care to Claimant apart from the TOS. The two parties do not interact at all except under the TOS. The only relationship is pursuant to the TOS, and that is a contract. There is no basis for finding that Respondent owed some common law duty not to terminate Claimant's use of the Airbnb platform or to do anything more than what it did.

Claimant cites the ancient case of *Nathan v. Locke* (1930) 108 Cal.App. 158 but to no avail. Even assuming that case, decided nearly ninety years ago, was still good law, it does not help Claimant. The quotation by Claimant from *Nathan* on p. 12-13 of her Opposition is incomplete. The whole quote is:

> In determining whether an action is on the contract or in tort the general rule is that the character of the action is to be determined by the nature of the grievance rather than by the form of the pleadings. Another rule which is universally accepted in determining the nature of an action of this kind is that when it is not clear to which class the action belongs it will ordinarily be construed as in contract rather than in tort. Id. at 161; citations omitted][3]

Even taking *Nathan* at face value, it is clear that the "nature of the grievance" here is entirely contractual. Nothing in Claimant's explanation of why she believes the claim is a common law negligence claim is persuasive. The only relationship arises from Claimant's election to use the Airbnb platform according to the TOS, which she admittedly accepted. There is no relationship between the parties outside of the TOS or the Airbnb platform. This is a legal issue to be determined as a matter of law by the Arbitrator, and the determination is that the claims asserted by Claimant arise solely from the contractual relationship between Claimant and Respondent.

## 3. There is no Breach of the TOS

Claimant contends that the TOS required Respondent to permit Claimant to continue to use the Airbnb platform and that termination by Respondent of Claimant's rights constitute a breach of the TOS. This seems to be the heart of the dispute.

There is nothing in the TOS that precludes Respondent from deciding who and under what terms anyone may utilize its platform.  Respondent did not do anything else that could

---

[3] Claimant made the whole process of analyzing her legal position more difficult by failing to use the official citations of cases, often referring only to P. and P2nd. Citations, as with *Nathan*. Moreover, the absence of citation to any case even within a half century suggests that no such authority exists.

possibly be characterized as a breach of contract. Claimant on her own made the decision to become a co-host for Hendricks and to terminate that relationship. She never saw or was in physical proximity of Hendricks. Claimant's argument seems to hinge on her contention that the TOS are unenforceable for several reasons. That claim will be addressed in the next section below.

Every contract, including the TOS, has an implied covenant of good faith and fair dealing. That covenant requires each party to avoid doing anything that unreasonably prevents the other party from enjoying the benefits of the agreement. *Sheppard v. Morgan Keegan & Co.* (1990) 218 Cal.App.3rd 61, 66-67. There is nothing about Respondent's acts that constitute an absence of good faith. Respondent had a right to terminate Claimant's participation in the Airbnb platform, which it did. While it did not need any specified ground to do so, it had several grounds, including Claimant's prohibited use of multiple accounts (see §14 bullet point 14 of the TOS).

In any event, there can be no implied covenant that is inconsistent with the express terms of the contract. *Pasadena Live, LLC v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1094 ["The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."].

The TOS gives Respondent the right to terminate Claimant's use of the Airbnb platform for any reason, but certainly for breach of the TOS. There can be no implied covenant to prevent Respondent from doing just what the TOS give it the right to do. Claimant's multiple accounts (one surreptitiously through her lawyer), which are forbidden, constitute a breach of the TOS that would justify Respondent in terminating Claimant's use of the platform if a justification were required. There is no evidence that would support an excuse for that breach by Claimant.

Moreover, because the TOS are enforceable according to their terms, Claimant is in breach of the agreement, which breach precludes Claimant from enforcement of the agreement in any event.

## 4. The TOS are Legal and Enforceable

Claimant makes a series of claims that the TOS are illegal, and therefore unenforceable. None are persuasive.

First, Claimant contends that because Respondent's actions constituted gross negligence, that overrode the exculpatory provisions of the TOS. She cites *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 753, *Rosencrans v. Dover Images Ltd.* (2011) 192 Cal.App.4gh 1072-1086-1087 and *Jiminez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 557.

First, as noted above, none of Claimant's claims are claims of negligence, so the concept of gross negligence does not even apply. Second, none of the cases cited by Claimant is applicable here, because in each one, the facts led to an assumption by the court that the underlying actions by the defendant were violations of the duty of care, or negligence. In

*Santa Barbara,* a camp counselor with a common law duty to supervise developmentally deprived children ignored a swimming child, who drowned. In *Rosecrans,* a race sponsor negligently failed to provide caution flaggers, resulting in injury to a driver. In *Jiminez,* a health club failed to provide sufficient clearance around a treadmill, resulting in injury when the plaintiff fell off.

The question in each case was whether the kind of negligence was ordinary or gross negligence. Each case involved a general standard of care which existed in the nature of the activity, the only question being whether the breach of that standard rose to the level of gross negligence. We do not have that situation here. There is no custom or general standard of care applicable to Airbnb, and Claimant has provided no evidence of one. In fact, the very nature of the program is that Respondent has no duty, common law or otherwise, to the users or hosts other than as set out in the TOS.

Even were negligence an issue, Claimant has not provided any evidence that Respondent was in any way negligent. Claimant was never in the same room as Hendricks nor was exposed to Hendricks. Claimant herself made the decision to co-host for Hendricks without any involvement by Respondent, and the decision to terminate her relationship with Hendricks, again without any involvement of Respondent. There is no other action, apart from the termination of her account, that Claimant even asserts, much less has evidence to support, that Respondent did that could even arguably be negligent. Without any evidence of negligence, gross negligence is out of the question and is certainly not an arguable basis for holding that the exculpatory language of the TOS is ineffective.

Second, Claimant contends that the TOS are unenforceable under Civil Code §1668 and because they are unconscionable under Civil Code §1670.5 (citing *Tunkl v. Regents of the University of California* (1963) 60 Cal.2d 92). This argument is founded upon the contention that Airbnb "affects the public interest." To argue that a matchmaking program for vacationers somehow affects the public interest is absurd. Section 1668 is inapplicable, as that statute refers to exculpation from "fraud, willful injury… or violation of law…" none of which is involved here.

Third, Claimant contends that the exculpatory provision does not apply to her because there is no mention of a co-host in the provision.  This argument is unavailing. The contract will be construed to accomplish the intent of the parties. The contract will be taken as a whole, with words construed to support the other words. It will be construed to be reasonable rather than lead to an absurdity (e.g. it covers "hosts" but not "co-hosts" who are by definition "hosts"). These are basic "canons of construction" set forth in Civil Code §1635 et seq. The provision clearly is intended to cover and does cover co-hosts.

The next contention is that the contract is unconscionable under *Amendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83. Without going through the detail, the exculpatory language is neither procedurally nor substantively unconscionable.

Procedurally, the exculpatory provision is set out in caps, about as prominent as possible, under the bold heading "Disclaimers." It is impossible to ignore or miss, and the purport is clear. Claimant admits that she read the TOS, so she knew of the provision.

Substantively, while broad, the provision is fair given the nature of the service provided by Respondent. As noted earlier, the service is really nothing more than an introduction opportunity for potential buyers of short term stays to find sellers of short term properties. Respondent does virtually nothing, and Respondent has no control over the parties. The validity of such exculpatory clauses has been repeatedly affirmed in circumstances like those here. See, e.g., *Lewis v. Youtube LLC* (2015) 244 Cal.App.4th 118 ["Limitation of liability clauses have long been recognized as valid in California" (internal quotation marks and citation omitted]; *Benedek v. PLC Santa Monica, Inc.* (2002) 104 Cal.App.4th 1351; *Lund v. Bally Aerobic Plus, Inc.* (2000) 78 Cal.App.4th 733.

Finally, Claimant contends that the contract is unenforceable because Respondent is in effect a real estate broker acting without a license. The argument fails for several reasons. First, Respondent does not qualify as a real estate broker or require a license to operate its program. Second, Respondent is not here making a claim based upon the TOS, but only asserting a defense. If the TOS are unenforceable, Claimant would have no claim at all, since her use of the Airbnb platform is solely pursuant to the TOS. If the TOS do not govern the relationship, there is no relationship and Respondent would have no duty of any kind to Claimant. In effect, Claimant would be assuming the risk of whatever happened, since Respondent would have no duty to police the platform or do anything about Claimant's claims.

In any case, Respondent is not acting as a real estate broker in operating the Airbnb program. Claimant contends that Respondent meets the definition of real estate broker as set forth in Business & Professions Code §10131(b) ("§ 10131(b)"), which states:

> A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others:
> . . .
> (b)  Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase, or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities.

Respondent does not, according to the undisputed evidence, own any of the properties listed on the Airbnb website and does not lease or rent or offer to lease or rent or solicit listings of places for rent. Respondent's services are limited to providing a website by which hosts can list their properties and the terms of any rental and a set of regulations

that govern the activities of the hosts and guests in using the website.[4]  Respondent charges for the use of its website, but that is not a commission for negotiating a transaction in which Respondent is not otherwise involved.

The only service that Respondent is alleged by Claimant to perform that might fall within the definition in §10131(b) is the collection of rents. However, this is not done by Respondent, but by Airbnb Payments, Inc. No claim has been made and there is no evidence that the two entities are alter egos or that one is liable for the acts of the other.

Respondent contends that in operating the Airbnb program, it does not fall within the scope of §10131(b) because, at least as far as Claimant goes, it deals in tenancies of thirty days or less and is thus exempted from compliance with the statute by Bus. & Prof. C. §10131.01(a)(2). Since Claimant never rented her property for more than thirty days, this exemption seems to apply here.

The reference in §10131(b) to collection of rents does not and was not intended by the Legislature to apply to this form of business conducted by Respondent. Real estate brokers often make a business of managing others' properties, which includes seeking tenants, terminating leases or evicting tenants, responding to tenants' inquiries and complaints, making sure maintenance is done, keeping adequate books and records, and overall managing the property on a commission or fee basis.

Respondent does not appear to do any of those things, and certainly not in a way that is intended by §10131(b). Even if Respondent did collect the rents, which it does not, that effort is solely for the purpose of paying its own fees. It remits the remainder to the host. Respondent is not responsible for managing the properties, doing maintenance, paying taxes, fees, or other charges on the property, or doing anything that a property manager would do. Respondent does not secure tenants for the property or seek to collect rents that are not paid or late.

For these reasons, I find that §10130 was not intended to apply to a business such as that of Respondent, but to the classical real estate manager. Respondent's business model is relatively new, and there is no reason to believe that the Legislature intended §10130 to apply to that kind of business. Thus, Respondent's business is not subject to §10130 and does not require a real estate broker's license in California in order to conduct its business. As discussed above, there is no other basis for finding the exculpatory language of the TOS unenforceable, and they bar all of Claimant's claims.

---

[4] There are interesting analogies to the Airbnb form of business that would result in the same conclusion.  For instance, matchmaking services like Tinder, OK Cupid and the like simply match people with common interests – it is up to the members to arrange to meet and establish the relationship. In a different realm, Respondent is like Lloyd's of London or the New York Stock Exchange. Both simply provide a marketplace – a place for buyers and sellers of insurance or of stocks to meet and negotiate sales. Neither Lloyd's nor the NYSE actually buy or sell on that marketplace; they merely furnish a building (the alternative to a website) and some rules, but otherwise leave the actual business to the participants.

### 5. The Claims of Negligence and Intentional Infliction of Emotional Distress

As discussed above, there is no basis for the assertion that Respondent had some kind of common law duty not to terminate Claimant's access to the Airbnb platform. It is purely a contractual right, if it exists, and the contract (the TOS) gives Respondent the right to terminate that access. Absent negligence, there can be no gross negligence.

The claim for intentional infliction of emotional distress is meritless. There is nothing outrageous as that term is used in this context about a decision, even if wrong, to terminate Claimant from the Airbnb program, especially given the circumstances here. The court-created tort of intentional infliction of emotional distress was created to have a remedy for a truly terrible, outrageous act that goes far beyond the bounds of human decency. *Christensen v. Superior Court* (1991) 54 Cal. 868, 903. That is not by a long shot the case here, even assuming that Claimant had some arguable claim that this tort even applies in a purely contractual setting (it does not).

### CONCLUSION

In view of the foregoing, I find that there is no genuine dispute as to the material facts and that based upon the undisputed facts, Respondent is entitled to an award as a matter of law. Therefore, Respondent's motion for an award as a matter of law is GRANTED.

### AWARD

Claimant Veronica McCluskey is awarded $-0- as against Respondent Airbnb, Inc. Per the AAA Consumer Rules, the fees of the AAA in the sum of $16,375 and the fees of the Arbitrator in the sum of $16,350.60 shall be borne as incurred.

This award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby denied.

Dated:  October 28, 2019

_____
Alan R. Jampol, Arbitrator

Exhibit 002



177 Post Street, Suite 650
San Francisco, California 94108
(415) 549-0580


Michele Floyd
415-504-3070 direct
mfloyd@srclaw.com

March 7, 2019

**VIA EMAIL:** LuciaMacias@adr.org

Lucia Olais-Macias
Manager of ADR Services
American Arbitration Association
Wester Case Management Center
45 E River Park Place West, Suite 308
Fresno, CA 93720

     Re:  Case No. 01-18-0003-7337:  Veronica McCluskey v. Airbnb, Inc.; Joint Request for Dispositive Motions

Dear Ms. Olais-Macias:

     Pursuant to the Pre-Hearing Order No. 2 issued on February 21, 2019 in the above-referenced matter, the parties hereby submit the following Joint Request for Dispositive Motions for transmission to the Arbitrator:

     **Joint Statement**

     The parties agree that dispositive motions on certain issues may streamline the arbitral hearing and reduce costs.  The parties therefore agree and respectfully request that the Arbitrator issue an order permitting the parties to file the dispositive motions described below.  The parties further request that, in the event that the Arbitrator is inclined to deny this request as to any of the motions described below, that the proposing party be given the opportunity to respond to the **Arbitrator's concerns with a brief of 5 pages or less.**

     As specified in Pre-Hearing Order No. 2, if permission to file is granted, then the parties will meet and confer and file a joint stipulation setting forth a mutually-agreeable briefing schedule and will advise the Arbitrator of any requested modifications to discovery or other existing deadlines.  Unless otherwise ordered by the Arbitrator, this joint stipulation will be filed within fourteen (14) days of the order granting permission to file dispositive motions.

Lucia Olais-Macias
American Arbitration Association
Page 2

Nothing in this Joint Request shall operate as a waiver or concession on the part of either party as to the merits of the dispositive motions described below.

**Brief Statement Describing Claimant's Requested Dispositive Motion.**

Veronica McCluskey ('Veronica') respectfully requests permission to file a motion for summary judgment on the issue of whether all her claims arise out of illegal transactions with Airbnb which is not a proper subject matter for arbitration, thus any award springing out of an illegal contract, which no arbitration tribunal should enforce, cannot stand on any higher ground than the contract itself.  Veronica contends the agreement to arbitrate is void under California law as the contract as a whole (including its arbitration provision) and invalid because at all times Airbnb was unlawfully engaging in the business of and under the capacity as a real estate broker without a real estate license.

Airbnb introduced Veronica to William and Roxanne Hendricks ("The Hendricks") and soon afterwards Veronica accepted an employment position to work for the Hendricks to manage their Los Angeles Airbnb rental property located in downtown Los Angeles. Veronica caught William Hendricks smuggling illegal drugs through the United States Postal Service and he immediately tried to involve her in his criminal enterprise including asking her to meet a complete stranger at the Airbnb rental to enable him to transport the illegal drugs to another location. William Hendricks has admitted to shipping drugs through the mail on this occasion and other occasions as well. Veronica was also harassed and threatened, and Airbnb did nothing to protect her from such conduct. Veronica contacted Airbnb based on what transpired while working for the Hendricks out of fear for her safety and the safety of the general public and Airbnb took no action. Airbnb proceeded to deactivate her Airbnb Super Host account she took years to establish which essentially destroyed her co-host business which caused Veronica to suffer physical injuries including emotional distress as well as financial damages. Her short term rental business for her own properties was also disrupted and she suffered significant additional financial damages.

Veronica alleges the following claims:  (1) negligence; (2) violations of the Consumer Legal Remedies Act, Civ. Code sec. 1750 et seq.; (3) intentional infliction of emotional distress; and (4) breach of fiduciary duty against Airbnb.

Veronica contends Airbnb is a real estate broker under California Business and Professions  Code Section 10130 which states, "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department . . . ." Section 10131 further states: a real estate broker is defined as, among other things, "a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: . . . (b) leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities. (Bus. & Prof. Code, § 10131, subd. (b); Airbnb's

Lucia Olais-Macias
American Arbitration Association
Page 3

contracts specifically state that they collect rents for the rental of Airbnb hosts property to Airbnb guests and Veronica has rented to short and long term guests. Thus since Airbnb is collecting rents they are clearly a real estate broker under Section 10131 of the Bus. & Prof. Code. Airbnb also solicits listings of places for rent which independently qualifies Airbnb as a real estate broker under 10131.

Veronica also contends Airbnb is not exempt from the requirements of Section California Business and Professions Code Section 10130.  Section 10131.01 exempts from these restrictions: (1) the manager of a hotel [or] motel, or (2) any person or entity .. . who . . . solicits or arranges, or accepts reservations or money, or both, for transient occupancies described in Cal. Civil Code § 1940(b)(1)-(2)]. Bus. & Prof. Code,§10131.01. Section 1940(b) describes such occupancies as transient occupancies in a hotel, motel, residence club, or other facility that is subject to certain taxes, as well as occupancies at a hotel or motel where the innkeeper retains a right of access. Cal. Civ.Code § 1940(b). The City of Los Angeles imposes a 14% transient occupancy tax on the listing price (including cleaning fees) for stays of 30 nights or less.  Airbnb collects and remits the City transient occupancy tax [thus it is not Airbnb subject to the tax nor paying such taxes but it is the Airbnb hosts who are]. Airbnb is not the manager of a hotel or motel nor is Airbnb an entity who solicits or arranges, or accepts reservations or money, or both, for transient occupancies described in Cal. Civ. Code §1940(b)(1). Nor is Airbnb negotiating or accepting reservations for transient occupancies in a hotel, motel, residence club, or other facility that is subject to certain taxes, as well as occupancies at a hotel or motel where the innkeeper retains a right of access as described in Cal. Civ. Code § 1940(b)(2). Since Airbnb does not meet any of the exceptions under Cal. Civ. Code § 1940(b)(1) or (2), section 10131.01 does not exempt Airbnb from the restrictions of Cal. Bus & Prof. Code § 10130. Therefore Airbnb was unlawfully engaging in the business of and under the capacity as a real estate broker without a real estate license.

One who simply finds and introduces a prospective lessee to a person who wishes to lease his property need not be licensed by the state in order to recover a commission for his services. Such an intermediary is protected by the so-called 'finder's exception to the real estate licensing act. Airbnb is not subject to this exception as Airbnb collects rents from guests and remits the money less their fees to Airbnb hosts thus Airbnb's conduct is not limited to bringing hosts and guests together and Airbnb also manages relationships between hosts and guests after a booking. Thus Airbnb is not exempt from any licensing requirements under the "finder's exception."

Since the central purpose of any contract between Veronica and Airbnb were tainted with illegality, then the contract as a whole cannot be enforced. Any agreement between Veronica and Airbnb clearly define any and all duties between Veronica and Airbnb when she was to act as a "Host" or a "Guest" and the central purpose of the contracts governed the terms for "Hosts" and "Guests" which all involve Airbnb acting as a real estate broker. Since the central purpose of any agreement between Veronica and Airbnb is tainted with illegality, the contract as a whole cannot be enforced and her claims are not appropriate for arbitration.

Lucia Olais-Macias
American Arbitration Association
Page 4

Thus, Veronica respectfully contends that permitting her to file a motion for summary judgment on the issue of whether all her claims arise out of illegal transactions with Airbnb is a proper subject matter for arbitration would save significant time and expense for all parties.

### Brief Statement Describing Airbnb's Proposed Dispositive Motion.

Airbnb provides an online platform that connects third parties who wish to offer their unique listings (called "Hosts") with third-party travelers seeking to book listings (called "Guests). Hosts are responsible for listing their accommodations on the platform, including deciding to whom, when and on what material terms they offer their accommodations. Airbnb's website allows Hosts to authorize other Airbnb users—who are often experienced Hosts, themselves—to help them by accepting booking requests, messaging and welcoming Guests, and updating listing fees and availability for the Host's accommodations. This is referred to as "co-hosting." The relationship between Airbnb and its users is governed by Airbnb's Terms of Service ("TOS"). Veronica McCluskey ("Claimant"), an Airbnb Host and co-host, has admitted in sworn statements and testimony that she agreed to the TOS on at least four separate occasions.

The TOS gives Airbnb discretion to terminate user accounts for a number of reasons, including a good faith belief that termination is reasonably necessary to protect Airbnb, its members or third parties:

### TOS § 15 Term and Termination, Suspension and other Measures

. . . .

15.4  Airbnb may immediately, without notice, terminate this Agreement if (i) you have materially breached your obligations under these Terms, the Payments Terms, our Policies or Standards, (ii) you have violated applicable laws, regulations or third party rights, or (iii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties (for example in the case of fraudulent behavior of a Member).

15.5  In addition, Airbnb may take any of the following measures (i) to comply with applicable law, or the order or request of a court, law enforcement or other administrative agency or governmental body, or if (ii) you have breached these Terms, the Payments Terms, our Policies or Standards, applicable laws, regulations, or third party rights, (iii) you have provided inaccurate, fraudulent, outdated or incomplete information during the Airbnb Account registration, Listing process or thereafter, (iv) you and/or your Listings or Host Services at any time fail to meet any applicable quality or eligibility criteria, . . ., or (vii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties, or to prevent fraud or other illegal activity:

Lucia Olais-Macias
American Arbitration Association
Page 5

- refuse to surface, delete or delay any Listings, Ratings, Reviews, or other Member Content;
- cancel any pending or confirmed bookings;
- limit your access to or use of the Airbnb Platform;
- temporarily or permanently revoke any special status associated with your Airbnb Account; or
- temporarily or in case of severe or repeated offenses permanently suspend your Airbnb Account.

In case of non-material breaches and where appropriate, you will be given notice of any intended measure by Airbnb and an opportunity to resolve the issue to Airbnb's reasonable satisfaction.

15.6  If we take any of the measures described above (i) we may refund your Guests in full for any and all confirmed bookings that have been cancelled, irrespective of preexisting cancellation policies, and (ii) you will not be entitled to any compensation for pending or confirmed bookings that were cancelled.

15.7  When this Agreement has been terminated, you are not entitled to a restoration of your Airbnb Account or any of your Member Content. If your access to or use of the Airbnb Platform has been limited or your Airbnb Account has been suspended or this Agreement has been terminated by us, you may not register a new Airbnb Account or access and use the Airbnb Platform through an Airbnb Account of another Member.

Likewise, the TOS includes a limitation of liability and a damages waiver, which clearly and conspicuously bars all forms of indirect damages:

**TOS § 17 Liability**

17.1 Unless you reside in the EU, you acknowledge and agree that, to the maximum extent permitted by law, the entire risk arising out of your access to and use of the Airbnb Platform and Collective Content, . . . or use of any other Host Service or any other interaction you have with other Members whether in person or online remains with you. Neither Airbnb nor any other party involved in creating, producing, or delivering the Airbnb Platform or Collective Content will be liable for any incidental, special, exemplary or consequential damages, including lost profits, loss of data or loss of goodwill, service interruption, computer damage or system failure or the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress arising out of or in connection with (i) these Terms, (ii) from the use of or inability to use the Airbnb Platform or Collective Content, (iii) from any communications, interactions or meetings with other Members or other persons with whom you communicate, interact or meet with as a result of your use of the Airbnb Platform, or (iv) from your publishing or booking of a Listing, including the provision or

Lucia Olais-Macias
American Arbitration Association
Page 6

use of a Listing's Host Services, whether based on warranty, contract, tort (including negligence), product liability or any other legal theory, and whether or not Airbnb has been informed of the possibility of such damage, even if a limited remedy set forth herein is found to have failed of its essential purpose. . . . in no event will Airbnb's aggregate liability arising out of or in connection with these Terms and your use of the Airbnb Platform . . . in connection with any . . . Host Service, or interactions with any other Members, exceed the amounts . . . paid by Airbnb to you in the twelve (12) month period prior to the event giving rise to the liability, or one hundred U.S. dollars (US$100), if no such payments have been made, as applicable. The limitations of damages set forth above are fundamental elements of the basis of the bargain between Airbnb and you. Some jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, so the above limitation may not apply to you. . . .

To briefly describe the instant dispute, Claimant has held several Airbnb user accounts under which she has acted as both a Host, listing her own properties on Airbnb, and as a co-host for other users' Airbnb listings.  In May 2017, Claimant claims that she was contacted through Airbnb's online platform by William and Regina Hendricks (the "Hendricks"), a married couple who were interested in hiring Claimant to act as an Airbnb co-host for a property of theirs in Los Angeles (the "Property"), an offer Claimant apparently accepted.

Within a month, the co-hosting relationship soured.  On or about June 16, 2017, the Hendricks revoked Claimant's co-hosting access to the Property on the Airbnb platform and effectively fired her for poor customer service.  Claimant responded by contacting Airbnb, claiming that she was owed $89 in co-hosting fees, and also alleging that she had discovered that William Hendricks was running a "drug smuggling ring" from the Property.  The dispute was escalated to the appropriate teams within Airbnb, who promptly investigated.  The results of this investigation revealed that William Hendricks had a clean background check and no prior reports or incidents.  By contrast, Claimant had lodged similar drug-related allegations in the past, without sufficient substantiation, against an unrelated Airbnb Guest.  Airbnb ultimately decided to terminate Claimant's account in accordance with the TOS. Following the termination of her account, Claimant consistently attempted to circumvent her account termination by, among other things, attempting to create a new account under a false name and using her attorney's Airbnb account to list her properties. The TOS expressly prohibits this conduct.  *See* TOS §15.7.

Claimant seeks to recover no less than $3,000,000 as compensation for Airbnb's termination of her Airbnb account.  Specifically, Claimant alleges causes of action for:  (1) Negligence; (2) violations of the Consumer Legal Remedies Act, Civ. Code sec. 1750 *et seq.* ("CLRA"); (3) Intentional Infliction of Emotional Distress; and (4) Breach of Fiduciary Duty. On these causes of action, Claimant claims various categories of damages, as follows:

(1) Lost income from reservations that were cancelled when Claimant's Airbnb account was terminated (Cpt., ¶¶ 74-76);

(2) Lost future income from her Airbnb listings, as well as potential co-hosting relationships (*Id.*);

Lucia Olais-Macias
American Arbitration Association
Page 7

      (3) Emotional distress damages (Cpt., ¶¶ 81-83);
      (4) Punitive damages (Cpt., ¶ 84); and,
      (5) Restitution (Cpt., at Prayer).

To support these claims and damages, Claimant has represented that she intends to call a medical expert to testify on her behalf, requiring the parties to engage in expert discovery in addition to fact discovery. All of these categories of damages, however, are contractually barred and discovery and continued proceedings based on these contractually barred theories will cause needless delay and expense. In an effort to streamline the hearing in this action and reduce the burdens of discovery, Airbnb respectfully requests permission to file a dispositive motion on the following grounds:

    (1) Most or all of **Claimant's claimed damages in this action are** contractually barred and must be dismissed. Airbnb will move for summary judgment or dismissal of the bulk of **Claimant's damages claims on the grounds that the TOS**—to which Claimant admits she repeatedly assented—contains a damages waiver that clearly and conspicuously bars all "incidental, special, exemplary or consequential damages, including lost profits, loss of data or loss of goodwill, service interruption, computer damage or system failure or the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress . . . ." TOS ¶ 17.1. Because there is no dispute that Claimant assented to the TOS, and because the damages waiver is fully enforceable as a matter of law, most or **all of Claimant's claimed damages must be dismissed**.

    (2) Airbnb will move for summary judgment or dismissal of **Claimant's** CLRA claim, as well as her request for damages in connection therewith, because Claimant failed to satisfy mandatory statutory notice and venue affidavit requirements. Cal. Civ. Code §§ 1780(d), 1782. Because Claimant has never provided any notice at all, let alone one that meets the statutory requirements, and did not file the required venue affidavit along with her Complaint, her CLRA claim must be dismissed.

    Permitting a dispositive motion on these grounds would be in the interests of justice, fairness, and efficiency, and would advance the goals of arbitration. These questions are contractual or statutory in nature and require little, if any, fact discovery to resolve. Moreover, resolution of these questions will substantially narrow both the issues for hearing and the discovery efforts required, saving time and resources that may be otherwise wasted. For example, if **Claimant's CLRA claim is statu**torily barred, and if her damages are either contractually barred or limited, then there will be no need to engage in wasteful and expensive **expert or fact discovery into Claimant's alleged** consequential, emotional distress, or other indirect damages.

    For these reasons, Airbnb respectfully requests permission to file a dispositive motion on the above grounds in the interests of justice and efficiency, and consistent with the objectives of arbitration.

Lucia Olais-Macias
American Arbitration Association
Page 8

Respectfully Submitted,

_____
Michele Floyd
Jacqueline Young
Sacks, Ricketts & Case LLP
177 Post Street, Ste. 650
San Francisco, CA 94108
Email: mfloyd@srclaw.com
        jyoung@srclaw.com
Attorneys for Airbnb, Inc.


_/s/ Michael Mogan_____
Michael Mogan, Esq.
Law Office of Michael Mogan P.C.
4470 West Sunset Blvd., Ste. 90256
Los Angeles, CA  90027
Email: mm@michaelmogan.com
Attorney for Plaintiff
Veronica McCluskey

# Exhibit 003



177 Post Street, Suite 650
San Francisco, California 94108
(415) 549-0580

Michele Floyd
415-504-3070 direct
mfloyd@srclaw.com

December 14, 2018

**VIA EMAIL:** LuciaMacias@adr.org

Lucas Olais-Macias
Manager of ADR Services
American Arbitration Association
Wester Case Management Center
45 E River Park Place West, Suite 308
Fresno, CA 93720

Michael Mogan, Esq.
Law Office of Michael Mogan P.C.
4470 West Sunset Blvd., Ste. 90256
Los Angeles, CA  90027
Email: mm@michaelmogan.com

    Re:  Case No. 01-18-0003-7337:  Veronica McCluskey v. Airbnb, Inc.; Answering Statement

Dear Mr. Olais-Macias:

    This firm represents Airbnb, Inc. in the above-referenced matter.  In response to your November 30, 2018, correspondence and to Ms. McCluskey's Demand for Arbitration ("Demand") dated October 08, 2018, Airbnb, Inc. ("Airbnb") hereby denies the allegations set forth in the Demand, and asserts affirmative defenses as follows:

### Background and General Denial.

    Airbnb provides an online platform that connects third parties who wish to offer their unique listings (called "Hosts") with third-party travelers seeking to book listings (called "Guests").  Hosts are responsible for listing their accommodations on the platform, including deciding to whom, when and on what material terms they offer their accommodations.  Airbnb's website allows Hosts to authorize other Airbnb users—who are often experienced Hosts, themselves—to help them by accepting booking requests, messaging and welcoming Guests, and updating listing fees and availability for the Host's accommodations.  This is referred to as "co-

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 2

hosting."  The relationship between Airbnb and its users is governed by Airbnb's Terms of
Service ("TOS"), which Airbnb updates from time to time.  Veronica McCluskey ("Claimant")
agreed to the TOS on at least four separate occasions: First, when she created her Airbnb
account, and then three additional times thereafter, in connection with various TOS updates.
Airbnb's records indicate that Claimant's account was terminated in accordance with the TOS.
A true and correct copy of the applicable TOS is attached hereto as **Exhibit 1** and incorporated
herein by this reference.  Also relevant are Airbnb's published "Community Standards" which
are attached hereto as **Exhibit 2** and incorporated herein by this reference.

Claimant is an Airbnb Host and co-host and seeks to recover $3,000,000 as compensation
for Airbnb's termination of her Airbnb account.  As demonstrated in the Complaint for Damages
submitted along with her Demand, she asserts claims for:  (1) Negligence; (2) Violations of
Consumer Legal Remedies Act, Civ. Code 1750 *et seq.*; (3) Intentional Infliction of Emotional
Distress; and (4) Breach of Fiduciary Duty.  The Demand also seeks attorneys' fees, interest,
arbitration costs, emotional distress damages, and punitive damages.

The TOS gives Airbnb discretion to terminate user accounts at any time. Airbnb's
decision to terminate Claimant's account was consistent with the various provisions of the TOS
and was therefore well within its contractual discretion. Additionally, Claimant's request for
damages is precluded in whole or in part because the TOS expressly disclaims liability for
damage resulting from account termination among other things, and limits any recoverable
damage to direct damages in an amount not to exceed revenue generated through the platform
during the twelve months preceding the incident.  Incidental, special, exemplary and
consequential damages are contractually barred.  Accordingly, the clear TOS provisions provide
a complete defense to Airbnb, and Airbnb therefor denies each and every allegation of the
Demand and further denies any liability whatsoever to Claimant.

Airbnb reserves the right to amend this Answering Statement to address any specific
allegations that Claimant may raise during the course of these proceedings.

**Affirmative Defenses.**

1.  Failure To State A Claim Upon Which Relief Can Be Granted.  Claimant's Demand fails
    for the following reasons:

    (a)  Claimant's Demand does not identify her claims with reasonable particularity;

    (b)  Claimant's Demand does not state any legally recognizable claim and makes
         only conclusory statements concerning Airbnb's alleged legal liability;

    (c)  Claimant's Demand does not allege any damages that were proximately
         caused by Airbnb or for which Airbnb is legally responsible;

30

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 3

    (d) Each of Claimant's claims for relief as well as the damages she seeks are barred by the TOS: including but not limited to, sections 15.4, 15.5, 15.6, 15.7, 16, and 17.1; and

    (e) Claimant's Demand fails because Claimant did not fully comply with the conditions of the TOS and all terms incorporated therein.  *See* **Exhibit 2** (Community Standards, generally and at sections entitled "Security," "Fairness," and "Authenticity"); *see also* **Exhibit 1** (TOS, generally and at section 14; incorporating Community Standards into TOS).

2. <u>Contractual Disclaimers.</u>  The relationship between Claimant and Airbnb is governed by the TOS, which, by its plain terms, expressly disclaim liability under the circumstances here and, to the extent the disclaimer is not complete, limits Airbnb's liability. Relevant contractual provisions include, but are not limited to:

**TOS § 16. Disclaimers**

If you choose to use the Airbnb Platform or Collective Content, you do so voluntarily and at your sole risk. The Airbnb Platform and Collective Content is provided "as is", without warranty of any kind, either express or implied.

You agree that you have had whatever opportunity you deem necessary to investigate the Airbnb Services, laws, rules, or regulations that may be applicable to your Listings and/or Host Services . . . .

If we choose to conduct identity verification or background checks on any member, to the extent permitted by applicable law, we disclaim warranties of any kind, either express or implied, that such checks will identify prior misconduct by a Member or guarantee that a Member will not engage in misconduct in the future.

You agree that some . . .  Host Services may carry inherent risks, and by participating in those Host Services, you choose to assume those risks voluntarily. . . . You assume full responsibility for the choices you make before, during and after your participation in a Host Service. . . .

                              \* \* \*

**TOS § 17 Liability**

17.1 Unless you reside in the EU, you acknowledge and agree that, to the maximum extent permitted by law, the entire risk arising out of your access to and use of the Airbnb Platform and Collective Content, . . . or use of any other Host Service or any other interaction you have with other Members whether in person or online remains with you. Neither Airbnb nor any other party involved in

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 4

creating, producing, or delivering the Airbnb Platform or Collective Content will be liable for any incidental, special, exemplary or consequential damages, including lost profits, loss of data or loss of goodwill, service interruption, computer damage or system failure or the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress arising out of or in connection with (i) these Terms, (ii) from the use of or inability to use the Airbnb Platform or Collective Content, (iii) from any communications, interactions or meetings with other Members or other persons with whom you communicate, interact or meet with as a result of your use of the Airbnb Platform, or (iv) from your publishing or booking of a Listing, including the provision or use of a Listing's Host Services, whether based on warranty, contract, tort (including negligence), product liability or any other legal theory, and whether or not Airbnb has been informed of the possibility of such damage, even if a limited remedy set forth herein is found to have failed of its essential purpose. . . . in no event will Airbnb's aggregate liability arising out of or in connection with these Terms and your use of the Airbnb Platform . . . in connection with any . . . Host Service, or interactions with any other Members, exceed the amounts . . . paid by Airbnb to you in the twelve (12) month period prior to the event giving rise to the liability, or one hundred U.S. dollars (US$100), if no such payments have been made, as applicable. The limitations of damages set forth above are fundamental elements of the basis of the bargain between Airbnb and you. Some jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, so the above limitation may not apply to you. . . .

3. Waiver and/or Estoppel.  Claimant's Demand and her request for damages is barred because Claimant has waived any claim that she had against Airbnb, to the extent she had any such claim (which Airbnb denies), through, among other things, her assent to the operative TOS which expressly limits warranties and liability, as stated above. Moreover, Claimant's failure to comply with the TOS, including but not limited to her breach of the Community Standards, waived any contractual right she may have had and/or she is estopped from asserting the same.

4. Unclean Hands.  Claimant's Demand and claims are barred because of Claimant's unclean hands.  Among other acts, Claimant made willful and fraudulent attempts to circumvent the termination of her account by opening a new Airbnb account under a fake name and then surreptitiously using her attorney, Michael Mogan's Airbnb profile to continue to list Claimant's accommodations on Airbnb.

5. Comparative Fault.  Claimant is precluded from recovery because her alleged losses, if any, were caused by her own actions and/or omissions.

6. Causation.  Claimant is precluded from recovery because Airbnb did not proximately/legally cause any of Claimant's alleged losses, if any.

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 5

7. <u>Consent.</u>  Claimant consented to and approved all of the acts and omissions about which she now complains as to Airbnb, by means of, in addition to other manifestations of consent, her assent to the operative TOS and in particular the following provisions:

> 15.4  Airbnb may immediately, without notice, terminate this Agreement if (i) you have materially breached your obligations under these Terms, the Payments Terms, our Policies or Standards, (ii) you have violated applicable laws, regulations or third party rights, or (iii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties (for example in the case of fraudulent behavior of a Member).

> 15.5  In addition, Airbnb may take any of the following measures (i) to comply with applicable law, or the order or request of a court, law enforcement or other administrative agency or governmental body, or if (ii) you have breached these Terms, the Payments Terms, our Policies or Standards, applicable laws, regulations, or third party rights, (iii) you have provided inaccurate, fraudulent, outdated or incomplete information during the Airbnb Account registration, Listing process or thereafter, (iv) you and/or your Listings or Host Services at any time fail to meet any applicable quality or eligibility criteria, . . ., or (vii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties, or to prevent fraud or other illegal activity:

> - refuse to surface, delete or delay any Listings, Ratings, Reviews, or other Member Content;
> - cancel any pending or confirmed bookings;
> - limit your access to or use of the Airbnb Platform;
> - temporarily or permanently revoke any special status associated with your Airbnb Account; or
> - temporarily or in case of severe or repeated offenses permanently suspend your Airbnb Account.

> In case of non-material breaches and where appropriate, you will be given notice of any intended measure by Airbnb and an opportunity to resolve the issue to Airbnb's reasonable satisfaction.

> 15.6  If we take any of the measures described above (i) we may refund your Guests in full for any and all confirmed bookings that have been cancelled, irrespective of preexisting cancellation policies, and (ii) you will not be entitled to any compensation for pending or confirmed bookings that were cancelled.

> 15.7  When this Agreement has been terminated, you are not entitled to a restoration of your Airbnb Account or any of your Member Content. If your

33

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 6

access to or use of the Airbnb Platform has been limited or your Airbnb Account has been suspended or this Agreement has been terminated by us, you may not register a new Airbnb Account or access and use the Airbnb Platform through an Airbnb Account of another Member.

8. <u>Justification.</u>  As indicated by the TOS provisions set forth above, Airbnb had a contractual right to terminate and/or limit Claimant's accounts and use of the Airbnb platform.  Airbnb's decisions were further justified by Claimant's conduct, including but not limited to her breach of the TOS and her breach of Community Standards, including but not limited to the following provisions:

**14. Prohibited Activities**

14.1  You are solely responsible for compliance with any and all laws, rules, regulations, and Tax obligations that may apply to your use of the Airbnb Platform. In connection with your use of the Airbnb Platform, []you will not assist or enable others to:

- breach or circumvent any applicable laws or regulations, agreements with third-parties, third-party rights, or our Terms, Policies or Standards;
- violate or infringe anyone else's rights or otherwise cause harm to anyone.

**Community Standards – Security**

\* \* \*

- **Spam, phishing, or fraud**
  You should not . . . make false claims against other members of the community.

**Community Standards – Fairness**

\* \* \*

- **Bullying or harassing others**
  You should not share personal information to shame or blackmail others, target others with unwanted behavior, defame others, or violate our review and content standards.

**Community Standards – Authenticity**

\* \* \*

- **Misrepresenting yourself**
  You should not provide a false name or date of birth, use listings for commercial purposes without your host's permission, have events or parties without your host's approval, maintain duplicate accounts, or create an account if you're under 18.

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 7

9.  <u>Unjust Enrichment.</u>  Airbnb asserts that Claimant is seeking to recover more than Claimant is entitled to recover from Airbnb such that any award of the judgment sought would unjustly enrich the Claimant.

10.  <u>Laches.</u>  Claimant's purported claims alleged against Airbnb therein are barred in whole or in part by the doctrine of laches.

11.  <u>Cancellation of Contract.</u>  Airbnb asserts that any contract that existed between Airbnb and Claimant was cancelled by the Claimant when she operated outside the confines of the TOS, and/or by Airbnb in accordance with the TOS.

12.  <u>Failure of Condition Precedent.</u>  Claimant's alleged claims are barred in whole or in part because Claimant failed to satisfy one or more conditions precedent set forth in the contract at issue (i.e., the relevant TOS and Community Standards) and thus may not obtain the benefits set forth in the same.

13.  <u>Mitigation.</u>  Claimant failed to mitigate her alleged damages, if any.

14.  <u>Setoff.</u>  Claimant's alleged damages may be barred in whole or in part because Claimant is involved in a separate lawsuit against other Airbnb users related to the same underlying incident that lead to Claimant's Airbnb account being terminated.  *Veronica McCluskey v. William Hendricks et al.*, Case No. BC671735 (L.A. Cty. Super.) (the "Hendricks" Action).  Claimant alleges many of the same damages in the Hendricks Action as in the instant action, and her alleged damages—if any—in the instant action may be subject to setoff as a result.

15.  <u>Failure to Satisfy CLRA Statutory Requirements for Notice and Venue.</u>  Claimant failed to serve the notice required for a claim for damages under Cal. Civ. Code section 1782. Likewise, Plaintiff failed to file the venue affidavit required under Cal. Civ. Code section 1780(d).  Airbnb is thus entitled to immediate dismissal of Plaintiff's CLRA claim for damages.

16.  <u>Lack of Fiduciary Relationship.</u>  Claimant's alleged claim for Breach of Fiduciary Duty is barred in whole or in part because there is no fiduciary relationship between Claimant and Airbnb as a matter of law.

Airbnb expressly reserves its right to amend this Answering Statement to assert additional Affirmative Defenses.

Lucas Olais-Macias
American Arbitration Association
December 3, 2018
Page 8

### Request for Relief.

For the reasons stated above, Airbnb respectfully requests that the Arbitrator dismiss the Demand, award Claimant nothing, and grant any other relief that the Arbitrator deems appropriate.

Sincerely,

Michele Floyd
Attorney for Airbnb, Inc.

# EXHIBIT 1

# Terms of Service

**Please read these Terms of Service carefully as they contain important information about your legal rights, remedies and obligations. By accessing or using the Airbnb Platform, you agree to comply with and be bound by these Terms of Service.**

**Please note: Section 19 of these Terms of Service contains an arbitration clause and class action waiver that applies to all Airbnb Members. If you reside in the United States, this provision applies to all disputes with Airbnb. If you reside outside of the United States, this provision applies to any action you bring against Airbnb in the United States. It affects how disputes with Airbnb are resolved. By accepting these Terms of Service, you agree to be bound by this arbitration clause and class action waiver. Please read it carefully.**

Last Updated: June 19, 2017

Thank you for using Airbnb!

These Terms of Service ("**Terms**") constitute a legally binding agreement ("**Agreement**") between you and Airbnb (as defined below) governing your access to and use of the Airbnb website, including any subdomains thereof, and any other websites through which Airbnb makes the Airbnb Services available (collectively, "**Site**"), our mobile, tablet and other smart device applications, and application program interfaces (collectively, "**Application**") and all associated services (collectively, "**Airbnb Services**"). The Site, Application and Airbnb Services together are hereinafter collectively referred to as the "**Airbnb Platform**". Our Host Guarantee Terms, Guest Refund Policy, Nondiscrimination Policy and other Policies applicable to your use of the Airbnb Platform are incorporated by reference into this Agreement.

When these Terms mention "**Airbnb**," "**we**," "**us**," or "**our**," it refers to the Airbnb company you are contracting with.

- If you reside in the United States, you are contracting with Airbnb, Inc., 888 Brannan Street, 4th Floor, San Francis CA 94103, United States.
- If you reside outside of the United States and the People's Republic of China (which for purposes of these Terms on not include Hong Kong, Macau and Taiwan) (hereinafter "**China**"), you are contracting with Airbnb Ireland UC ("**Air Ireland**"), The Watermarque Building, South Lotts Road, Ringsend, Dublin 4, Ireland.
- If you reside in China, you are contracting with Airbnb Internet (Beijing) Co., Ltd. ("**Airbnb China**") except where you book a Host Service (as defined below) or when you create a Listing located outside of China, in which case you a contracting with Airbnb Ireland for that transaction. Additionally, if your contracting entity is Airbnb China, you will nevertheless contract with Airbnb Ireland for all bookings confirmed prior to December 7, 2016 at 10:00am UTC.

If you change your place of residence, the Airbnb company you contract with will be determined by your new place of residence as specified above, from the date on which your place of residence changes.

Our collection and use of personal information in connection with your access to and use of the Airbnb Platform is described in our Privacy Policy.

Any and all payment processing services through or in connection with your use of the Airbnb Platform ("**Payment Services**") are provided to you by one or more Airbnb Payments entities (individually and collectively, as appropriate, "**Airbnb Payments**") as set out in the Payments Terms of Service ("**Payments Terms**").

Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to their Listings and Host Services. For example, some cities have laws that restrict their ability to host paying guests for short periods or provide certain Host Services. In many cities, Hosts may have to register, get a permit or obtain a license before preparing food or serving alcohol for sale. Some cities may require a license to guide tours or to sail. Host are alone responsible for identifying and obtaining any

required licenses, permits, or registrations for any Host Services they offer. Certain types of Host Services may be prohibited altogether. Penalties may include fines or other enforcement. We provide some information in our Help Center to help you identify some of the obligations that apply to you. If you have questions about how local laws apply to your Listing(s) and Host Service(s) on Airbnb, you should always seek legal guidance.

## Table of Contents

1. Scope of Airbnb Services
2. Eligibility, Using the Airbnb Platform, Member Verification
3. Modification of these Terms
4. Account Registration
5. Content
6. Service Fees
7. Terms specific for Hosts
8. Terms specific for Guests
9. Booking Modifications, Cancellations and Refunds, Resolution Center
10. Ratings and Reviews
11. Damage to Accommodations, Disputes between Members
12. Rounding off, Currency conversion
13. Taxes
14. Prohibited Activities
15. Term and Termination, Suspension and other Measures
16. Disclaimers
17. Liability
18. Indemnification
19. Dispute Resolution
20. Feedback
21. Applicable Law and Jurisdiction
22. General Provisions

## 1. Scope of Airbnb Services

1.1 The Airbnb Platform is an online marketplace that enables registered users ("**Members**") and certain third parties v offer services (Members and third parties who offer services are "**Hosts**" and the services they offer are "**Host Service** to publish such Host Services on the Airbnb Platform ("**Listings**") and to communicate and transact directly with Members that are seeking to book such Host Services (Members using Host Services are "**Guests**"). Host Services m include the offering of vacation or other properties for use ("**Accommodations**"), single or multi-day activities in variou categories ("**Experiences**"), access to unique events and locations ("**Events**"), and a variety of other travel and non-tra related services.

1.2 As the provider of the Airbnb Platform, Airbnb does not own, create, sell, resell, provide, control, manage, offer, de or supply any Listings or Host Services. Hosts alone are responsible for their Listings and Host Services. When Memb make or accept a booking, they are entering into a contract directly with each other. Airbnb is not and does not becom party to or other participant in any contractual relationship between Members, nor is Airbnb a real estate broker or insi Airbnb is not acting as an agent in any capacity for any Member, except as specified in the Payments Terms.

1.3 While we may help facilitate the resolution of disputes, Airbnb has no control over and does not guarantee (i) the existence, quality, safety, suitability, or legality of any Listings or Host Services, (ii) the truth or accuracy of any Listing descriptions, Ratings, Reviews, or other Member Content (as defined below), or (iii) the performance or conduct of any Member or third party. Airbnb does not endorse any Member, Listing or Host Services. Any references to a Member be "verified" (or similar language) only indicate that the Member has completed a relevant verification or identification process and nothing else. Any such description is not an endorsement, certification or guarantee by Airbnb about any Member, including of the Member's identity or background or whether the Member is trustworthy, safe or suitable. You should always exercise due diligence and care when deciding whether to stay in an Accommodation, participate in an Experience or Event or use other Host Services, accept a booking request from a Guest, or communicate and interact

with other Members, whether online or in person. Verified Images (as defined below) are intended only to indicate a photographic representation of a Listing at the time the photograph was taken, and are therefore not an endorsement Airbnb of any Host or Listing.

1.4 If you choose to use the Airbnb Platform as a Host or Co-Host (as defined below), your relationship with Airbnb is limited to being an independent, third-party contractor, and not an employee, agent, joint venturer or partner of Airbnb any reason, and you act exclusively on your own behalf and for your own benefit, and not on behalf, or for the benefit, Airbnb.

1.5 To promote the Airbnb Platform and to increase the exposure of Listings to potential Guests, Listings and other Member Content may be displayed on other websites, in applications, within emails, and in online and offline advertisements. To assist Members who speak different languages, Listings and other Member Content may be translated, in whole or in part, into other languages. Airbnb cannot guarantee the accuracy or quality of such translatic and Members are responsible for reviewing and verifying the accuracy of such translations. The Airbnb Platform may contain translations powered by Google. Google disclaims all warranties related to the translations, express or implied including any warranties of accuracy, reliability, and any implied warranties for merchantability, fitness for a particular purpose and noninfringement.

1.6 The Airbnb Platform may contain links to third-party websites or resources ("**Third-Party Services**"). Such Third-P Services may be subject to different terms and conditions and privacy practices. Airbnb is not responsible or liable for availability or accuracy of such Third-Party Services, or the content, products, or services available from such Third-Pa Services. Links to such Third-Party Services are not an endorsement by Airbnb of such Third-Party Services.

1.7 Due to the nature of the Internet, Airbnb cannot guarantee the continuous and uninterrupted availability and accessibility of the Airbnb Platform. Airbnb may restrict the availability of the Airbnb Platform or certain areas or featur thereof, if this is necessary in view of capacity limits, the security or integrity of our servers, or to carry out maintenanc measures that ensure the proper or improved functioning of the Airbnb Platform. Airbnb may improve, enhance and modify the Airbnb Platform and introduce new Airbnb Services from time to time.

## 2. Eligibility, Using the Airbnb Platform, Member Verification

2.1 You must be at least 18 years old and able to enter into legally binding contracts to access and use the Airbnb Platform or register an Airbnb Account. By accessing or using the Airbnb Platform you represent and warrant that you 18 or older and have the legal capacity and authority to enter into a contract.

2.2 You will comply with any applicable export control laws in your local jurisdiction. You also represent and warrant th neither you nor your Host Service(s) are located or take place in a country that is subject to a U.S. Government embar or that has been designated by the U.S. Government as a "terrorist supporting" country, and (ii) you are not listed on a U.S. Government list of prohibited or restricted parties.

2.3 Airbnb may make the access to and use of the Airbnb Platform, or certain areas or features of the Airbnb Platform, subject to certain conditions or requirements, such as completing a verification process, meeting specific quality or eligibility criteria, meeting Ratings or Reviews thresholds, or booking and cancellation history.

2.4 User verification on the Internet is difficult and we do not assume any responsibility for the confirmation of any Member's identity. Notwithstanding the above, for transparency and fraud prevention purposes, and as permitted by applicable laws, we may, but have no obligation to (i) ask Members to provide a form of government identification or o information or undertake additional checks designed to help verify the identities or backgrounds of Members, (ii) scree Members against third party databases or other sources and request reports from service providers, and (iii) where we have sufficient information to identify a Member, obtain reports from public records of criminal convictions or sex offer registrations or an equivalent version of background or registered sex offender checks in your local jurisdiction (if available).

2.5 The access to or use of certain areas and features of the Airbnb Platform may be subject to separate policies, standards or guidelines, or may require that you accept additional terms and conditions. If there is a conflict between

these Terms and terms and conditions applicable to a specific area or feature of the Airbnb Platform, the latter terms a
conditions will take precedence with respect to your access to or use of that area or feature, unless specified otherwise

2.6 If you access or download the Application from the Apple App Store, you agree to Apple's Licensed Application En
User License Agreement. Some areas of the Airbnb Platform implement Google Maps/Earth mapping services, includi
Google Maps API(s). Your use of Google Maps/Earth is subject to the Google Maps/Google Earth Additional Terms of
Service.

## 3. Modification of these Terms

Airbnb reserves the right to modify these Terms at any time in accordance with this provision. If we make changes to
these Terms, we will post the revised Terms on the Airbnb Platform and update the "Last Updated" date at the top of
these Terms. We will also provide you with notice of the modifications by email at least thirty (30) days before the date
they become effective. If you disagree with the revised Terms, you may terminate this Agreement with immediate effec
We will inform you about your right to terminate the Agreement in the notification email. If you do not terminate your
Agreement before the date the revised Terms become effective, your continued access to or use of the Airbnb Platforn
will constitute acceptance of the revised Terms.

## 4. Account Registration

4.1 You must register an account ("**Airbnb Account**") to access and use certain features of the Airbnb Platform, such
publishing or booking a Listing. If you are registering an Airbnb Account for a company or other legal entity, you repres
and warrant that you have the authority to legally bind that entity and grant us all permissions and licenses provided ir
these Terms.

4.2 You can register an Airbnb Account using an email address and creating a password, or through your account with
certain third-party social networking services, such as Facebook or Google ("**SNS Account**"). You have the ability to
disable the connection between your Airbnb Account and your SNS Account at any time, by accessing the "Settings"
section of the Airbnb Platform.

4.3 You must provide accurate, current and complete information during the registration process and keep your Airbnt
Account and public Airbnb Account profile page information up-to-date at all times.

4.4 You may not register more than one (1) Airbnb Account unless Airbnb authorizes you to do so. You may not assign
otherwise transfer your Airbnb Account to another party.

4.5 You are responsible for maintaining the confidentiality and security of your Airbnb Account credentials and may no
disclose your credentials to any third party. You must immediately notify Airbnb if you know or have any reason to susp
that your credentials have been lost, stolen, misappropriated, or otherwise compromised or in case of any actual or
suspected unauthorized use of your Airbnb Account. You are liable for any and all activities conducted through your
Airbnb Account, unless such activities are not authorized by you and you are not otherwise negligent (such as failing t
report the unauthorized use or loss of your credentials).

4.6 Airbnb may enable features that allow you to authorize other Members or certain third parties to take certain action
that affect your Airbnb Account. For example, we may allow Members associated with an Enterprise (as defined in our
Privacy Policy) to book for other Members, or we may allow Hosts to add other Members as Co-Hosts (as defined bel
to help manage their Listings. These features do not require that you share your credentials with any other person. No
third party is authorized by Airbnb to ask for your credentials, and you shall not request the credentials of another
Member.

## 5. Content

5.1 Airbnb may, at its sole discretion, enable Members to (i) create, upload, post, send, receive and store content, suc
text, photos, audio, video, or other materials and information on or through the Airbnb Platform ("**Member Content**");

(ii) access and view Member Content and any content that Airbnb itself makes available on or through the Airbnb Platf including proprietary Airbnb content and any content licensed or authorized for use by or through Airbnb from a third ("**Airbnb Content**" and together with Member Content, "**Collective Content**").

5.2 The Airbnb Platform, Airbnb Content, and Member Content may in its entirety or in part be protected by copyright, trademark, and/or other laws of the United States and other countries. You acknowledge and agree that the Airbnb Platform and Airbnb Content, including all associated intellectual property rights, are the exclusive property of Airbnb and/or its licensors or authorizing third-parties. You will not remove, alter or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Airbnb Platform, Airbnb Content or Mem Content. All trademarks, service marks, logos, trade names, and any other source identifiers of Airbnb used on or in connection with the Airbnb Platform and Airbnb Content are trademarks or registered trademarks of Airbnb in the Unit States and abroad. Trademarks, service marks, logos, trade names and any other proprietary designations of third par used on or in connection with the Airbnb Platform, Airbnb Content, and/or Collective Content are used for identificatio purposes only and may be the property of their respective owners.

5.3 You will not use, copy, adapt, modify, prepare derivative works of, distribute, license, sell, transfer, publicly display, publicly perform, transmit, broadcast or otherwise exploit the Airbnb Platform or Collective Content, except to the exte you are the legal owner of certain Member Content or as expressly permitted in these Terms. No licenses or rights are granted to you by implication or otherwise under any intellectual property rights owned or controlled by Airbnb or its licensors, except for the licenses and rights expressly granted in these Terms.

5.4 Subject to your compliance with these Terms, Airbnb grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to (i) download and use the Application on your personal device(s); and (ii) access view any Collective Content made available on or through the Airbnb Platform and accessible to you, solely for your personal and non-commercial use.

5.5 By creating, uploading, posting, sending, receiving, storing, or otherwise making available any Member Content on through the Airbnb Platform, you grant to Airbnb a non-exclusive, worldwide, royalty-free, irrevocable, perpetual (or fo term of the protection), sub-licensable and transferable license to such Member Content to access, use, store, copy, modify, prepare derivative works of, distribute, publish, transmit, stream, broadcast, and otherwise exploit in any mann such Member Content to provide and/or promote the Airbnb Platform, in any media or platform. Unless you provide specific consent, Airbnb does not claim any ownership rights in any Member Content and nothing in these Terms will b deemed to restrict any rights that you may have to use or exploit your Member Content.

5.6 Airbnb may offer Hosts the option of having professional photographers take photographs of their Host Services, which are made available by the photographer to Hosts to include in their Listings with or without a watermark or tag bearing the words "Airbnb.com Verified Photo" or similar wording ("**Verified Images**"). You are responsible for ensurin that your Host Service is accurately represented in the Verified Images and you will stop using the Verified Images on c through the Airbnb Platform if they no longer accurately represent your Listing, if you stop hosting the Host Service featured, or if your Airbnb Account is terminated or suspended for any reason. You acknowledge and agree that Airbn shall have the right to use any Verified Images in advertising, marketing and/or any other business purposes in any me or platform, whether in relation to your Listing or otherwise, without further notice or compensation to you. Where Airb is not the exclusive owner of Verified Images, by using such Verified Images on or through the Airbnb Platform, you gra to Airbnb an exclusive, worldwide, royalty-free, irrevocable, perpetual (or for the term of the protection), sub-licensable and transferable license to use such Verified Images for advertising, marketing and/or any other business purposes in media or platform, whether in relation to your Listing or otherwise, without further notice or compensation to you. Airb in turn grants you a limited, non-exclusive, non-sublicensable, revocable, non-transferable license to use Verified Imag outside of the Airbnb Platform solely for your personal and non-commercial use.

5.7 You are solely responsible for all Member Content that you make available on or through the Airbnb Platform. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all Member Content that make available on or through the Airbnb Platform or you have all rights, licenses, consents and releases that are necessary to grant to Airbnb the rights in and to such Member Content, as contemplated under these Terms; and (ii) neither the Member Content nor your posting, uploading, publication, submission or transmittal of the Member Conten Airbnb's use of the Member Content (or any portion thereof) will infringe, misappropriate or violate a third party's paten

copyright, trademark, trade secret, moral rights or other proprietary or intellectual property rights, or rights of publicity privacy, or result in the violation of any applicable law or regulation.

5.8 You will not post, upload, publish, submit or transmit any Member Content that: (i) is fraudulent, false, misleading (directly or by omission or failure to update information) or deceptive; (ii) is defamatory, libelous, obscene, pornograph vulgar or offensive; (iii) promotes discrimination, bigotry, racism, hatred, harassment or harm against any individual or group; (iv) is violent or threatening or promotes violence or actions that are threatening to any other person; (v) promot illegal or harmful activities or substances; or (vi) violates Airbnb's Content Policy or any other Airbnb policy. Airbnb ma without prior notice, remove or disable access to any Member Content that Airbnb finds to be in violation of these Ter or Airbnb's then-current Policies or Standards, or otherwise may be harmful or objectionable to Airbnb, its Members, t parties, or property.

5.9 Airbnb respects copyright law and expects its Members to do the same. If you believe that any content on the Airb Platform infringes copyrights you own, please notify us in accordance with our Copyright Policy.

## 6. Service Fees

6.1 Airbnb may charge fees to Hosts ("**Host Fees**") and/or Guests ("**Guest Fees**") (collectively, "**Service Fees**") in consideration for the use of the Airbnb Platform. More information about when Service Fees apply and how they are calculated can be found on our Service Fees page.

6.2 Any applicable Service Fees (including any applicable Taxes) will be displayed to a Host or Guest prior to publishin booking a Listing. Airbnb reserves the right to change the Service Fees at any time, and we will provide Members adequate notice of any fee changes before they become effective.

6.3 You are responsible for paying any Service Fees that you owe to Airbnb. The applicable Service Fees are due and payable and collected by Airbnb Payments pursuant to the Payments Terms. Except as otherwise provided on the Airb Platform, Service Fees are non-refundable.

## 7. Terms specific for Hosts

### 7.1 Terms applicable to all Listings

7.1.1 When creating a Listing through the Airbnb Platform you must (i) provide complete and accurate information abo your Host Service (such as listing description, location, and calendar availability), (ii) disclose any deficiencies, restricti (such as house rules) and requirements that apply (such as any minimum age, proficiency or fitness requirements for a Experience) and (iii) provide any other pertinent information requested by Airbnb. You are responsible for keeping your Listing information (including calendar availability) up-to-date at all times.

7.1.2 You are solely responsible for setting a price (including any Taxes if applicable) for your Listing ("**Listing Fee**"). O a Guest requests a booking of your Listing, you may not request that the Guest pays a higher price than in the booking request.

7.1.3 Any terms and conditions included in your Listing, in particular in relation to cancellations, must not conflict with these Terms or the cancellation policy you have selected for your Listing.

7.1.4 Pictures, animations or videos (collectively, "**Images**") used in your Listings must accurately reflect the quality an condition of your Host Services. Airbnb reserves the right to require that Listings have a minimum number of Images o certain format, size and resolution.

7.1.5 The placement and ranking of Listings in search results on the Airbnb Platform may vary and depend on a variet factors, such as Guest search parameters and preferences, Host requirements, price and calendar availability, number and quality of Images, customer service and cancellation history, Reviews and Ratings, type of Host Service, and/or e of booking.

7.1.6 When you accept or have pre-approved a booking request by a Guest, you are entering into a legally binding agreement with the Guest and are required to provide your Host Service(s) to the Guest as described in your Listing w the booking request is made. You also agree to pay the applicable Host Fee and any applicable Taxes, which will be collected pursuant to the Payments Terms.

7.1.7 Airbnb recommends that Hosts obtain appropriate insurance for their Host Services. Please review any respectiv insurance policy carefully, and in particular make sure that you are familiar with and understand any exclusions to, and deductibles that may apply for, such insurance policy, including, but not limited to, whether or not your insurance polic will cover the actions or inactions of Guests (and the individuals the Guest has booked for, if applicable) while staying your Accommodation or participating in your Experience, Event or other Host Service.

## 7.2 Listing Accommodations

7.2.1 You may only list one Accommodation per Listing.

7.2.2 If you choose to require a security deposit for your Accommodation, you must specify this in your Listing ("**Secu Deposit**"). Hosts are not allowed to ask for a Security Deposit after a booking has been confirmed or outside of the Ai Platform. Airbnb will use commercially reasonable efforts to address Hosts' requests and claims related to Security Deposits, but Airbnb is not responsible for administering or accepting any claims by Hosts related to Security Deposit:

7.2.3 You represent and warrant that any Listing you post and the booking of, or a Guest's stay at, an Accommodation (i) not breach any agreements you have entered into with any third parties, such as homeowners association, condominium, or other agreements, and (ii) comply with all applicable laws (such as zoning laws), Tax requirements, an other rules and regulations (including having all required permits, licenses and registrations). As a Host, you are responsible for your own acts and omissions and are also responsible for the acts and omissions of any individuals wh reside at or are otherwise present at the Accommodation at your request or invitation, excluding the Guest (and the individuals the Guest invites to the Accommodation, if applicable).

## 7.3 Listing Experiences, Events and other Host Services

7.3.1 To list an Experience, Event or other Host Service, you must create a Listing and submit the Experience, Event o Host Service to Airbnb. To be considered for publishing on the Airbnb Platform, Experiences, Events or other Host Services must at all times meet the quality standards for Experiences and meet Guest demand. Airbnb reserves the rig to decide, in its sole discretion, if a submitted Experience, Event or other Host Service will be published on the Airbnb Platform.

7.3.2 When listing an Experience, Event or other Host Service you must, where applicable, fully educate and inform Guests about (i) any risks inherent to the Experience, Event or other Host Service, (ii) any requirements for participation such as the minimum age, related skills, level of fitness or other requirements, and (iii) anything else they may need to know to safely participate in the Experience, Event or other Host Service (including dress codes, equipment, special certifications or licenses, etc.).

7.3.3 If you wish to list an Experience on behalf of a Nonprofit ("Social Impact Experience"), you must comply with the eligibility requirements for hosting a Social Impact Experience. When listing a Social Impact Experience you (i) represent and warrant that you are duly authorized to act on behalf of your Nonprofit and (ii) acknowledge and agree th all payouts will be directed to an account owned by your Nonprofit. You and your Nonprofit acknowledge that listing a Social Impact Experience does not create a commercial fundraising or co-venturer, or charitable trust relationship with Airbnb and Airbnb is not a professional fundraiser or commercial participator. Nonprofits, and not Airbnb, are responsi for determining what, if any, portion of their Listing Fee is a charitable contribution and for providing Guests charitable receipts for any applicable charitable contributions. You and your Nonprofit are solely responsible for complying with a laws that apply to your organization and your Social Impact Experience.

7.3.4 You represent and warrant that you (i) understand and comply with all laws, rules and regulations that may apply your Experience, Event or other Host Service(s), and (ii) will obtain any required licenses, permits, or registrations prior

44

providing your Experience, Event or other Host Service(s). You can find additional information about some of the legal obligations that may apply to you on our Responsible Hosting pages.

7.3.5 You must provide an Experience, Event or other Host Service in person and may not allow any third party to prov the Experience, Event or other Host Service on your behalf, unless authorized by Airbnb.

## 7.4 Co-Hosts

7.4.1 Airbnb may enable Hosts to authorize other Members ("**Co-Hosts**") to administer the Host's Listing(s), and to bir the Host and take certain actions in relation to the Listing(s) as permitted by the Host, such as accepting booking requests, messaging and welcoming Guests, and updating the Listing Fee and calendar availability (collectively, "**Co-H Services**"). Any agreement formed between Host and Co-Host may not conflict with these Terms and the Payments Terms. Co-Hosts may only act in an individual capacity and not on behalf of a company or other organization, unless expressly authorized by Airbnb. Airbnb reserves the right, in our sole discretion, to limit the number of Co-Hosts a Hos may invite for each Listing and to limit the number of Listings a Co-Host may manage.

7.4.2 Hosts and Co-Hosts may agree on a fee ("**Co-Host Services Fee**") in consideration for the Co-Host Services provided by the Co-Host. When such an agreement is made, the Host agrees to pay the Co-Host Services Fee for any confirmed booking of their Listing, which will be deducted directly from the Listing Fee after deduction of any applicat Host Fee. In addition, Hosts may instruct a Co-Host to provide certain one-time services in relation to their Listing. Ho can pay Co-Hosts for one-time services and any other expenses using the Resolution Center. Airbnb Payments will process Co-Host Services Fees and Resolution Center payments pursuant to the Payments Terms.

7.4.3 Hosts and Co-Hosts agree that each activity, booking, or other transaction reported on the Airbnb Platform, including any Co-Host Services provided by the Co-Host and any amounts due from a Host to the Co-Host for the provision of such services, will be deemed accurate, correct and binding, unless challenged, by notifying the other per and Airbnb (by emailing host-exp@airbnb.com), within 21 days of posting of the disputed activity, booking or other transaction on the Airbnb Platform.

7.4.4 Hosts should exercise due diligence and care when deciding who to add as a Co-Host to their Listing(s). Hosts remain solely responsible and liable for any and all Listings and Member Content published on the Airbnb Platform, including any Listing created by a Co-Host on their behalf. Further, Hosts remain responsible and liable for their own a and omissions, including, but not limited to, conduct that causes harm or damage to the Co-Host(s). Co-Hosts remain responsible and liable for their own acts and omissions when engaging in their roles and responsibilities as a Co-Host including, but not limited to, conduct that causes harm or damage to the Host. In addition, both Host and Co-Host are jointly responsible and severally liable for third party claims, including Guest claims, arising from the acts and omission the other person as related to hosting activities, communications with Guests, and the provision of any Co-Host Servic

7.4.5 Unless agreed otherwise by Host and Co-Host, Host and Co-Host may terminate the Co-Host agreement at any time. In addition, both Host and Co-Host acknowledge that their Co-hosting relationship will terminate in the event tha Airbnb (i) terminates the Co-Host service or (ii) terminates either party's participation in the Co-Host service. When the Host agreement is terminated, the Host will remain responsible for all of the Co-Host's actions prior to the termination, including the responsibility to fulfill any pending or future bookings initiated prior to the termination. When a Member is removed as a Co-Host, that Member will no longer have access to any Host or Guest information related to the applic Host's Listing(s). In addition, Host agrees to pay Co-Host for all Co-Host Services completed prior to Co-Host's termination within 14 days of Co-Host's termination via the Resolution Center. A Co-Host will not be entitled to any fee for any Co-Host Services that have not been completed prior to the Co-Host's termination.

7.4.6 As a Co-Host, you will not be reviewed by Guests, meaning that your Co-Host activities will not affect your Revie or Ratings for other Listings for which you are a Host. Instead, the Host of such Listing(s) will be reviewed by Guests (including potentially on the basis of the Co-Host's conduct and performance). Hosts acknowledge that Reviews and Ratings from Guests for their Listing(s) may be impacted by a Co-Host's conduct and performance.

## 8. Terms specific for Guests

**8.1 Terms applicable to all bookings**

8.1.1 Subject to meeting any requirements (such as completing any verification processes) set by the Host, you can book a Listing available on the Airbnb Platform by following the respective booking process. All applicable fees, including the Listing Fee, Security Deposit (if applicable), Guest Fee and any applicable Taxes (collectively, "**Total Fees**") will be presented to you prior to booking a Listing. You agree to pay the Total Fees for any booking requested in connection with your Airbnb Account.

8.1.2 Upon receipt of a booking confirmation from Airbnb, a legally binding agreement is formed between you and your Host, subject to any additional terms and conditions of the Host that apply, including in particular the applicable cancellation policy and any rules and restrictions specified in the Listing. Airbnb Payments will collect the Total Fees at the time of the booking request or upon the Host's confirmation pursuant to the Payments Terms.

8.1.3 If you book a Host Service on behalf of additional guests, you are required to ensure that every additional guest meets any requirements set by the Host, and is made aware of and agrees to these Terms and any terms and conditions, rules and restrictions set by the Host. If you are booking for an additional guest who is a minor, you represent and warrant that you are legally authorized to act on behalf of the minor. Minors may only participate in an Experience, Event or other Host Service if accompanied by an adult who is responsible for them.

**8.2 Booking Accommodations**

8.2.1 You understand that a confirmed booking of an Accommodation ("**Accommodation Booking**") is a limited license granted to you by the Host to enter, occupy and use the Accommodation for the duration of your stay, during which time the Host (only where and to the extent permitted by applicable law) retains the right to re-enter the Accommodation, in accordance with your agreement with the Host.

8.2.2 You agree to leave the Accommodation no later than the checkout time that the Host specifies in the Listing or such other time as mutually agreed upon between you and the Host. If you stay past the agreed upon checkout time without the Host's consent ("**Overstay**"), you no longer have a license to stay in the Accommodation and the Host is entitled to make you leave in a manner consistent with applicable law. In addition, you agree to pay, if requested by the Host, for each twenty-four (24) hour period (or any portion thereof) that you Overstay, an additional nightly fee of up to two (2) times the average nightly Listing Fee originally paid by you to cover the inconvenience suffered by the Host, plus all applicable Guest Fees, Taxes, and any legal expenses incurred by the Host to make you leave (collectively, "**Overstay Fees**"). Overstay Fees for late checkouts on the checkout date that do not impact upcoming bookings may be limited to the additional costs incurred by the Host as a result of such Overstay. Airbnb Payments will collect Overstay Fees from you pursuant to the Payments Terms. A Security Deposit, if required by a Host, may be applied to any Overstay Fees due for a Guest's Overstay.

**8.3 Booking Experiences, Events and other Host Services**

8.3.1 You should carefully review the description of any Experience, Event or other Host Service you intend to book to ensure you (and any additional guests you are booking for) meet any minimum age, proficiency, fitness or other requirements which the Host has specified in their Listing. You are required to inform the Host of any medical or physical conditions, or other circumstances that may impact your and any additional guest's ability to safely participate in any Experience, Event or other Host Service. In addition, certain laws, like the minimum legal drinking age in the location of the Experience, Event or other Host Service, may also apply. You are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to your participation in an Experience, Event or other Host Service.

8.3.2 Before and during an Experience, Event or other Host Service you must at all times adhere to the Hosts' instructions.

8.3.3 You may not bring any additional individuals to an Experience, Event or other Host Service unless such an individual was added by you as an additional guest during the booking process on the Airbnb Platform.

## 9. Booking Modifications, Cancellations and Refunds, Resolution Center

9.1 Hosts and Guests are responsible for any modifications to a booking that they make via the Airbnb Platform or dire Airbnb customer service to make ("**Booking Modifications**"), and agree to pay any additional Listing Fees, Host Fees Guest Fees and/or Taxes associated with such Booking Modifications.

9.2 Guests can cancel a confirmed booking at any time subject to the Listing's cancellation policy, and Airbnb Paymer will provide any refund to the Guest in accordance with such cancellation policy. Unless extenuating circumstances ex any amounts due to the Host under the applicable cancellation policy will be remitted to the Host by Airbnb Payments pursuant to the Payments Terms.

9.3 If a Host cancels a confirmed booking, the Guest will receive a full refund of the Total Fees for such booking and Airbnb may publish an automated review on the Listing cancelled by the Host indicating that a booking was cancelled addition, Airbnb may (i) keep the calendar for the Listing unavailable or blocked for the dates of the cancelled booking and/or (ii) impose a cancellation fee, unless the Host has a valid reason for cancelling the booking pursuant to Airbnb's Extenuating Circumstances Policy or has legitimate concerns about the Guest's behavior.

9.4 For Experiences, Events and other Host Services, if inclement weather creates an unsafe or uncomfortable scenar for Guests, Hosts may modify or cancel a Host Service. If there is a substantial change in the itinerary or the Host Serv needs to be cancelled, Airbnb will work with the Host to provide Guests an alternative date for the Host Service, an appropriate refund or a rebooking.

9.5 In certain circumstances, Airbnb may decide, in its sole discretion, that it is necessary to cancel a confirmed booki and make appropriate refund and payout decisions. This may be for reasons set forth in Airbnb's Extenuating Circumstances Policy or (i) where Airbnb believes in good faith, while taking the legitimate interests of both parties into account, this is necessary to avoid significant harm to Airbnb, other Members, third parties or property, or (ii) for any o reasons set out in these Terms.

9.6 If a Guest suffers a Travel Issue pursuant to the Guest Refund Policy, Airbnb may determine, in its sole discretion, refund the Guest part or all of the Total Fees in accordance with the Guest Refund Policy.

9.7 Members may use the Resolution Center to send or request money for refunds, additional Host Services, Co-Host Services or Damage Claims related to bookings. You agree to pay all amounts sent through the Resolution Center in connection with your Airbnb Account, and Airbnb Payments will handle all such payments pursuant to the Payments Terms.

## 10. Ratings and Reviews

10.1 Within a certain timeframe after completing a booking, Guests and Hosts can leave a public review ("**Review**") ar submit a star rating ("**Rating**") about each other. Any Ratings or Reviews reflect the opinion of individual Members and not reflect the opinion of Airbnb. Ratings and Reviews are not verified by Airbnb for accuracy and may be incorrect or misleading.

10.2 Ratings and Reviews by Guests and Hosts must be fair, truthful and factual and may not contain any offensive or defamatory language. Ratings and Reviews must comply with Airbnb's Content Policy and Extortion Policy.

10.3 Members are prohibited from manipulating the Ratings and Reviews system in any manner, such as instructing a third party write a positive or negative Review about another Member.

## 11. Damage to Accommodations, Disputes between Members

11.1 As a Guest, you are responsible for leaving the Accommodation (including any personal or other property located the Accommodation) in the condition it was in when you arrived. You are responsible for your own acts and omissions are also responsible for the acts and omissions of any individuals whom you invite to, or otherwise provide access to, Accommodation, excluding the Host (and the individuals the Host invites to the Accommodation, if applicable).

11.2 If a Host claims and provides evidence that you as a Guest have damaged an Accommodation or any personal o other property at an Accommodation ("**Damage Claim**"), the Host can seek payment from you through the Resolution Center. If a Host escalates a Damage Claim to Airbnb, you will be given an opportunity to respond. If you agree to pay Host, or Airbnb determines in its sole discretion that you are responsible for the Damage Claim, Airbnb Payments will collect any such sums from you and/or against the Security Deposit (if applicable) required to cover the Damage Claim pursuant to the Payments Terms. Airbnb also reserves the right to otherwise collect payment from you and pursue any remedies available to Airbnb in this regard in situations in which you are responsible for a Damage Claim, including, bu not limited to, in relation to any payment requests made by Hosts under the Airbnb Host Guarantee.

11.3 Members agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information an take such actions as may be reasonably requested by Airbnb, in connection with any Damage Claims or other compla or claims made by Members relating to Accommodations or any personal or other property located at an Accommoda (including, without limitation, payment requests made under the Airbnb Host Guarantee), Experiences, or Co-Host agreements. A Member shall, upon Airbnb's reasonable request and at no cost to the Member, participate in mediation a similar resolution process with another Member, which process will be conducted by Airbnb or a third party selected Airbnb or its insurer, with respect to losses for which a Member is requesting payment from Airbnb (including but not limited to payments under the Airbnb Host Guarantee).

11.4 If you are a Guest or a Co-Host, you understand and agree that Airbnb may make a claim under your homeowner renter's or other insurance policy related to any damage or loss that you may have caused, or been responsible for, to Accommodation or any personal or other property located at an Accommodation (including without limitation amounts paid by Airbnb under the Airbnb Host Guarantee). You agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information as may be reasonably requested by Airbnb, to make a claim under your homeowner's, renter's or other insurance policy, including, but not limited to, executing documents and taking such further acts as Airbnb may reasonably request to assist Airbnb in accomplishing the foregoing.

## 12. Rounding off, Currency conversion

12.1 Airbnb may, in its sole discretion, round up or round down amounts that are payable from or to Guests or Hosts t the nearest whole functional base unit in which the currency is denominated (i.e. to the nearest dollar, euro or other supported currency); for example, Airbnb will round up an amount of $101.50 to $102.00, and round down an amount $101.49 to $101.00. For currencies that are denominated in large numbers, Airbnb may determine the functional base in which those currencies are denominated to be 10, 100 or 1,000 of the currency; for example, Airbnb may round up a amount of 1,045 up to 1,050 and 1,044 down to 1,040, or 837,500 up to 838,000 and 837,499 down to 837,000.

12.2 The Airbnb Platform facilitates bookings between Guests and Hosts who may prefer to pay in a currency differen from their destination currency, which may require currency conversions to accommodate these differing currency preferences. Although the Airbnb Platform allows Members to view the price of Listings in a number of currencies, the currencies available for Members to make and receive payments may be limited, and may not include the default curre in any given geographic location. Details regarding currency conversion, including any associated fees, are detailed in the Payments Terms.

## 13. Taxes

13.1 As a Host you are solely responsible for determining your obligations to report, collect, remit or include in your Lis Fees any applicable VAT or other indirect sales taxes, occupancy tax, tourist or other visitor taxes or income taxes ("**Taxes**").

13.2 Tax regulations may require us to collect appropriate Tax information from Hosts, or to withhold Taxes from payou to Hosts, or both. If a Host fails to provide us with documentation that we determine to be sufficient to alleviate our obligation (if any) to withhold Taxes from payouts to you, we reserve the right to freeze all payouts, withhold such amo as required by law, or to do both, until resolution.

13.3 You understand that any appropriate governmental agency, department and/or authority ("**Tax Authority**") where your Accommodation is located may require Taxes to be collected from Guests or Hosts on Listing Fees, and to be

remitted to the respective Tax Authority. The laws in jurisdictions may vary, but these Taxes may be required to be collected and remitted as a percentage of the Listing Fees set by Hosts, a set amount per day, or other variations, and sometimes called "transient occupancy taxes," "hotel taxes," "lodging taxes," "city taxes," "room taxes" or "tourist taxes" ("**Occupancy Taxes**").

13.4 In certain jurisdictions, Airbnb may decide in its sole discretion to facilitate collection and remittance of Occupancy Taxes from or on behalf of Guests or Hosts, in accordance these Terms ("**Collection and Remittance**") if such jurisdiction asserts Airbnb or Hosts have an Occupancy Tax collection and remittance obligation. In any jurisdiction in which we decide to facilitate direct Collection and Remittance, you hereby instruct and authorize Airbnb (via Airbnb Payments) to collect Occupancy Taxes from Guests on the Host's behalf at the time Listing Fees are collected, and to remit such Occupancy Taxes to the Tax Authority. The amount of Occupancy Taxes, if any, collected and remitted by Airbnb will be visible to and separately stated to both Guests and Hosts on their respective transaction documents. Where Airbnb is facilitating Collection and Remittance, Hosts are not permitted to collect any Occupancy Taxes being collected by Airbnb relating to their Accommodations in that jurisdiction.

13.5 You agree that any claim or cause of action relating to Airbnb's facilitation of Collection and Remittance of Occupancy Taxes shall not extend to any supplier or vendor that may be used by Airbnb in connection with facilitation of Collection and Remittance, if any. Guests and Hosts agree that we may seek additional amounts from you in the event that the Taxes collected and/or remitted are insufficient to fully discharge your obligations to the Tax Authority, and agree that your sole remedy for Occupancy Taxes collected is a refund of Occupancy Taxes collected by Airbnb from the applicable Tax Authority in accordance with applicable procedures set by that Tax Authority.

13.6 Airbnb reserves the right, with prior notice to Hosts, to cease the Collection and Remittance in any jurisdiction for any reason at which point Hosts and Guests are once again solely responsible and liable for the collection and/or remittance of any and all Occupancy Taxes that may apply to Accommodations in that jurisdiction.

## 14. Prohibited Activities

14.1 You are solely responsible for compliance with any and all laws, rules, regulations, and Tax obligations that may apply to your use of the Airbnb Platform. In connection with your use of the Airbnb Platform, you will not and will not assist or enable others to:

- breach or circumvent any applicable laws or regulations, agreements with third-parties, third-party rights, or our Terms, Policies or Standards;
- use the Airbnb Platform or Collective Content for any commercial or other purposes that are not expressly permitted by these Terms or in a manner that falsely implies Airbnb endorsement, partnership or otherwise misleads others about your affiliation with Airbnb;
- copy, store or otherwise access or use any information, including personally identifiable information about any other Member, contained on the Airbnb Platform in any way that is inconsistent with Airbnb's Privacy Policy or these Terms or that otherwise violates the privacy rights of Members or third parties;
- use the Airbnb Platform in connection with the distribution of unsolicited commercial messages ("spam");
- offer, as a Host, any Accommodation that you do not yourself own or have permission to make available as a residential or other property through the Airbnb Platform;
- unless Airbnb explicitly permits otherwise, book any Listing if you will not actually be using the Host Services yourself;
- contact another Member for any purpose other than asking a question related to a your own booking, Listing, or the Member's use of the Airbnb Platform, including, but not limited to, recruiting or otherwise soliciting any Member to join third-party services, applications or websites, without our prior written approval;
- use the Airbnb Platform to request, make or accept a booking independent of the Airbnb Platform, to circumvent any Service Fees or for any other reason;
- request, accept or make any payment for Listing Fees outside of the Airbnb Platform or Airbnb Payments. If you do so, you acknowledge and agree that you: (i) would be in breach of these Terms; (ii) accept all risks and responsibility for such payment, and (iii) hold Airbnb harmless from any liability for such payment;
- discriminate against or harass anyone on the basis of race, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age or sexual orientation, or otherwise engage in any abusive or disruptive behavior;

- use, display, mirror or frame the Airbnb Platform or Collective Content, or any individual element within the Airbnb Platform, Airbnb's name, any Airbnb trademark, logo or other proprietary information, or the layout and design of a page or form contained on a page in the Airbnb Platform, without Airbnb's express written consent;
- dilute, tarnish or otherwise harm the Airbnb brand in any way, including through unauthorized use of Collective Content, registering and/or using Airbnb or derivative terms in domain names, trade names, trademarks or other source identifiers, or registering and/or using domains names, trade names, trademarks or other source identifiers closely imitate or are confusingly similar to Airbnb domains, trademarks, taglines, promotional campaigns or Collective Content;
- use any robots, spider, crawler, scraper or other automated means or processes to access, collect data or other content from or otherwise interact with the Airbnb Platform for any purpose;
- avoid, bypass, remove, deactivate, impair, descramble, or otherwise attempt to circumvent any technological mea implemented by Airbnb or any of Airbnb's providers or any other third party to protect the Airbnb Platform;
- attempt to decipher, decompile, disassemble or reverse engineer any of the software used to provide the Airbnb Platform;
- take any action that damages or adversely affects, or could damage or adversely affect the performance or prope functioning of the Airbnb Platform;
- export, re-export, import, or transfer the Application except as authorized by United States law, the export control laws of your jurisdiction, and any other applicable laws; or
- violate or infringe anyone else's rights or otherwise cause harm to anyone.

14.2 You acknowledge that Airbnb has no obligation to monitor the access to or use of the Airbnb Platform by any Member or to review, disable access to, or edit any Member Content, but has the right to do so to (i) operate, secure a improve the Airbnb Platform (including without limitation for fraud prevention, risk assessment, investigation and custo support purposes); (ii) ensure Members' compliance with these Terms; (iii) comply with applicable law or the order or requirement of a court, law enforcement or other administrative agency or governmental body; (iv) respond to Member Content that it determines is harmful or objectionable; or (v) as otherwise set forth in these Terms. Members agree to cooperate with and assist Airbnb in good faith, and to provide Airbnb with such information and take such actions as be reasonably requested by Airbnb with respect to any investigation undertaken by Airbnb or a representative of Airbn regarding the use or abuse of the Airbnb Platform.

14.3 If you feel that any Member you interact with, whether online or in person, is acting or has acted inappropriately, including but not limited to anyone who (i) engages in offensive, violent or sexually inappropriate behavior, (ii) you susp of stealing from you, or (iii) engages in any other disturbing conduct, you should immediately report such person to the appropriate authorities and then to Airbnb by contacting us with your police station and report number (if available); provided that your report will not obligate us to take any action beyond that required by law (if any) or cause us to inc any liability to you.

## 15. Term and Termination, Suspension and other Measures

15.1 This Agreement shall be effective for a 30-day term, at the end of which it will automatically and continuously ren for subsequent 30-day terms until such time when you or Airbnb terminate the Agreement in accordance with this provision.

15.2 You may terminate this Agreement at any time via the "Cancel Account" feature on the Airbnb Platform or by sen us an email. If you cancel your Airbnb Account as a Host, any confirmed booking(s) will be automatically cancelled an your Guests will receive a full refund. If you cancel your Airbnb Account as a Guest, any confirmed booking(s) will be automatically cancelled and any refund will depend upon the terms of the Listing's cancellation policy.

15.3 Without limiting our rights specified below, Airbnb may terminate this Agreement for convenience at any time by giving you thirty (30) days' notice via email to your registered email address.

15.4 Airbnb may immediately, without notice terminate this Agreement if (i) you have materially breached your obligatio under these Terms, the Payments Terms, our Policies or Standards, (ii) you have violated applicable laws, regulations third party rights, or (iii) Airbnb believes in good faith that such action is reasonably necessary to protect the personal safety or property of Airbnb, its Members, or third parties (for example in the case of fraudulent behavior of a Member