# Exhibit A-101

**Case Number 01-18-0003-7337**

**Veronica McCluskey**

Claimant

v.

**Airbnb, Inc.**

Respondent

<u>**PRE-HEARING ORDER NO. 1**</u>

On January 30, 2019, the parties appeared before the undersigned Arbitrator by telephone for a prehearing conference. Claimant appeared by Michael Mogan and Respondent appeared by Jacqueline Young. After discussion between counsel and the Arbitrator and agreement of the parties, and good cause appearing,

IT IS HEREBY ORDERED:

1. The parties shall meet and confer and cooperate in producing an agreed joint procedural stipulation which will be submitted to the AAA for onward transmission to the Arbitrator by February 15, 2019. That stipulation, with any necessary modifications by the Arbitrator (e.g. for grammar), shall be converted to a Prehearing Order.

2. The joint procedural stipulation should include, among other things, (i) a statement of which depositions, if any, will be taken by each party and a schedule for those depositions if agreed by the time the statement is to be submitted, (ii) a date by which the parties will exchange documents and writings related to the claim, (iii) a description and schedule for interrogatories or any other form of discovery upon which the parties agree, and (iv) any other action that the parties intend to accomplish in order to enable a hearing date to be set. Any modifications to the stipulation or any modification of any dates provided in the stipulation will likely be approved if both parties so agree absent some substantial reason not to do so.

3. The parties shall exchange their respective lists of percipient witnesses and submit that to the AAA by February 28, 2019. The parties shall exchange their respective lists of expert witnesses and submit that to the AAA by March 15, 2019. No witness who is not disclosed on a party's witness list, percipient or expert, shall be permitted to give evidence at the hearing unless permitted by the Arbitrator for good cause.

4. All prehearing discovery shall be completed by March 29, 2019 unless extended by the Arbitrator on application by one or both parties.

5. Either party may at any time seek permission of the Arbitrator to make a prehearing dispositive motion by a written request to the Arbitrator via the AAA.

   A. Such request must be clear as to the kind and scope of the proposed motion as well as the reasons why permitting that motion are in the interests of justice and consistent with the objectives of arbitration.

   B. Dispositive motions that address the substantive merits of the claims or defenses are generally not permitted absent agreement by the other party or circumstances that in the opinion of the Arbitrator make such a motion appropriate in this case.

   C. The other party shall have ten days from such a request to oppose that request. If the other party agrees affirmatively in writing that the motion can be filed, it will be permitted. However, the absence of opposition (as opposed to an affirmative agreement that the motion can be filed) will not necessarily result in the granting of the request.

   D. If there is opposition to the request to file a dispositive motion, the opposing party should submit her or its opposition in writing within ten days of the request. The request will be decided on the submissions without a hearing, but a hearing will be held if both parties so request.

   E. If the request to file a dispositive motion is granted, the Arbitrator shall issue a briefing schedule and a proposed hearing date for a telephonic hearing on the motion. The parties may by agreement alter the briefing schedule or the hearing date or request an in-person hearing rather than a telephonic hearing. Any such in-person hearing shall take place at the Arbitrator's office or at any other place upon which the parties agree.

6. Upon conclusion of prehearing discovery period set above or the denial of any dispositive motion, whichever is later, the parties and the Arbitrator shall conduct another prehearing telephonic conference to be arranged by the AAA at which a hearing date shall be set and any other order regarding the hearing shall be made.

Dated: January 30, 2019

_____
   Alan R. Jampol, Arbitrator

# Exhibit A-102



**Case Number 01-18-0003-7337**

**Veronica McCluskey**

Claimant

v.

**Airbnb, Inc.**

Respondent

<u>**PRE-HEARING ORDER NO. 2**</u>

Upon the stipulation of the parties to this matter and good cause appearing,

IT IS HEREBY ORDERED:

1. On or before March 7, 2019, the parties will exchange all documents or writings of which they are presently aware that they intend to rely on for any claim or defense.

    A. For this exchange and all other exchanges or service of papers in this matter, the parties agree to electronic service at the following email addresses: for Claimant, Michael Mogan at mm@michaelmogan.com and for Respondent, Michele Floyd at mfloyyd@srclaw.com and Jacqueline Young at jyoung@scrlaw.com.

    B. This initial exchange of documents will be supplemented, if applicable, by the earlier of fourteen business days after the close of all discovery, or twenty-one business days before the hearing.

    C. Documents not exchanged by the dates set herein shall not be received in evidence at the hearing absent a showing of good cause for the delay.

2. Upon receipt of the initial exchange of documents as set forth in paragraph 1 above, the parties shall have thirty days to evaluate whether any additional written discovery is needed.

    A. Any written discovery requests shall be served on or before April 8, 2019.

    B. Such requests shall not exceed fifteen requests for production, fifteen interrogatories, and ten requests for admissions for each party.

3. The parties shall by May 8, 2019 serve responses or objections to any additional discovery requests and shall exchange all documents that are responsive to any additional written discovery requests.

4. Each party may take two party depositions, to be completed by June 7, 2019.

    A. Each deposition shall, absent agreement of the parties, be limited to 6 hours, per witness.

    B. The parties shall cooperate in good faith to set mutually convenient dates, locations, and times for any depositions taken pursuant hereto.

5. Pre-Hearing Order No. 1 is amended as follows: all fact discovery shall close on June 17, 2019.

6. Expert discovery shall be established at a later time after the resolution of any dispositive motions as set forth in paragraph 8 below so long as no such disposition resolves the entire claim. If no dispositive motion is submitted or is permitted to be submitted by March 7, 2019, the parties shall submit a proposed schedule for expert discovery by March 18, 2019.

7. The parties will exchange an initial list of all witnesses, including percipient, expert, and impeachment witnesses, and all documents the parties intend to use at the hearing, and submit those lists to the Arbitrator no later than fourteen business days prior to the hearing date.

    **NOTE: THE PARTIES ARE CAUTIONED THAT BY DEFERRING THE DATE THE WITNESS LISTS ARE SUBMITTED TO THE ARBITRATOR, THEY DELAY ANY FURTHER DISCLOSURE BY THE ARBITRATOR THAT MIGHT BE WARRANTED BY THOSE LISTS UNTIL VERY CLOSE TO THE HEARING DATE.**

8. Any request by either party or both parties to file a dispositive motion shall be submitted by March 7, 2019. Thereafter, any party seeking to submit a dispositive motion must, in addition to the matters set forth in subpart A below, establish good cause for not having submitted the request earlier.

    A. Any such request shall briefly set forth the scope of the proposed motion and the reasons why permitting the motions are in the interests of justice and consistent with the objectives of arbitration.

    B. If the request is not joint, any opposition to the request shall be submitted within five business days of the request.

    C. If any dispositive motion is permitted to be filed, it must be filed within the time specified in the order permitting its filing. Upon receipt of an order permitting the filing of a dispositive motion, counsel will promptly meet and confer regarding a

mutually agreeable briefing schedule and the effect of said briefing schedule on any discovery or other deadlines.

D. The parties will, within ten business days after any determination of a request to submit a dispositive motion, submit a further joint procedural stipulation with the proposed briefing schedule for any dispositive motion permitted to be submitted and, regardless whether a dispositive motion is permitted to be filed, any requests to modify any discovery or other deadlines set forth in this Order.

E. For the guidance of the parties, it should be understood that while occasionally permitted, dispositive motions are generally disfavored, as they risk denying a party the right to a hearing on the evidence. Therefore, a dispositive motion will be permitted only if it can be resolved without having to make a determination on the merits of the claim, or based upon undisputed evidence, there is no conceivable way the Claimant can satisfy her burden of proof at a hearing, keeping in mind the liberal view arbitrators have of the laws of evidence and civil procedure. Potential candidates for dispositive motions in arbitration include affirmative defenses (e.g. the statute of limitations, standing or capacity, possession of a required license, etc.) or a claim for a particular form of damages, like punitive damages in a contract claim. These are just general observations for the parties' consideration in determining whether to submit a dispositive motion or, if one is submitted, its scope and objective. To be blunt, the experience of this Arbitrator is that the vast majority of dispositive motions in arbitration are denied.

9. Upon the ruling on any dispositive motion made that does not result in the final determination of this claim or, if no such motion is made, upon the conclusion of the prehearing discovery period set above, the parties and the Arbitrator shall conduct another prehearing telephonic conference to be arranged by the AAA on a date convenient to the parties and the Arbitrator at which a hearing date shall be set and any other order regarding the matter shall be made.

10. All communications with the Arbitrator shall be made to the AAA and not directly to the Arbitrator except in case of an emergency where there is, as a practical matter, insufficient time to first notify the AAA.

Dated: February 21, 2019

_____
    Alan R. Jampol, Arbitrator

# Exhibit A-103

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**Case Number 01-18-0003-7337**

**Veronica McCluskey**

Claimant

v.

**Airbnb, Inc.**

Respondent

**<u>PRE-HEARING ORDER NO. 3</u>**

The parties appeared by telephone on March 25, 2019 for hearing on Respondent's motion for a protective order and to establish a briefing schedule for the dispositive motions each party intends to bring, the submission of which was approved by the Arbitrator at the joint request of the parties. Michael Mogan appeared for Claimant and Jacqueline Young appeared for Respondent. Good cause appearing,

IT IS HEREBY ORDERED:

1. The briefing and hearing schedule for the dispositive motions shall be as follows:

   A. The motions shall be filed on before April 30, 2019.

   B. Responses shall be filed on or before May 21, 2019.

   C. Replies, if any, shall be filed on or before June 4, 2019.

   D. The hearing shall be on June 11, 2019 at 1:30 PM and shall be conducted by telephone conference to be arranged by the AAA.

   E. Memoranda in support of and in opposition to the motions shall be no longer than fifteen pages and replies shall be no longer than ten pages. These limits may be modified by agreement of the parties without further approval by the Arbitrator.

2. Respondent's motion for a protective order is granted; the order shall be in a separate document basically in the form of the proposed order submitted by Respondent with modifications as discussed in the telephonic hearing or determined by the Arbitrator to be appropriate.

   //

3. To the extent not superseded by the provisions of paragraph 1 above, Prehearing Order No. 2 remains in full force and effect.

Dated: March 26, 2019

_____
    Alan R. Jampol, Arbitrator

# Exhibit A-104



## Case Number 01-18-0003-7337

### Veronica McCluskey

Claimant

v.

### Airbnb, Inc.

Respondent

### PRE-HEARING ORDER NO. 4
### Protective Order

Respondent Airbnb, Inc. has requested a protective order in connection with discovery in this matter. The request was addressed by the parties in a telephonic prehearing conference on March 19, 2019. After reviewing Respondent's application, Claimant's opposition, and Respondent's reply, and finding that good cause exists for the issuance of a protective order, as the voluntary exchange of documents in connection with such discovery as may be permitted in this matter is likely to involve confidential, proprietary, trade secret, private or privileged information requiring special protection from public disclosure and from use for any purpose other than this arbitration,

IT IS HEREBY ORDERED:

1.    In this Protective Order, the words set forth below shall have the following meanings:

    a.    "Proceeding" means the above-entitled proceeding (Case No. 01-18-0003-7337).

    b.    "Arbitrator" means Alan R. Jampol, or any other arbitrator or American Arbitration Association ("AAA") personnel to which this Proceeding may be assigned.

    c.    "Confidential" means any information which is in the possession of a Designating Party who believes in good faith that such information is entitled to confidential treatment under applicable law.

    d.    "Confidential Materials" means any Documents, Testimony or Information as defined below designated as "Confidential" pursuant to the provisions of this Protective Order.

    e.    "Designating Party" means the Party that designates Materials as "Confidential."

f.  "Disclose" or "Disclosed" or "Disclosure" means to reveal, divulge, give, or make available Confidential Materials, or any part thereof, or any information contained therein.

g.  "Documents" means (i) any "Writing," "Original," and "Duplicate" as those terms are defined by California Evidence Code Sections 250, 255, and 260, which have been produced in this Proceeding by any person, and (ii) any copies, reproductions, or summaries of all or any part of the foregoing.

h.  "Information" means the content of Documents or Testimony.

i.  "Testimony" means all depositions, declarations or other testimony taken or used in this Proceeding.

2.  The Designating Party shall have the right to designate as "Confidential" any Documents, Testimony or Information that the Designating Party in good faith believes to contain non-public information that is entitled to confidential treatment under applicable law.

3.  The entry of this Protective Order does not alter, waive, modify, or abridge any right, privilege or protection otherwise available to any Party with respect to the discovery of matters, including but not limited to any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

4.  Any Documents, Testimony or Information to be designated as "Confidential" must be clearly so designated before the Document, Testimony or Information is Disclosed or produced. The Parties may agree that the case name and number are to be part of the "Confidential" designation.  The "Confidential" designation should not obscure or interfere with the legibility of the designated Information.

a.  For Documents (apart from transcripts of depositions or the arbitral hearing), the Designating Party must affix the legend "Confidential" on each page of any Document containing such designated Confidential Material.

b.  For Testimony given in depositions the Designating Party may either:

i.  identify on the record, before the close of the deposition, all "Confidential" Testimony, by specifying all portions of the Testimony that qualify as "Confidential;" or

ii.  designate the entirety of the Testimony at the deposition as "Confidential" (before the deposition is concluded) with the right to identify more specific portions of the Testimony as to which protection is sought within 30 days following receipt of the deposition transcript.  In circumstances where portions of the deposition Testimony are designated for protection, the transcript pages containing "Confidential" Information may be separately bound by the stenographer, who must affix to the top of each page the legend "Confidential," as instructed by the Designating Party.

c.      For Information produced in some form other than Documents, and for any other tangible items, including, without limitation, compact discs or DVDs, the Designating Party must affix in a prominent place on the exterior of the container or containers in which the Information or item is stored the legend "Confidential."  If only portions of the Information or item warrant protection, the Designating Party, to the extent practicable, shall identify the "Confidential" portions.

5.   The inadvertent production by any of the undersigned Parties or non-Parties to the Proceedings of any Document, Testimony or Information during discovery in this Proceeding without a "Confidential" designation, shall be without prejudice to any claim that such item is "Confidential" and such Party shall not be held to have waived any rights by such inadvertent production.  In the event that any Document, Testimony or Information that is subject to a "Confidential" designation is inadvertently produced without such designation, the Party that inadvertently produced the document shall give written notice of such inadvertent production within twenty (14) days of discovery of the inadvertent production, together with a further copy of the subject Document, Testimony or Information designated as "Confidential" (the "Inadvertent Production Notice").  Upon receipt of such Inadvertent Production Notice, the Party that received the inadvertently produced Document, Testimony or Information shall promptly destroy the inadvertently produced Document, Testimony or Information and all copies thereof, or, at the expense of the producing Party, return such together with all copies of such Document, Testimony or Information to counsel for the producing Party and shall retain only the "Confidential" designated Materials.  Should the receiving Party choose to destroy such inadvertently produced Document, Testimony or Information, the receiving Party shall notify the producing Party in writing of such destruction within ten (7) days of receipt of written notice of the inadvertent production.  This provision is not intended to apply to any inadvertent production of any Information protected by attorney-client or work product privileges.  In the event that this provision conflicts with any applicable law regarding waiver of confidentiality through the inadvertent production of Documents, Testimony or Information, such law shall govern.

6.   In the event that counsel for a Party receiving Documents, Testimony or Information in discovery designated as "Confidential" objects to such designation with respect to any or all of such items, said counsel shall advise counsel for the Designating Party, in writing, of such objections, the specific Documents, Testimony or Information to which each objection pertains, and the specific reasons and support for such objections (the "Designation Objections").  Counsel for the Designating Party shall have thirty (30) days from receipt of the written Designation Objections to either (a) agree in writing to de-designate Documents, Testimony or Information pursuant to any or all of the Designation Objections and/or (b) file a request with the Arbitrator seeking to uphold any or all designations on Documents, Testimony or Information addressed by the Designation Objections (the "Designation Request").  Pending a resolution of the Designation Request by the Arbitrator, any and all existing designations on the Documents, Testimony or Information at issue in such Designation Request shall remain in place.  The Designating Party shall have the burden on any Designation Request of establishing the applicability of its "Confidential" designation.   In the event that the Designation Objections are neither timely agreed to nor timely addressed in the Designation Request, then such Documents, Testimony or Information shall be de-designated in accordance with the Designation Objection applicable to such material.

7.   Access to and/or Disclosure of Confidential Materials designated as "Confidential" shall be permitted only to the following persons:

a.      the Arbitrator;

b.      Attorneys of record in the Proceedings and their affiliated attorneys, paralegals, clerical and secretarial staff employed by such attorneys who are actively involved in the Proceedings and are not employees of any Party.

c.       In-house counsel to the undersigned Parties and the paralegal, clerical and secretarial staff employed by such counsel.  Provided, however, that each non-lawyer given access to Confidential Materials shall be advised that such Materials are being Disclosed pursuant to, and are subject to, the terms of this Protective Order and that they may not be Disclosed other than pursuant to its terms;

d.      the non-designating Parties, including their officers, directors, partners, members, and employees to whom Disclosure is reasonably necessary for the prosecution and defense of this Proceeding, providing that prior to the Disclosure of Confidential Materials to any such Party or counsel for the Party making the Disclosure shall deliver a copy of this Protective Order to such person, shall explain that such person is bound to follow the terms of such Order, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A;

e.      stenographers in this Proceeding (whether at depositions, hearing, or any other proceeding);

f.      any deposition or hearing witness in the Proceeding who previously has had access to the Confidential Materials, or who is currently or was previously an officer, director, partner, member, employee or agent of an entity that has had access to the Confidential Materials;

g.      any deposition or hearing witness in the Proceeding who previously did not have access to the Confidential Materials; provided, however, that each such witness given access to Confidential Materials shall be advised that such Materials are being Disclosed pursuant to, and are subject to, the terms of this Protective Order and that they may not be Disclosed other than pursuant to its terms;

h.      outside experts or expert consultants consulted by the undersigned Parties or their counsel in connection with the Proceeding, whether or not retained to testify at a hearing; provided, however, that prior to the Disclosure of Confidential Materials to any such expert or expert consultant, counsel for the Party making the Disclosure shall deliver a copy of this Protective Order to such person, shall explain its terms to such person, and shall secure the signature of such person on a statement in the form attached hereto as Exhibit A.  It shall be the obligation of counsel, upon learning of any breach or threatened breach of this Protective Order by any such expert or expert consultant, to promptly notify counsel for the Designating Party of such breach or threatened breach; and any other person that the Designating Party agrees to in writing.

8.  Confidential Materials shall be used by the persons receiving them only for the purposes of preparing for, conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding, and not for any business or other purpose whatsoever.

9.  Any Party to the Proceeding (or other person subject to the terms of this Protective Order) may ask the Arbitrator, after appropriate notice to the other Parties to the Proceeding, to modify or grant relief from any provision of this Protective Order.

10. Complying with the terms of this Protective Order shall not:

a.      operate as an admission by any person that any particular Document, Testimony or Information marked "Confidential" contains or reflects trade secrets, proprietary, confidential or competitively sensitive business, commercial, financial or personal information; or

b.      prejudice in any way the right of any Party (or any other person subject to the terms of this Protective Order):

i.      to seek a determination by the Arbitrator of whether any particular Confidential Material should be subject to protection as "Confidential" under the terms of this Protective Order; or

ii.      to seek relief from the Arbitrator on appropriate notice to all other Parties to the Proceeding from any provision(s) of this Protective Order, either generally or as to any particular Document, Material or Information.

11. Any Information that may be produced by a non-Party witness in discovery in the Proceeding pursuant to subpoena or otherwise may be designated by such non-Party as "Confidential" under the terms of this Protective Order, and any such designation by a non-Party shall have the same force and effect, and create the same duties and obligations, as if made by one of the undersigned Parties hereto.  Any such designation shall also function as a consent by such producing Party to the authority of the Arbitrator in the Proceeding to resolve and conclusively determine any request or other application made by any person or Party with respect to such designation, or any other matter otherwise arising under this Protective Order.

12. If any person subject to this Protective Order who has custody of any Confidential Materials receives a subpoena or other process ("Subpoena") from any government or other person or entity demanding production of Confidential Materials, the recipient of the Subpoena shall promptly give notice of the same by electronic mail transmission, followed by either express mail or overnight delivery to counsel of record for the Designating Party, and shall furnish such counsel with a copy of the Subpoena.  Upon receipt of this notice, the Designating Party may, in its sole discretion and at its own cost, move to quash or limit the Subpoena, otherwise oppose production of the Confidential Materials, and/or seek to obtain confidential treatment of such Confidential Materials from the subpoenaing person or entity to the fullest extent available under law.  The recipient of the Subpoena may not produce any Documents, Testimony or Information pursuant to the Subpoena prior to the date specified for production on the Subpoena.

13. Nothing in this Protective Order shall be construed to preclude either Party from asserting in good faith that certain Confidential Materials require additional protection.  The Parties shall meet and confer to agree upon the terms of such additional protection.

14. If, after execution of this Protective Order, any Confidential Materials submitted by a Designating Party under the terms of this Protective Order is Disclosed by a non-Designating Party to any person other than in the manner authorized by this Protective Order, the non-Designating Party responsible for the Disclosure shall bring all pertinent facts relating to the Disclosure of such Confidential Materials to the immediate attention of the Designating Party.

15. This Protective Order is without prejudice to the right of any Party to knowingly waive the applicability of this Protective Order to any Confidential Materials designated by that Party. If the Designating Party uses Confidential Materials in a non-Confidential manner, then the Designating Party shall advise that the designation no longer applies.

16. The Parties shall meet and confer regarding the procedures for use of Confidential Materials at the arbitral hearing and shall move the Arbitrator for entry of an appropriate order.

17. Nothing in this Protective Order shall affect the admissibility of Confidential Materials.

18. This Protective Order shall continue to be binding after the conclusion of this Proceeding and all subsequent proceedings arising from this Proceeding, except that a Party may seek the written permission of the Designating Party or may move the Arbitrator for relief from the provisions of this Protective Order. To the extent permitted by law, the Arbitrator shall retain jurisdiction to enforce, modify, or reconsider this Protective Order, even after the Proceeding is terminated.

19. Upon written request made within thirty (30) days after the settlement or other termination of the Proceeding, the Parties shall have thirty (30) days to either

(a) promptly return to counsel for each Designating Party all Confidential Materials and all copies thereof (except that counsel for each Party may maintain in its files, in continuing compliance with the terms of this Protective Order, all work product, and one copy of each pleading filed with the Arbitrator [and one copy of each deposition together with the exhibits marked at the deposition)]*,

(b) agree with counsel for the Designating Party upon appropriate methods and certification of destruction or other disposition of such Confidential Materials, or

(c) as to any Documents, Testimony or other Information not addressed by sub-paragraphs (a) and (b) of this paragraph 19, file a request with the Arbitrator seeking an order regarding proper preservation of such Materials. To the extent permitted by law the Arbitrator shall retain continuing jurisdiction to review and rule upon the request referred to in sub-paragraph (c) herein.

20. Upon rendition of the Award in this matter, the Arbitrator shall promptly dispose of any documents produced by either party whether or not marked Confidential unless, prior to the

issuance of the Award, one of the parties specifically and in writing requests return of one or more, or all, document(s) in the Arbitrator's possession. Upon such request, the requesting party shall promptly arrange and pay for the transfer of the requested document(s) to that party.

Dated:  May 6, 2019

_____
Alan R. Jampol, Arbitrator

**EXHIBIT A**
**CERTIFICATION RE CONFIDENTIAL DISCOVERY MATERIALS**
I hereby acknowledge that I, _____[NAME], _____
_____ [POSITION AND EMPLOYER], am about to receive Confidential Materials
supplied in connection with the Proceeding, AAA Case No. 01-18-0003-7337.  I certify that I
understand that the Confidential Materials are provided to me subject to the terms and
restrictions of the Protective Order in this Proceeding.  I have been given a copy of the
Protective Order; I have read it, and I agree to be bound by its terms.

I understand that Confidential Materials, as defined in the and Protective Order, including any
notes or other records that may be made regarding any such materials, shall not be Disclosed
to anyone except as expressly permitted by the Protective Order.  I will not copy or use, except
solely for the purposes of this Proceeding, any Confidential Materials obtained pursuant to this
Protective Order, except as provided therein or otherwise ordered by the Arbitrator in the
Proceeding.

I further understand that I am to retain all copies of all Confidential Materials provided to me in
the Proceeding in a secure manner, and that all copies of such Materials are to remain in my
personal custody until termination of my participation in this Proceeding, whereupon the copies
of such Materials will be returned to counsel who provided me with such Materials.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is
true and correct. Executed this ___ day of _____, 2019, at _____.

DATED: _____        BY: _____
                                                                           Signature

                                                                           _____
                                                                           Title

                                                                           _____
                                                                           Address

                                                                           _____
                                                                           City, State, Zip

                                                                           _____
                                                                           Telephone Number

Dated: March 26, 2019

_____
    Alan R. Jampol, Arbitrator

# Exhibit A-105



**Case Number 01-18-0003-7337**

**Veronica McCluskey**

Claimant

v.

**Airbnb, Inc.**

Respondent

<u>**PRE-HEARING ORDER NO. 5**</u>

On June 11, 2019, the parties appeared by telephone for a prehearing conference to determine the status of the pending dispositive motions. Michael Mogen appeared for Claimant and Jacqueline Young and Adriana Rubino appeared for Respondent. Pursuant to the agreement of the parties, and good cause appearing,

IT IS HEREBY ORDERED:

1. Claimant shall have until June 18, 2019 to submit directly to the Arbitrator a reply in support of her dispositive motion. That motion shall thereupon be submitted for decision based on the papers submitted, without a hearing.

2. Claimant withdraws her claim of violation of the Consumer Legal Remedy Act without prejudice.

3. The Arbitrator will issue a ruling on Claimant's dispositive motion on or before June 27, 2019 and will be unavailable after that until July 11.

4. Further action on the dispositive motion of Respondent is deferred pending a ruling on Claimant's dispositive motion.

    A. If that motion is granted, the parties shall meet, confer, and advise the Arbitrator as to what should be done regarding closing or dismissing the arbitration.

    B. If that motion is denied, the parties shall meet and confer as to further action on Respondent's dispositive motion and inform the Arbitrator of their agreement, if any. Either party may request a prehearing telephonic conference to deal with any matter not resolved by agreement.

5. Section II.D. of Respondent's dispositive motion will be disregarded.

6.  The parties should from this point forward communicate with the Arbitrator directly rather than through the AAA, but copies of any communications with the Arbitrator shall be provided to the other party and to the AAA.


Dated: June 11, 2019

_____
        Alan R. Jampol, Arbitrator

# Exhibit A-106

AMERICAN
ARBITRATION
ASSOCIATION®  |  INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

**Case Number 01-18-0003-7337**

**Veronica McCluskey**

Claimant

v.

**Airbnb, Inc.**

Respondent

**PRE-HEARING ORDER NO. 6**

**RULING ON CLAIMANT'S MOTION TO DISMISS ARBITRATION**

The undersigned Arbitrator read and considered Claimant's Motion for Summary Judgment, which is treated as a motion to dismiss the arbitration, the declarations and statement of material facts submitted in support of the motion, Respondent's opposition to the motion and accompanying declarations and response to Claimant's separate statement of material facts, and Claimant's reply. The parties agreed to submit this motion for decision based upon the foregoing submissions without an oral hearing. Therefore, good cause appearing, the Arbitrator now rules as follows.

**Ruling on the Motion**

For the reasons set forth below, the motion is DENIED.

**Analysis**

**1. Introduction - Identification of the Issues**

Claimant asserts that the agreement between the parties, consisting of the Terms of Service ("TOS") version 6 or 7 (the particular version is immaterial to this issue) is illegal and unenforceable because Respondent was required to have, but admittedly did not have, a broker's license from the California Real Estate Commissioner in order to carry on the business it was conducting. Respondent denies that such a license was or is necessary for it to legally conduct its business.

The threshold issue, a common issue in many cases where an agreement containing an arbitration provision is claimed to be unenforceable for any reason (e.g. illegality, unconscionability, fraud), is who decides that

273

issue. Here, Claimant has a variation on that issue; she asserts that the illegality of the entire agreement ipso facto invalidates the arbitration provision that is a part of that agreement, so she is entitled to have the court, and not the arbitrator, decide the case. In other words, Claimant insists that the arbitration be dismissed and the matter returned to the Superior Court from whence it came because the agreement's illegality also eviscerates the arbitration provision.

Courts have long enunciated the strong public policy, both in California and in the federal courts, in favor of arbitration. *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal. 3d 699, 706-707 ["[arbitration has become an accepted and favored method of resolving disputes, praised by the courts as an expeditious and economical method of relieving over-burdened civil calendars" –citations omitted]; *AT&T Mobility LLC v. Concepcion* 563 U.S. 333 (2011).

In order to deal with the claim that a contract with an arbitration provision is unenforceable and to carry out the strong public policy in favor of arbitration, courts have devised a two-part approach. The arbitration provision is considered to be severable from the remainder of the agreement and the issue of enforceability is addressed solely to that provision. Thus, if the arbitration agreement itself is claimed to be unenforceable, that determination is made by the court. If the overall agreement is claimed to be unenforceable, but not the arbitration agreement itself, the arbitrator decides the issue. See *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 449; *Rent-a-Center, West, Inc. v. Jackson* 561 U.>s. 63, 70-72 (2010).

Surprisingly, at least from what I have read in the briefs, the specific issue here seems to be a new one. That is, who decides whether an agreement is illegal in the first instance if that determination is necessary to invalidate the arbitration provision as well as establish the prima facie claim? That particular variant has apparently not been addressed, at least from the authorities cited by the parties.

## 2. The Resolution under California Law

Claimant contends that the arbitrator must determine whether the contract is illegal, and if it is, he must then abandon the arbitration and return the matter to the Superior Court. Claimant primarily relies for this proposition on two California Supreme Court cases - *Loving & Evans v. Blick* (1949) 33 Cal.2nd 603 ("*Loving*"), along with some subsequent cases applying the holding in *Loving* (see Claimant's motion at page 6 lines 4-14), and *Sheppard, Mullin, Richter & Hampton LLP v. J-M Manufacturer Co.* (2018) 6 Cal.5th 59 ("*Sheppard Mullin*").

Respondent points out that AAA Consumer Arbitration Rule 14(b) specifies that the arbitration provision is considered to be separate and

274

severable and that the arbitrator shall determine whether the agreement is illegal, which is consistent with the trial court's order compelling arbitration of this matter. However, the AAA Rule, incorporated into the TOS, is simply another provision of the contract that presumably will not save the arbitration agreement if the contract is ruled to be illegal. However, the circumstances of this case differ materially from those in either *Loving* or *Sheppard Mullin*, requiring a different approach to the issue here.[1]

In *Loving*, the California Supreme Court held that the illegality of an agreement (because, as is claimed here, a contractor seeking compensation violated the Business & Professions Code and public policy behind that statute by doing work without the required license) permeated the entire contract, rendering even the arbitration provision unenforceable.

In *Sheppard Mullin*, the Supreme Court held, following *Loving*, that a violation of the Rules of Professional Conduct (the failure to disclose a known conflict to one of two clients) made the entire agreement, including the arbitration provision, unenforceable.

Taken together, it would appear that *Loving* and *Sheppard Mullin* hold that if a contract is illegal, that illegality permeates the entire contract, including the arbitration provision in the contract. While the type of illegality might have some effect upon the outcome of this analysis, the kind of illegality here is the kind considered in *Loving* so there is no need to examine any exceptions from the rule set forth in *Loving*.

The analytical problem here is that Respondent is not bringing this action to enforce the contract or to enforce an arbitration award based upon the allegedly illegal contract. The action is brought by Claimant for damages.[2] On Respondent's motion, the trial court ordered the claim to arbitration despite knowing that Claimant contends that the entire contract is illegal and therefore the arbitration provision is unenforceable.

In both *Loving* and *Sheppard Mullin,* the party seeking to recover for breach of the agreement had already received an arbitration award it was trying to enforce. In both cases, the findings of the arbitrator established the illegality of the contract, so by the time the matter came to the Court, the only issue was the legal effect of the illegality.

---

[1] Because I do not address or reach the substantive issue of whether the TOS are illegal, I have disregarded the discussion in §§ III.B. and E. of Respondent's Opposition to the motion.  The authorities cited by Respondent really go to the legality or illegality of the TOS rather than to the issue of arbitrability and will be considered when the substantive issues are considered.

[2] Because I have not at this point attempted to address the substance of the claim, I really am not sure just what Claimant is seeking and on what basis.

Here, we have a different problem, one that seems impossible to reconcile with Claimant's position. The issue of the illegality of the contract has not been decided and is a matter of substantial dispute between the parties. Even under *Loving* and *Sheppard Mullin,* we cannot know if the arbitration provision is enforceable, because the issue of illegality has not been decided. So, the question once again boils down to who is to decide that issue at the outset.

The trial court here ordered the matter to arbitration and so decided that the illegality issue would be resolved by arbitration. However, if the contract is indeed illegal, the arbitration provision is illegal and the matter cannot be resolved by arbitration. Moreover, if I find that the agreement is illegal and the matter thereupon is returned to the Superior Court, what is left for that court to decide? Does it retry the issue of illegality? Does it decide only the issue of damages? These both seem like an illogical and inefficient way to decide the issues here, and I have seen no legal authority for that result in any of the cases cited by the parties that I have read (and I must confess that I did not read every case cited in the three briefs).

I have seen nothing to suggest that the Supreme Court has decided that a mere claim of illegality is sufficient to abrogate the arbitration provision in a contract. The trial court here appears to agree, as it ordered the case to arbitration. Moreover, there is nothing in either *Loving* or *Sheppard Mullin* that supports that notion.

If Claimant is correct that the contract is illegal and for that reason, the arbitration provision is unenforceable, then I should not be deciding this issue at all. In order to grant Claimant's motion, I would have to rule that the agreement is illegal. If I do that, the main issue in the case will have been decided by an arbitrator who ostensibly had no power to do so.

One answer to this problem is having the trial court decide the illegality issue in the first instance without resort to arbitration. This has two problems, however. First, by allowing the mere claim of illegality to invalidate the arbitration provision, issue has been prejudged – the major issue in the case is decided by the court simply because there is a chance that the agreement might be illegal.

Second, as noted above, the trial court here has already made the decision that the mere claim of illegality is insufficient to justify refusal to enforce the arbitration provision of the TOS. I have in effect been ordered to decide the illegality issue. If that decision was wrong, the remedy is to go through the arbitration and get an award. If is in favor of Respondent and Respondent seeks to enforce it, or Claimant seeks to set it aside, the trial court can rule and that ruling can be appealed to the Court of Appeals. This is how the issue arose in both *Loving and Sheppard Mullin*

For the reasons set out above, notwithstanding *Loving* and *Sheppard Mullin,* which I consider to be inapplicable here, I find that under California law, the mere claim of illegality, where that claim is opposed, does not render the arbitration agreement unenforceable, at least in these specific circumstances. Thus, the issue of illegality, as the trial judge ordered, must be determined by the arbitrator.

### 3.  The Resolution under Federal Law

This dispute is subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("FAA") and its requirements by agreement (both version 6 and version 7 of the TOS so provide - §§ 34 and 19.6 respectively). Claimant has so acknowledged at p. 2 of her Reply), and in any event, in the operation of Respondent's business, it is plainly engaged in interstate commerce.

9 U.S.C. § 2 provides that a valid agreement to arbitrate a dispute must be enforced in the same manner as other contracts. As noted above, where the legality or enforceability of a contract is challenged, the arbitration provision is severed out and treated separately. Thus, unless there is a challenge directly to the arbitration provision as opposed to the contract as a whole, the arbitration agreement is enforced and the issue of the illegality of the contract is decided by the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna, supra*; *Rent-A-Center, West, Inc. v. Jackson* 561 U.S. 63, 70-72 (2010); *Preston v. Ferrer* 552 U.S. 346, 353-354 (2008).

The FAA has no exception for claims that a contract with a valid arbitration provision is illegal; that substantive claim must be arbitrated.[3] This is the holding of the U.S. Supreme Court cases cited above, which are binding on California courts. *AT&T Mobility LLC v. Concepcion* 563 U.S. 333, 343 (2011). Thus, regardless of California's policy as set forth in *Loving and Sheppard Mullin,* federal law requires that the issue of illegality as well as all other issues in the case be decided by arbitration.

### 4.  Conclusion

For the reasons set out above, I find that both California law and federal law require that this entire matter be arbitrated, whether or not the TOS are ultimately found to be illegal. Thus, Claimant's motion is denied.

---

[3] Claimant misreads *AT&T v. Concepcion* 563 U.S. 333 (2011) in claiming that "...under the FAA's savings clause, an arbitration agreement is not enforceable if a party establishes a state law contract defense, such as...illegality." *AT&T Mobility* did not hold that or in any way limit or change the severability doctrine set forth in *Buckeye Check Cashing, Inc. v. Cardegna*, *supra*, and other cases cited. *Poublon v. C.H. Robinson Co.* (9th Cir. 2017 846 F.3rd 1251 is inapplicable here, as that case dealt with a direct attack on the arbitrability provision of the contract, not the contract as a whole. See generally Reply p.2.

## 5. Further Activity

The parties shall meet and confer as to whether any further dispositive motions may be submitted by either party and, if so, a proposed briefing schedule for such motions should be submitted to me. If it is agreed that Respondent may submit its dispositive motion, the only brief that remains to be submitted is Respondent's reply. Otherwise, the briefing is concluded. The parties should let me know if they want a hearing on Respondent's motion or wish to submit it without a hearing. If they want a hearing, they should agree on some potential dates (keeping in mind that I will be out of the country from June 28 to July 10 and unavailable on July 12).

If Respondent wishes to submit its dispositive motion and Claimant does not agree to its submission, Respondent may seek such permission, as it did last time. It may simply refer to its prior request or submit a new request with the necessary explanation as set forth in the AAA Consumer Arbitration Rules.

If no further motions are to be submitted, the parties should confer regarding a date for the evidentiary hearing and any further discovery or other activity and submit the agreed dates and schedules to me. If the parties cannot agree, we will hold a further prehearing telephone conference to decide any issue that is left undecided.

Dated: June 19, 2019

_____

Alan R. Jampol, Arbitrator

# Exhibit A-107



## Case Number 01-18-0003-7337

### Veronica McCluskey

Claimant

v.

### Airbnb, Inc.

Respondent

### <u>PRE-HEARING ORDER NO. 7</u>

On August 7, 2019, the parties appeared by telephone for the hearing on Respondent's dispositive motion. Michael Mogen appeared for Claimant and Michele Floyd appeared for Respondent. After discussion with counsel, it appears best to allow Claimant to submit a supplemental brief addressing specifically Version 6 of Respondent's Terms of Service ("V6") to eliminate any confusion as to the issues to be decided in the motion. Therefore, with the agreement of counsel and good cause appearing,

IT IS HEREBY ORDERED:

1. Claimant shall have until September 10, 2019 to submit directly to the Arbitrator a supplemental brief addressing only V6 and any issues arising from V6 that are material to the motion.

2. Respondent shall have until September 24, 2019 to submit directly to the Arbitrator a reply to the supplemental brief.

3. A continued hearing on Respondent's dispositive motion shall be held by telephone on October 10, 2019 at 11:00 AM. The AAA shall arrange the conference call.

4. The supplemental brief and reply shall deal only with V6 and matters unique to V6 and not Version 7 or any matter not particularly applicable to V6.

5. The parties are free to address any issues they wish as to any aspect of the motion at the telephonic hearing. However, counsel have done an excellent job on briefing, and in this kind of motion, the decision usually rests primarily, and often solely, on the papers submitted. Thus, counsel are urged to direct their comments in the telephonic hearing to those aspects of the motion that they feel should be highlighted or emphasized or were in some manner unclear or ambiguous. However, counsel will not be limited as to what they may address in the hearing.

6.  Although entirely voluntary, it might be of help for Claimant to submit with her supplemental brief a statement of the material facts she believes are disputed and require the denial of the motion along with the evidence supporting that fact. As discussed, these should not be minor facts or facts that are not truly important (keeping mind that if there is an evidentiary hearing, that kind of fact will in all likelihood not play a role, or at least not a significant role, in the decision), but the key facts upon which the claim is likely to turn. If Claimant does so, Respondent may, but is not required to, submit its response, stating why a claimed disputed material fact is not material, or why it is not really disputed, or why the evidence submitted by Claimant does not support the claimed fact. As with oral argument, the effort should be to focus on the key facts.

Dated: August 7, 2019

_____
      Alan R. Jampol, Arbitrator

# Exhibit B-1

MICHAEL MOGAN (304107)
LAW OFFICE OF MICHAEL MOGAN P.C.
4470 W. SUNSET BLVD., #90256
LOS ANGELES, CA 90027
Telephone: (949) 424-5237
mm@michaelmogan.com
Attorney for Claimant
VERONICA MCCLUSKEY

_____

VERONICA MCCLUSKEY

        Claimant,

         v.

AIRBNB INC.

        Respondent,

_____

) **AAA CASE** 01-18-0003-7337
) CLAIMANT'S MOTION FOR SUMMARY
) JUDGMENT; MEMORANDUM OF POINTS
) AND AUTHORITIES, EXHIBITS 1 – 8
) AND STATEMENT OF UNDISPUTED
) FACTS
) Date:  June 11, 2019
) Time: 1:30 PM
)
) Arbitrator: Mr. Alan R. Jampol
) Action Filed: October 8, 2018
) Arbitration Hearing: None set.
)
)

Filed concurrently with

1. Declaration of Michael Mogan
2. Declaration of Veronica McCluskey
3. Statement of Undisputed Facts

**TO THE HONORABLE ARBITRATOR, AND TO ALL PARTIES AND TO THEIR**

**ATTORNEYS OF RECORD HEREIN:**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION………………………………………………………1

II.  STATEMENT OF UNDISPUTED FACTS…………………………..1

III. ARGUMENTS………………………………………………………..5
   A.  Applicable Legal Standard
   B.  Arbitration Is Not Appropriate Because All Contracts Executed
      Between Veronica and Airbnb Containing Any Arbitration Clauses
      Were Illegal and Against Public Policy…………………………………5
      1.   AIRBNB Inc. Is A Real Estate Broker Under California Business
          and Professions Code Sec. 10130……………………………………8
      2.   AIRBNB Inc. Is Not Exempt From The Requirements of
          Section 10130……………………………………………………...8
      3.   Airbnb Inc. Is Not Exempt from The Licensing Requirement
          Under Section 10130 For The Finder's Exception…………………...9
      4.   Since The Central Purpose of The Contracts Between Veronica
          and Airbnb Inc. Are Tainted With Illegality Such Contracts
          Cannot Be Enforced……………………………………………11

IV. CONCLUSION………………………………………………….……...12

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*All Points Traders, Inc. v. Barrington Associates*

    *(1989)* 211 Cal.App.3d 723…………………………………………..6,11

*Batson v. Strehlow*

    (1968) 68 Cal.2d 662……………………………………………10

*Bovard v. American Horse Enterprises, Inc.*

    (1988) 201 Cal. App. 3d 832…………………………………5,7

*Buckeye Check Cashing, Inc. v. Cardegna*

    (2006), 546 U.S. 440……………………………………………5

*Chateau v. Singla*

    (1896) 114 Cal. 91…………………………………………6

*Davis v. Chipman*

    (1930) 210 Cal. 609…………………………..………………..10

*Firpo v. Murphy*

    (1925) 72 Cal.App. 249………………………………………6

*Gatti v. Highland Park Builders, Inc.*

    (1946) 27 Cal.2d 687…………………………………………6

*Haas v. Greenwald,*

    (1925) 196 Cal. 236……………………..………………………6

*Holm v. Bramwell*

    (1937) 20 Cal.App.2d 332…………………………………………6

*Levinson v. Boas*

    (1907) 150 Cal. 185…………………………………………6

*Lewis & Queen v. N. M. Ball Sons*

    *(1957)* 48 Cal.2d 141……………………..………………………6

*Loving & Evansv. Blick*

    *(1949)* 33 Cal.2d 603……………………………………………6,7,11

*Marathon Entertainment, Inc. v. Blasi*

    (2008) 42 Cal.4th 974……………………………………………………11

*Moore v. Moore*

    (1900) 130 Cal. 110………………………………………………………6,7

*Peleg v. Neiman Marcus Group, Inc.*

    (2012) 204 Cal.App.4th 1425…………………………………………..7

*Phillips v. McIntosh*

    (1942) 51 Cal.App.2d 340………………………………………………6

*Pinewood Investors v. City of Oxnard*

    (1982) 133 Cal. App.3d 1030……………………………..………………5

*Prime v. Hyne*

    (1968) 260 Cal. App. 2d 397……………………..…………………6-7

*Safeway Stores v. Retail Clerks etc. Assn.*

    (1953) 41 Cal.2d 567……………………………………..………………6

*Savage v. Pacific Gas & Electric Co. v. Savage*

    *(1993)* 21 Cal. App. 4th 434……………………………..……………5

*Schantz v. Ellsworth*

    (1971) 19 Cal.App.3d 289………..…………………………..……………8

*Shaffer v. Beinhorn*

    (1923) 190 Cal. 569……………………………………………………10

*Sheppard, Mullin, Richter & Hampton LLP v. J-M Mfr. Co.*

    (2018) 6 Cal. 5th 59…………………………………………………..5

*Tyrone v. Kelley*

    (1973) 9 Cal.3d 1………….………………………………………9-10

*Wise v. Radis*

    (1925) 74 Cal.App. 765……………………………………………6,7

*Zappas v. King Williams Press, Inc.*

    (1970) 10 Cal.App.3d 768………………………………………8,9

TABLE OF AUTHORITIES

*Zavala v. Arce*

(1997) 58 Cal.App.4th 915…………………………………….……………5

**Statutes**

California Code Of Civil Procedure section 437(c)(a)………………………………5

California Code Of Civil Procedure section 1281……………………………………7

California Civil Code section 1667………………………………………………………5

California Civil Code section 1940(b)(1)……………………………..……………8,9

California Civil Code section 1940(b)(2)……………………………..……………8,9

California Business and Professions Code Section 10130…………..………………8

California Business and Professions Code Section 10131.01………..…………….8,9

California Business and Professions Code Section 10131, subd. (b)……………….8

## CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Arbitration is not appropriate because all contracts executed between claimant Veronica McCluskey ("claimant") and Airbnb Inc. ("Respondent" or "Airbnb") were illegal and against public policy. California Business and Professions Code Section 10130 states it is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license. Airbnb Inc. has no such license nor is Airbnb Inc. exempt from such requirement. The arbitration agreement executed by claimant on 9/4/17 (version 7) is illusory and unenforceable because Respondent's unilateral modifications apply after claimant's causes of action had already accrued in June 2017. Version 6 of claimant's agreement with Airbnb, was executed by Claimant on December 7, 2016 and such agreement was illegal and against public policy

### II. STATEMENT OF UNDISPUTED FACTS

At all times relevant to this claim, Airbnb Inc. has not held a real estate broker's license issued by the California Department of Real Estate.  Michael Mogan Declaration ("Mogan Decl.") ¶ 2. Airbnb provides an online platform that connects third parties who wish to offer their unique listings (called "Hosts") with third-party travelers seeking to book listings (called "Guests). Hosts are responsible for listing their accommodations on the platform, including deciding to whom, when and on what material terms they offer their accommodations. (Airbnb Answering Statement" hereafter "Answer")  Airbnb's website allows Hosts to authorize other Airbnb users—who are often experienced Hosts, themselves—to help them by accepting booking requests, messaging and welcoming Guests, and updating listing fees and availability for the Host's accommodations. ("Airbnb Answering Statement" hereafter "Answer"; A 5)  This is referred to as "co- hosting." Id. at A6.  Airbnb defines a "Host" as a Member who creates a listing via their website, application and Services. Airbnb defines a "Guest" as a Member who requests from a Host a booking of a listing via Airbnb's website, application or services, or a member who stays at an accommodation and is not the host for the associated listing. (Declaration of Kyle Miller ("Miller Decl."), Ex. J (Version 6) ¶ Para. 1.; A 39)

Version 6 of claimant's agreement with Airbnb, was executed by Claimant on December 7, 2016. (Miller Decl.¶ A 44) Version 6 contains no definition of the term "**co-host**" nor any contractual terms between Claimant and Airbnb governing any co-host relationship between Claimant and any 3rd party Airbnb hosts. (see Miller Decl., Ex. J; A184-206). The phrase "co-host" is not even mentioned in the entire Version 6 of the agreement. *Id.* The general allegations in the Complaint make it clear that the injuries Claimant complains of occurred in June 2017.(Ex. 1; A229-247)  Claimant executed Version 7 of an agreement with Airbnb on September 4, 2017 which is after Claimant complains she was injured. (Miller Decl.¶ 17; A44, A47) Version 7 of the agreement introduces the title "co-host" and states Airbnb may enable hosts to authorize other Members ("Co-Hosts") to administer the Host's Listing(s), and to bind the host and take certain actions in relation to the listing(s) as permitted by the host, such as accepting booking requests, messaging and welcoming Guests, and updating the Listing Fee and calendar availability ("Co-Host Services"). (Miller Decl., A ). In Version 7 Airbnb specifically states Airbnb is not a party to any agreements between Hosts and Co-Hosts. (Miller Decl. ¶ 2; A39-40).

In May 2017 Plaintiff accepted an employment position to work for William and Roxanne Hendricks ("The Hendricks") to manage their Los Angeles Airbnb rental property located at 312 West 5th Street, #705, Los Angeles, CA 90013. Id. ("McCluskey Decl."), ¶ 2. Claimant never acted in the capacity as a "Host" where she rented her properties to the Hendricks nor was she ever a guest at the Hendrick's rental property as so defined in the TOS (Ver. 6). Id at ¶ 3 In June of 2017 Claimant caught William Hendricks smuggling illegal drugs through the United States Postal Service. Id at ¶ 4. On June 21st 2017, after becoming aware of some social media posts allegedly made by Claimant,  Defendant Sanaz Ebrahimi ("Sanaz") stated in part to Jeff Henry ("Jeff") over email that we temporarily blocked Claimant's account because this is the second drug-related accusation that she has lodged against an individual in the community in an attempt to get a small amount of money. (Ex. 5; A284-285) Sanaz further states William Hendricks is no longer ghosted under investigation after Airbnb initially received the report and he was aware of the claim lodged against him and she further stated William Hendricks was no longer under

investigation as he has been fully cooperative and has been sending information as requested. Id. at 285. Sanaz later stated to Jeff Henry that Fox News doesn't seem entirely interested in running the piece. (Id. at 283) Jeff soonafter replied "Re: interest in the piece, the outlet may be interested, the way they communicated is standard for the press." (Id. at 282)  On June 22nd 2017 Jeff Henry stated "he would like to move forward with removal of the host [Claimant] who is also a host from the platform and David Willner also stated he was in favor of removing the co-host [Claimant] who is also a host... (Id. at 281) The subject line in the email chain reads "Re: SM FYI: Co-host reports drug smuggling at Host's listing, has told LA news channels." (Id.)

In July 2018 William Hendricks admitted to purchasing illegal drugs over the internet and smuggling the drugs through the United States Postal Service to places where he travelled including sending drugs to his downtown Los Angeles Airbnb rental and admitted the package containing illegal drugs Claimant complained to Airbnb Inc and the Los Angeles police department in June 2017 belonged to him. See Ex. 8 William Hendrick's Decl ¶ 4, 8 and 9; A 294-295. Prior to Airbnb deleting plaintiff's SuperHost account in June 2017, Plaintiff booked rentals through Airbnb's websites with guests for stays less than 30 days as well as stays in excess of 30 days and Airbnb collected the rents and remitted the net amount less Airbnb fees and any applicable taxes to Claimant. See McCluskey Decl. ¶5.  Per the language in Airbnb's agreements, Airbnb collects rents from guests of Airbnb Host rental properties and remits these amounts to the Host net of Airbnb's service fees as confirmed in their agreements:

> Version 6 states "In consideration for the use of Airbnb's online marketplace and platform, Airbnb charges Service Fees. Airbnb Payments collects these Service Fees pursuant to the Payments Terms, and, where applicable, may also collect Taxes (such as VAT in Europe) in respect of the Host Fees and Guest Fees. Airbnb Payments deducts the Host Fees from the Accommodation Fees before remitting the balance to the Host as described in the Payments Terms. (Miller Decl ¶ Ex. J, Para 9.D; see A 191)

> Version 7 states " Airbnb may charge fees to Hosts ("Host Fees") and/or Guests ("Guest Fees") (collectively, "Service Fees") in consideration for the use of the Airbnb Platform. More information about when Service Fees apply and how they are calculated can be found on our Service Fees page. The service Fees page states: When a reservation is confirmed, we charge guests a service fee between 5% and 15% of the reservation subtotal. (Miller Decl ¶ Ex. K, Para 6; see A 213)

On January 5, 2018 Claimant filed a complaint against Airbnb on January 5, 2018 (CGC-18-

563528) which included claims for emotional distress, negligence, violations of the CLRA and breach of fiduciary duty for the conduct of Airbnb from May through June 2017. (Ex. 4 ). On May 30, 2018 the court granted Airbnb Inc.'s motion to compel arbitration. Mogan Decl. ¶ 6. On October 8, 2018 Plaintiff filed for arbitration. Mogan Decl. ¶ 4 .  On December 14, 2018, Airbnb filed their answering statement which included a general denial and sixteen affirmative defenses one such affirmative defense which was "justification." (Ex. 2 A 10)  Airbnb further stated in its answer that they had a contractual right to terminate and/or limit Claimant's accounts and use of the Airbnb platform. Airbnb stated its decisions were further justified by Claimant's conduct, including but not limited to her breach of the TOS and her breach of Community Standards, including but not limited to the following provisions:

**14. Prohibited Activities**

14.1 You are solely responsible for compliance with any and all laws, rules, regulations, and Tax obligations that may apply to your use of the Airbnb Platform. In connection with your use of the Airbnb Platform, []you will not assist or enable others to:

- breach or circumvent any applicable laws or regulations, agreements with third-parties, third-party rights, or our Terms, Policies or Standards;
- violate or infringe anyone else's rights or otherwise cause harm to anyone.

**Community Standards – Security**
* * *

- **Spam, phishing, or fraud**
  You should not . . . make false claims against other members of the community.

**Community Standards – Fairness**
* * *

- **Bullying or harassing others**
  You should not share personal information to shame or blackmail others, target others with unwanted behavior, defame others, or violate our review and content standards.

**Community Standards – Authenticity**
* * *

- **Misrepresenting yourself**
  You should not provide a false name or date of birth, use listings for commercial purposes without your host's permission, have events or parties without your host's approval, maintain duplicate accounts, or create an account if you're under 18.  (see Ex. 2 Answer,  A 10)

III.   **ARGUMENT**

**A. Applicable Legal Standards**

A motion for summary judgment shall be granted if all the papers submitted show there are no triable issues as to any material facts and the moving party is entitled to judgment as a matter of law. C.C.P. § 437c(c). To be "material" for purposes of a summary judgment proceeding, a fact must relate to some claim or defense in issue under the pleadings, and it must also be essential to the judgment in some way. *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926, 68 Cal.Rptr.2d 571.  Admissions of material fact made by the opposing party in pleadings are particularly appropriate support for a summary judgment motion. *Pinewood Investors v. City of Oxnard (1982),* 133 Cal. App. 2d 3d 1030, 1034-35; *Savage v. Pacific Gas & Electric Co. v. Savage (1993)* 21 Cal. App. 4th 434, 444.

**B.    Arbitration Is Not Appropriate Because All Contracts Executed Between Plaintiff and Airbnb Containing Any Arbitration Clauses Were Illegal and Against Public Policy**

In *Buckeye Check Cashing, Inc. v. Cardegna,* the Court held that arbitrators, not courts, are to decide whether the main contract is illegal as usurious. *Buckeye Check Cashing, Inc. v. Cardegna* (2006), 546 U.S. 440, 449.  The Supreme Court held that arbitrators are to decide whether the main contract (which includes an arbitration clause) is illegal and thus void under state law. (Id). Airbnb's arbitration clauses are included in a contract void and the arbitrator should resolve the illegality challenge. Arbitration is not appropriate because all contracts executed between Claimant and Airbnb containing any arbitration clauses were illegal and against public policy.

In *Sheppard, Mullin, Richter & Hampton LLP v. J-M Mfr. Co*., the California Supreme Court recognized that under California law, a party may avoid arbitration if the entire contract containing the arbitration clause is illegal and against public policy. *Sheppard, Mullin, Richter & Hampton LLP v. J-M Mfr. Co.*,(2018) 6 Cal. 5th 59. Under general principles of California contract law, a contract is unlawful and therefore unenforceable, if it is "[c]ontrary to an express provision of law" or "[c]ontrary to the policy of express law, though not expressly prohibited." (Civ. Code, § 1667.); see, e.g., *Bovard v. American Horse Enterprises, Inc*. (1988) 201 Cal. App.

3d 832, 837, 839–841[corporation predominantly produced paraphernalia used to smoke marijuana, making contract for sale of the corporation illegal and void]. There can be no question but that this case presents a clear violation of the statutes regulating Real Estate Brokers.

A contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract. *Loving & Evans v. Blick (1949)*, 33 Cal. 2d 603, 607. (*Gatti v. Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 689; see, also, *Haas v. Greenwald* (1925) 196 Cal. 236, 247; *Wise v. Radis* (1925)74 Cal.App. 765, 774-776; *Holm v. Bramwell* (1937) 20 Cal.App.2d 332, 335-337; *Phillips v. McIntosh* (1942) 51 Cal.App.2d 340, 343; and that "whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case." *Firpo v. Murphy (1925)*, 72 Cal.App. 249, 253; see, also, *Chateau v. Singla (1896)*, 114 Cal. 91, 94; *Moore v. Moore (1900)*, 130 Cal. 110, 113; *Levinson v. Boas (1907)*, 150 Cal. 185, 193.

The reason for judicial refusal to enforce a contract which has an illegal object "is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. *Lewis & Queen v. N. M. Ball Sons (1957)*, 48 Cal.2d 141, 150. While courts have recognized that "questions of public policy are primarily for the legislative department to determine," courts have also held that a contract or transaction may be found contrary to public policy even if the Legislature has not yet spoken to the issue. *Safeway Stores v. Retail Clerks etc. Assn.* (1953) 41 Cal.2d 567, 574. It is generally held that a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself. *Loving & Evans v. Blick (1949)*, 33 Cal.2d 603, 610 E.g., *All Points Traders, Inc. v. Barrington Associates (1989)* ,211 Cal.App.3d 723, 737 [unlicensed person allegedly acted as a real estate broker in violation

of statute].) No tribunal may grant relief under an illegal contract, even if the parties acted in the utmost good faith. *Prime v. Hyne* (1968) 260 Cal.App.2d 397, 402-403. Since a party's right to claim contract illegality cannot be waived, it may be raised at any time in the proceedings. *Bovard v. American Horse Enterprises, Inc*. (1988) 201 Cal.App.3d 832, 837-843. Thus this tribunal may not grant relief under an illegal contract, even if the parties acted in the utmost good faith. Furthermore an award springing out of an illegal contract, which no arbitration forum can enforce, cannot stand on any higher ground than the contract itself.

Section 1281 of the Code of Civil Procedure, providing for submission to arbitration of "any controversy . . . which arises out of a contract," does not contemplate that the parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state. So it is generally held that "a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself." *Loving & Evans v. Blick (1949)*, 33 Cal. 2d 603, 610 In *Moore v. Moore, 130 Cal. 110*, our supreme court quotes Judge Duncan in Swan v. Scott, 11 Serge. & Rawle 155, 164, as follows: "The test whether a demand connected with an illegal transaction is capable of being enforced is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot establish his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant." *Wise v. Radis (1925)*, 74 Cal. App. 765, 775-776.

Version 7 of Airbnb's agreement was executed 9/4/17. An arbitration agreement is illusory and unenforceable if the employer's unilateral modifications apply where an employee's claims have already accrued or are known to the employer. *Peleg v. Neiman Marcus Group, Inc.,* (2012) 204 Cal.App.4th 1425. If claimant allegedly executed version 7 of the agreement with Airbnb on September 4, 2017 yet the tortious conduct of defendants occurred in June 2017, such September 2017 agreement is illusory and unenforceable. Thus, any arbitration or other terms in Version 6 are applicable to claimant's claim against respondent. In considering Version 6, Claimant and Respondent are also parties to an illegal contract and illegal transactions and

Respondent cannot come into this tribunal and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transactions.

**1. AIRBNB Is A Real Estate Broker Under California Business and Professions Code Sec. 10130**

California Business and Professions Code Section 10130 states, "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department . . . ." "The purpose of the licensing requirement is to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners." *Schantz v. Ellsworth* (1971) 19 Cal.App.3d 289, 292–293

Section 10131 futher states: a real estate broker is defined as, among other things, "a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: . . . (b) leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities. (Bus. & Prof. Code, § 10131, subd. (b); *Zappas v. King Williams Press, Inc.* (1970) 10 Cal.App.3d 768, 772. The purpose of the licensing requirement is to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners. *Schantz v. Ellsworth* (1971) 19 Cal.App.3d 289, 292–293. Airbnb's contracts specifically state that they collect rents for the rental of Airbnb Host's property to Airbnb guests and Plaintiff has stated this as well and has rented to short and long term guests. (McCluskey Decl.¶4-5.) thus since Airbnb is collecting rents they are clearly a real estate broker under Section 10131 of the Bus. & Prof. Code. Airbnb also solicits listings of places for rent which independently qualifies Airbnb as a real estate broker under 10131.

**2.   AIRBNB Inc. Is Not Exempt From The Requirements of Section 10130**

Section 10131.01 exempts from these restrictions: (1) the manager of a hotel [or] motel, or (2) any person or entity .. who . . . solicits or arranges, or accepts reservations or money, or both,for transient occupancies described in Cal. Civil Code § 1940(b)(1)-(2)]. Id. Bus. & Prof. Code,

*§10131.01.* Section 1940(b) describes such occupancies as transient occupancies in a hotel, motel, residence club, or other facility that is subject to certain taxes, as well as occupancies at a hotel or motel where the innkeeper retains a right of access. Cal. Civ.Code § 1940(b).

According to Airbnb's website, the City of Los Angeles imposes a 14% transient occupancy tax on the listing price (including cleaning fees) for stays of 30 nights or less. (Ex. C) Airbnb collects and remits the City transient occupancy tax [thus it is not Airbnb subject to the tax nor paying such taxes but it is the Airbnb hosts such as Claimant who are]. Id. Airbnb is not the manager of a hotel or motel nor is Airbnb an entity who solicits or arranges, or accepts reservations or money, or both, for transient occupancies described in Cal. Civ. Code §1940(b)(1). Nor is Airbnb negotiating or accepting reservations for transient occupancies in a hotel, motel, residence club, or other facility that is subject to certain taxes, as well as occupancies at a hotel or motel where the innkeeper retains a right of access as described in Cal. Civ. Code § 1940(b)(2). Since Airbnb Inc. does not meet any of the exceptions under Cal. Civ. Code § 1940(b)(1) or (2), Section 10131.01 does not exempt Airbnb Inc. from the restrictions of Cal. Bus & Prof. Code § 10130. Therefore Airbnb Inc. is unlawfully engaging in the business of and under the capacity as a real estate broker without a real estate license.

### 3. AIRBNB Inc. Is Not Exempt from The Licensing Requirement Under Section 10130 For The Finder's Exception

Claimant is not aware of any case in California involving a short term rental operator such as Airbnb ever claiming the "finder's exception" to the requirements under Section 10130. Assuming arguendo Airbnb is able to qualify for this exception, the rule is well established that one who simply finds and introduces a prospective lessee to a person who wishes to lease his property need not be licensed by the state in order to recover a commission for his services. Such an intermediary is protected by the so-called 'finder's exception to the real estate licensing act." *Zappas v. King Williams Press, Inc. (1970)*, 10 Cal.App.3d 768, 772. "The finder is a person whose employment is limited to bringing the parties together so that they may negotiate their own contract, and the distinction between the finder and the broker frequently turns upon whether the intermediary has been invested with authority or duties beyond merely bringing the parties together,

1   usually the authority to participate in negotiations." *Tyrone v. Kelley* (1973) 9 Cal.3d 1, 9. The

2   doctrine has been judicially developed by a line of decisions dating back to *Shaffer v. Beinhorn*

3   *(1923)*, 190 Cal. 569, 573-574. Shaffer arose under the Real Estate Brokers' Act (Stats. 1919, ch.

4   605, p. 1252). The defendant in that case, a licensed real estate broker, agreed to pay plaintiffs two-

5   thirds of the gross commission to which he would be entitled upon the sale of a certain ranch if they

6   found or introduced him to a buyer of the ranch. Plaintiffs, who were not real estate brokers,

7   thereafter procured a prospective buyer with whom defendant negotiated and consummated a sale of

8   the  ranch. Plaintiffs sued defendant for the promised portion of his commission. In holding the trial

9   court erred in sustaining a demurrer to the complaint, the Supreme Court held that the complaint did

10  not show that plaintiffs were engaged in the business, or acting in the capacity of a real estate broker

11  or salesman, since the contract with defendant required them only to find or introduce defendant to a

12  prospective purchaser who ultimately became the actual buyer of the ranch. (Cf. *Davis v. Chipman*

13  *(1930)* 210 Cal. 609, 619-620)

14          The distinction between a finder and a broker is also significant in determining whether the

15  intermediary in a transaction stands in a confidential relationship to one of the parties to the

16  transaction ( *Batson v. Strehlow (1968)*, 68 Cal.2d 662, 669)All of these cases are relevant in the

17  determination of whether AIRBNB comes within the finder's exception to the Real Estate Law's

18  licensing requirements. Airbnb collects rents from guests and remits the money less their fees to

19  Airbnb hosts thus Airbnb's conduct is not limited to bringing hosts and guests together and Airbnb

20  also manages relationships between hosts and guests after a booking as evident in Airbnb

21  investigating and wrongfully deleting Claimant's Airbnb Super Host account.  Airbnb Inc. is also

22  not subject to this exception as Airbnb stated its decision to terminate Claimant's account were

23  justified by Claimant's conduct and in Airbnb's answer they gave specific examples of provisions

24  they determined Claimant violated based upon her conduct thus Airbnb is performing acts beyond

25  just bringing hosts and guests together. (See Airbnb's answering statement at A 10).  Therefore,

26  Airbnb is not exempt from any licensing requirements under the "finder's exception".

27  //

28  //

**4. Since The Central Purpose of The Contracts Between Claimant And Airbnb Inc. Are Tainted With Illegality Such Contracts Cannot Be Enforced**

Since the central purpose of the contract between Veronica and Airbnb Inc. is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate. *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 996. *Loving & Evans,* supra, 33 Cal.2d 603, involved a dispute about money due on a construction contract for remodeling done on appellant Blick's premises. *Id.* at 604. In his pleading before the arbitrator, Blick claimed as a "separate and special defense" that respondent contractors could not legally recover because they were unlicensed in violation of the Business and Professions Code. *Id. at 604-605.* The arbitrator found in respondents' favor, and they moved to confirm the award. *Id. at 605.* Blick objected to the award on grounds that one of the respondents was unlicensed in violation of the code. *Id.* The trial court granted the motion to confirm, but that judgment was reversed by the appellate court. Id. at 615. Although the court recognized the general rule that the merits of a dispute before an arbitrator are not subject to judicial review, the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award. (Id. at p. 609.)

In *All Points Traders, Inc. v. Barrington Associates (1989)* 211 Cal.App.3d 723, Barrington Associates, an investment banking firm, sought payment of a commission for its assistance in negotiating the transfer of all the corporate stock of appellant All Points Traders. *Id. at 727*. The arbitrator found in Barrington's favor and the trial court confirmed the award. *Id*. Nevertheless, the Court of Appeal reversed, finding the commission agreement between the parties was invalid and unenforceable in its entirety because Barrington did not hold a real estate broker's license as required by Business and Professions Code section 10130 et seq. Id. at 737-738. The appellate court reasoned that "[t]he Legislature selected the specific means to protect the public and has expressed its intention in section 10136 [prohibiting an unlicensed broker from bringing an action to collect a commission]," and that "[e]nforcement of the contract for a *commission would be in direct contravention of the statute and against public policy." Id*. at 738.

Version 6 of the agreement clearly defines any and all duties between Claimant and Respondent when Claimant was to act as a "Host" or a "Guest" and the central purpose of the contracts governed the terms for "Hosts" and "Guests" which all involve Airbnb acting as a real estate broker. Since the central purpose of Version 6 is tainted with illegality, the contract as a whole cannot be enforced. Version 7 of the agreement also clearly defines any and all duties between Claimant and Respondent when Claimant was to act as a "Host" or a "Guest" and the central purpose of the contracts governed the terms for "Hosts" and "Guests" which all involve Airbnb acting as a real estate broker. Since the central purpose of Version 7 is also tainted with illegality, the contract as a whole cannot be enforced either. The agreements had a single, unlawful object and violation of the real estate licensing statutes so permeates the entire agreements as to render the entire agreements void.

**IV. CONCLUSION**

As the foregoing shows, there are no issues of material fact of the illegality, invalidity and unenforceability of the Agreements. All of claimant's causes of action arise out of illegal transactions with Airbnb which is not a proper subject matter for arbitration.  Claimant respectfully requests that the Court grant the Motion for Summary Judgment and order the arbitration proceedings concluded so Claimant can pursue her claims in the trial court and for other such relief the Arbitrator deems appropriate.

Dated: April 28, 2019

Respectfully submitted,
Michael Mogan (304107)
LAW OFFICE OF MICHAEL MOGAN P.C.
4470 West Sunset Blvd, #90256
Los Angeles, CA 90027
Telephone: (949) 424-5237
mm@michaelmogan.com

By: *Michael Mogan*
Michael Mogan
Attorney for Plaintiff