# EXHIBIT 3

Exhibit 3
-48-

1  MICHAEL MOGAN (304107)
   LAW OFFICE OF MICHAEL MOGAN P.C.
2  4470 W. SUNSET BLVD., #90256
3  LOS ANGELES, CA 90027
   Telephone: (949) 612-1868
4  mm@michaelmogan.com
   Attorney for Plaintiff
5  VERONICA MCCLUSKEY

**FILED**
San Francisco County Superior Court

JAN 0 5 2018

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

6

7          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8        **COUNTY OF SAN FRANCISCO—UNLIMITED JURISDICTION**

9

10 VERONICA MCCLUSKEY

11         Plaintiff,

12         v.

13

14 AIRBNB, INC, a Corporation and
15 AIRBNB PAYMENTS, INC., and
   DOES 1-20
16         Defendants.

17 _____

) CASE No. **CGC - 1 8 - 5 6 3 5 2 8**
) **COMPLAINT FOR DAMAGES:**
) 1. **NEGLIGENCE**
) 2. **VIOLATIONS OF CONSUMERS**
)    **LEGAL REMEDIES ACT CIVIL**
)    **CODE 1750, ET SEQ.**
) 3. **INTENTIONAL INFLICTION OF**
)    **EMOTIONAL DISTRESS**
) 4. **BREACH OF FIDUCIARY DUTY**
)
)
)
)

**BY FAX**
ONE LEGAL LLC

18

19              **JURY TRIAL DEMANDED**

20              **UNLIMITED JURISDICTION**

21              **DAMAGES EXCEED $25,000**

22

23 Plaintiff VERONICA MCCLUSKEY (hereinafter referred to as

24 "Veronica" or "Plaintiff"), an individual hereby submits her

25 Complaint against Defendants AIRBNB Inc., a Corporation and

26 AIRBNB Payments Inc., a Corporation, and DOES 1-20 alleges as

27 follows:

                    PLAINTIFF'S COMPLAINT FOR DAMAGES

                                    1

**Exhibit 3**
**-49-**

**PARTIES**

1. Plaintiff, at all relevant times, was an individual residing in Los Angeles county in the State of California and had her own separate Airbnb rental operation in downtown Los Angeles and Nevada.

2. Defendant Airbnb, Inc.'s principal place of business is 888 Brannan Street, San Francisco, CA 94103.

3. Defendant Airbnb Payments, Inc.'s principal place of business is 888 Brannan Street 4th Floor, San Francisco, CA 94103.

4. Plaintiff is unaware of the true names and capacities of those Defendants sued herein as DOES 1-20, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said Defendants, when the same have been ascertained, together with such other charging allegations as may be appropriate.

**JURISDICTION AND VENUE**

5. Plaintiff is informed and believes, and thereon alleges, that at all relevant times Defendants AIRBNB Inc and AIRBNB Payments Inc. were and are California entities, business form unknown, authorized to conduct business, and conducting business in the State of California, with a principal place of business located in the City of San Francisco, County of San Francisco, in the state of California. Venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code § 395 as at all relevant times Defendants AIRBNB Inc. and AIRBNB Payments

PLAINTIFF'S COMPLAINT FOR DAMAGES

2

Exhibit 3
-50-

1  Inc's principal place of business is at 888 Brannan Street, San
2  Francisco, CA 94103.

3  **BACKGROUND AND FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

4  6. Defendants Airbnb, Inc. and Airbnb Payments, Inc. are
5  collectively referred to as "Airbnb" hereafter.

6  7. Plaintiff is informed and believes, and thereupon
7  alleges, that each Defendant designated as a DOE is responsible,
8  negligently or in some other actionable manner, for the events
9  and happenings hereafter referred to, and caused injuries and
10 damages proximately thereby to plaintiff, as hereinafter
11 alleged, either through said Defendants' own negligent conduct,
12 or through the conduct of their agents, servants or employees,
13 or in some other manner as yet unknown.

14 8. Plaintiff is informed and believes, and thereupon
15 alleges, that at all times mentioned herein, defendants and each
16 of them, were the agents, servants, employees, independent
17 contractors and/or joint venturers of their co-defendants and
18 were, as such, acting within the scope, course and authority of
19 said agency, employment, contract, and/or joint venture, or
20 acting in the concert, and that each and every defendant, as
21 aforesaid, when acting as a principal, was negligent in the
22 selection, hiring, training, control, and supervision of each
23 and every other defendant as an agent, servant, employee,
24 independent contractor and/or joint venture.

25 9. At some or all relevant herein, each defendant was the
26 agent of each other defendant, each defendant was acting within
27 the court and scope of that agency, each defendant ratified the

PLAINTIFF'S COMPLAINT FOR DAMAGES

3

Exhibit 3
-51-

1    conduct of the other Defendants with actual and/or constructive

2    knowledge of such conduct, and each defendant was subject to and

3    under the supervision of the other defendant.

4      10. At all relevant periods, Airbnb offers to lease or

5    rent, solicits listings of places for rent, solicits for

6    prospective tenants, negotiates the lease of a real estate

7    property, solicits Airbnb hosts and cohosts to work together and

8    collects rents from real property.

9      11.  For all purposes, Airbnb acts as a real estate broker.

10   It is more than just an internet platform where lessor and

11   lessee meet as well as an internet platform where Airbnb hosts

12   and Airbnb cohosts meet.

13     12.  In particular, Airbnb suggests, recommends, and

14   advises its lessors on how to effectively lease or rent his/her

15   place by describing various characteristics of the real estate

16   property including but not limited to the number of bedrooms

17   available, the number of bathrooms available, the size of the

18   real estate property available, any features of the real estate

19   property, any amenities onsite, any local attractions or things

20   to do in the area, and how to get around town.

21     13.  Airbnb also offers professional photography services

22   to its lessors for the sole purpose of advertising their real

23   estate property on Airbnb's website to promote the lease or

24   rental of the property.

25     14.  Airbnb also suggests; recommends, and advises its

26   lessor on leasing or rental price based on their real estate

27   property's geographic location, size, the leasing price of a

PLAINTIFF'S COMPLAINT FOR DAMAGES

4

Exhibit 3
-52-

1  similar real estate property in the community, and other
2  factors.

3      15.  If a lessor does not have enough rental bookings,
4  Airbnb also suggests, recommends, and advises the lessor on how
5  to drive more traffic to his or her web page to promote more
6  rental bookings. Airbnb also suggests, recommends, and advises
7  the lessor to hire an Airbnb cohost to promote more rental
8  bookings.

9      16. Airbnb also enables experienced AIRBNB hosts to work
10 for other AIRBNB hosts as cohosts so the cohosts can take care
11 of guests and logistics so Airbnb hosts don't have to. Airbnb
12 has a web portal to connect potential cohosts with AIRBNB hosts
13 looking to hire a cohost.

14     17.  Once a potential lessee requests a booking, Airbnb
15 collects an advance payment or rent from the real property on
16 behalf of its lessor at the time of the booking for the entire
17 duration of the lease, and distributes the payment or rent to
18 its lessor within 24 hours after the lessee's arrival. If an
19 AIRBNB cohost is working for a AIRBNB host, the cohost then
20 receives their payment after the lessor is paid.

21     18.  Despite engaging in these enumerated activities,
22 Airbnb does not hold a broker's license in violation of Section
23 10130 of California Business and Professions Code.

24     19. Unlike other pure platform websites such as Craiglist,
25 Airbnb creates a false sense of security to its lessors, cohosts
26 and lessees.

27

PLAINTIFF'S COMPLAINT FOR DAMAGES

5

Exhibit 3
-53-

20. Airbnb held and continues to hold itself out to the public, Airbnb hosts and Airbnb cohosts as "a trusted community marketplace for people to list, discover, and book unique accommodations around the world."

21. Airbnb ranks its lessors and issues "Superhost Badges." This creates an appearance that these lessors endorsed by Airbnb are safer and more reliable options.

22. Airbnb also issues a green check mark right next to the word "Verified" to certain lessors. This also creates an appearance that these lessors are verified by Airbnb to be safer and more reliable options.

23. Airbnb takes out "Host Protection Insurance" that acts "as primary insurance and provides liability coverage to hosts" or lessors.

24. Airbnb also provides "AIRBNB Host Guarantee" which protects lessors against damages to their own possessions or unit of property damage by their lessees in listings. Airbnb also provides free photography services to its lessors to make the listing look professionally managed and maintained.

25. Airbnb uses words including but not limited to "trust," "safety," "home," "trusted community" repeatedly on its website to create a false sense of security.

26. Based on information and belief, Airbnb does not perform background checks on its lessors or lessees.

27. Based on information and belief, Airbnb also does not disclose to its lessors and lessees that it does not perform background checks on its lessors or lessees.

PLAINTIFF'S COMPLAINT FOR DAMAGES

6

Exhibit 3
-54-

28. At all relevant times, Airbnb held and continues to hold itself out to the public, Airbnb hosts and Airbnb cohosts as "a trusted community marketplace for people to list, discover, and book unique accommodations around the world." Notably, while Plaintiff worked as a cohost for William Hendricks and Roxanne Hendricks at their property located at 312 West 5th Street #705, Los Angeles, CA 90013 ("Unit #705"), this natural presumption proved to be incorrect.

29. Essentially, Airbnb provides a service to the public for financial remuneration whereby they connect Airbnb hosts and Airbnb cohosts and Airbnb connects lessors of real property or "hosts", i.e., individuals who own or are in possession of single family homes, apartments, etc., with third parties and lessees intending to rent these properties.

30. In doing so, Airbnb:

a) solicits listings of places for rent;

b) creates a platform whereby third parties may view a property by showcasing the property online, thereby soliciting for prospective tenants;

c) creates a platform where Airbnb hosts and Airbnb cohosts can solicit opportunities to work together in the real estate market;

d) creates a sense, albeit a false one, of trust and safety as between the parties;

e) serves as the broker as between the host and third party for the rental of these properties;

f) collects the applicable fees for the host; and

PLAINTIFF'S COMPLAINT FOR DAMAGES

7

Exhibit 3
-55-

g) addresses any problems that arise with respect to the rental of the properties.

31. Despite engaging in these enumerated activities, Airbnb does not hold a broker's license in compliance with section 10130 of California's Business and Professions Code.

32. Moreover, and at all relevant times, in establishing an individual as a lessor within the Airbnb system, little to no effort is undertaken by Airbnb by way of a vetting process with respect to these hosts to ensure the safety and welfare of the third parties renting properties through Airbnb or Airbnb cohosts who decide to work for other AIRBNB hosts.

33. As a general proposition and at all relevant times in the instant matter, Airbnb:

a) fails/failed to engage in any meaningful background checks of the lessors;

b) fails/failed to adequately and fully verify personal details of the lessors;

c) fails/failed to verify information and details about the property being rented out by the lessors; and

34. Airbnb, as operator, manager, and/or entity in full or joint control of the leasing process of the property, owed a duty to Plaintiff to exercise reasonable care under the circumstances to avoid causing personal injury.

35. Based upon information and belief, Plaintiff had her own active AIRBNB host profile for over 2 years and obtained the status as "Superhost" enabling Plaintiff to also work as a cohost for other AIRBNB hosts.

PLAINTIFF'S COMPLAINT FOR DAMAGES

8

Exhibit 3
-56-

36.    In or around May 2017 William Hendricks (hereafter "William") and Roxanne Hendricks (hereafter "Roxanne") contacted Plaintiff through AIRBNB's web portal and expressed an interest in hiring Plaintiff to work for William and Roxanne as a co-host so that Plaintiff could assist them in managing their short-term rental property located at 312 West 5th Street #705, Los Angeles, CA 90013 (hereafter "unit 705").

37. Based upon information and belief, at the time Plaintiff first contacted William through AIRBNB's website portal, Airbnb listed William's name as "Bill Hendricks" with a "Superhost" badge next to his name.

38. Based upon information and belief, Airbnb also put a green check mark and the word "Verified" next to "Bill Hendricks" name.

39. Based upon information and belief, William Hendricks is actually "Bill Hendricks" on AIRBNB.

40.    Based upon information and belief, William's profile indicated he had obtained AIRBNB's Superhost Badge.

41. At the time of Plaintiff accepting the position as cohost from William and Roxanne, Plaintiff relied on AIRBNB's representations that it is "a trusted community" and that "Bill Hendricks" is a safer and more reliable lessor and host due to his "Superhost" status and the fact that he had a green check mark and the word "Verified" next to his name.

42.    On or around May 17th 2017 both William and Roxanne hired Plaintiff as a cohost through AIRBNB's co-host program

PLAINTIFF'S COMPLAINT FOR DAMAGES

9

Exhibit 3
-57-

1  so that Plaintiff could work for William and Roxanne as a cohost
2  in managing their property located at 312 West 5th Street #705,
3  Los Angeles, CA 90013 (hereafter "unit #705").
4      43. Payments for William and Roxanne's rentals booked
5  through Airbnb's website by Airbnb guests are made to Airbnb
6  through their secured website for the rental of the property in
7  Unit #705.
8      44. Payments for the work Plaintiff performed for William
9  and Roxanne was made through Airbnb through their secured
10 website for any amounts due Plaintiff for cohosting William and
11 Roxanne's property at unit #705.
12     45.  Based upon information and belief, at all times
13 relevant to the claims alleged herein, William and Roxanne owned
14 the condominium unit at 312 West 5th Street #705, Los Angeles,
15 CA 90013 and William and Roxanne rented the unit on Airbnb as a
16 short-term rental.
17     46.  At all times relevant to the claims alleged herein,
18 Airbnb knew that Plaintiff had her own rental property listed on
19 Airbnb's website for Plaintiff's apartment in Los Angeles and
20 Nevada.
21     47.  As part of Plaintiff's Airbnb co-host duties, William
22 and Roxanne asked Veronica to open letters and packages that
23 were delivered to unit #705 since William and Roxanne spent most
24 of their time outside of Los Angeles and Plaintiff was asked by
25 William and Roxanne if Plaintiff could ship some of the mail
26 received at unit 705 to William and Roxanne's home in Iowa.
27

PLAINTIFF'S COMPLAINT FOR DAMAGES

10

Exhibit 3
-58-

48.    In or around June 2017 William and Roxanne asked
Plaintiff to take photos of the windows in unit #705 as well as
other photos of the condition of their unit during the course of
Plaintiff's employment for William and Roxanne as a co-host.

49.    Based upon information and belief, William made
arrangements with an employee of the property management firm
that manages the building located at 312 West 5th Street #705 in
Los Angeles, CA to accumulate William and Roxanne's mail
and packages that arrived when no one was present in unit #705
to accept mail and deliveries.

50.    On June 6th 2017, Plaintiff travelled to William and
Roxanne's condominium unit at 312 West 5th Street #705, Los
Angeles, CA 90013 to manage their short term rental property as
a cohost and Plaintiff picked up the mail and packages that were
being held by an employee of the property management firm that
manages the building at 312 West 5th Street in Los Angeles,
California. William specifically asked Plaintiff to pick up and
open the mail and packages that were waiting for Willian and
Roxanne in their building at 312 West 5th Street in Los Angeles.

51.    Plaintiff opened a box addressed to William
that had arrived in USPS Priority mail packaging and Plaintiff
discovered the box, based upon information and Belief, was
filled with the drugs OxyContin, Morphine and Molly (See
Exhibits 1 and 2) and this shipment arrived on or before June
6th, 2017. William admitted the drugs belonged to him and
William stated to Plaintiff he enjoys pain pills. (See exhibit

PLAINTIFF'S COMPLAINT FOR DAMAGES

11

Exhibit 3
-59-

1  3-1). The sender of the package was listed as Lanard Design Inc,
2  2011 Auto Center Drive, Oxnard, CA 93036. (See Exhibit 1)

3       52. William asked Plaintiff to meet an individual William
4  described as a friend "Inmer" in unit #705 "one day" so
5  Plaintiff could give this individual William's drugs and
6  Plaintiff refused to meet this individual in the Unit #705 or
7  anywhere. (See exhibit 3-1)

8       53. William also apologized to Plaintiff for William's
9  actions and he stated he would have a friend pick up the USPS
10 Priority Mail package and its contents when Plaintiff was not
11 there. (See Exhibit 3-1).

12      54.  Based upon information and belief, the Drug
13 Enforcement Agency labels Molly a Schedule 1 controlled
14 substance as the drug is considered to have a high potential for
15 abuse and no accepted use in medical treatment thus the mere
16 possession of the drug is illegal under Federal and California
17 criminal statutes.

18      55. Based upon information and belief, accidental ingestion
19 of even one dose of OxyContin, especially by children, can
20 result in a fatal overdose.

21      56. Plaintiff stated to Airbnb soon after leaving Unit #705
22 on June 6th, 2017 that Plaintiff wanted to quit her position as
23 Airbnb cohost for William and Roxanne and Airbnb stated they
24 wanted Plaintiff to provide William and Roxanne enough notice.
25 Plaintiff feared that her Airbnb Superhost would be de-activated
26 by Airbnb if she quit immediately.

27

PLAINTIFF'S COMPLAINT FOR DAMAGES

12

Exhibit 3
-60-

57. Plaintiff stated to William and Roxanne soon after leaving Unit #705 on June 6th, 2017 that Plaintiff wanted to quit her position as an Airbnb cohost for William and Roxanne and William and Roxanne stated they needed time to find another cohost to manage #705. As late as June 16th, 2017 William stated to Plaintiff that William wanted Plaintiff to continue to work for William and Roxanne until July 19th 2017 despite what had already transpired on and after June 6th 2017 as alleged herein.

58. The picture of the shipment and its contents was sent by Plaintiff to AIRBNB in June 2017 as were text messages William sent Plaintiff on June 6, 2017. (See exhibit 7)

59. At no time since on or before June 6th 2017 did AIRBNB or William or Roxanne warn or inform Plaintiff that there would be deliveries of drugs including but not limited to OxyContin, Morphine and Molly or any drugs to their condominium unit #705 while Plaintiff was acting as an AIRBNB co-host.

60. At no time since on or before June 6th 2017 did AIRBNB, William or Roxanne inform Plaintiff that there would be drugs including but not limited to OxyContin, Morphine and Molly or any drugs present in their condominium unit #705 while Plaintiff was present in the condominium unit #705 acting a co-host.

61. At no time since on or before June 6th 2017 did AIRBNB , William or Roxanne inform Plaintiff that she would be opening packages and mail that included deliveries of drugs including but not limited to OxyContin, Morphine and Molly to their

PLAINTIFF'S COMPLAINT FOR DAMAGES

13

Exhibit 3
-61-

1  condominium unit #705 while Plaintiff was present in the

2  condominium unit #705 acting a co-host.

3      62.   Once William stated to Plaintiff he had a bad habit

4  and after Plaintiff discovered the USPS package and its contents

5  (attached as Exhibit 1 and 2), Plaintiff became concerned that

6  these shipments of drugs to unit #705 were a recurring event and

7  Plaintiff was concerned she might become a suspect by law

8  enforcement, arrested or possibly harmed by the presence of

9  drugs in unit #705 and Plaintiff notified AIRBNB of her

10  concerns.

11     63.   Because William also stated that his friend Inmer

12  would come by and remove the drugs from the unit, Plaintiff

13  became concerned that this individual had access to unit #705

14  where Plaintiff worked regularly as a cohost. William also

15  stated he had a buddy who stopped in the apartment to pick up

16  the mail. Since William had someone else involved in the

17  transportation of William's drugs, this made Plaintiff feel

18  unsafe as this individual could be a drug dealer, someone who

19  used the drugs received by William and/or someone involved in

20  William and Roxanne's drug distribution network and Plaintiff

21  also became concerned for any Airbnb guests in unit #705.

22     64.   Plaintiff left the entire contents of the USPS

23  priority mail box which included William's drugs at William and

24  Roxanne's condominium unit #705 on June 6th 2017 and Plaintiff

25  left the premises. As a result, the incidents Plaintiff endured

26  as an Airbnb cohost for William in June 2017 and thereafter have

27

PLAINTIFF'S COMPLAINT FOR DAMAGES

14

Exhibit 3
-62-

1  derailed Plaintiffs life and Plaintiff is emotionally and
2  psychologically traumatized.
3      65.   Plaintiff contacted Airbnb multiple times to inform
4  Airbnb of the events that occurred in William and Roxanne's #705
5  regarding Plaintiff's discovery of drugs and William and
6  Roxanne's conduct and Airbnb took no appropriate action under
7  the circumstances. Veronica contacted the Los Angeles police
8  department and the Los Angeles police department became
9  immediately concerned and commended Plaintiff's actions and they
10 even stated they admire Plaintiff's decision to come forward and
11 wish more people would do as she did. (See Exhibit 4)
12     66.   Based upon information and belief William and Roxanne
13 become aware that Plaintiff had contacted Airbnb and the Los
14 Angeles police to inform AIRBNB and the Los Angeles police
15 department about the delivery of drugs Plaintiff discovered on
16 June 6, 2017 in Unit #705.
17     67.    William stated to AIRBNB on June 17th, 2017 that
18 Plaintiff is paranoid to the point of refusing to be alone in
19 the apartment with any male, especially Hispanics and other non-
20 whites because Plaintiff refused to meet William's friend Inmer
21 alone in the condominium unit #705 so Inmer could remove the
22 contents of the drug delivery. William claimed Plaintiff's
23 refusal to meet Inmer was definitely not consistent with
24 AIRBNB's discrimination policy
25 https://www.airbnb.com/help/article/1405/airbnbs-
26
27
                    PLAINTIFF'S COMPLAINT FOR DAMAGES

                               15

**Exhibit 3**

1    nondiscrimination-policy--our-commitment-to-inclusion-and-
2    respect, which William stated he was thrilled to sign. (Exhibit
3    5-2)

4    68. William did not realize perhaps that Plaintiff refused
5    to meet Inmer alone in William's Unit #705 because Plaintiff was
6    not comfortable being alone in an apartment with William's drug
7    courier and Plaintiff was also not interested in being involved
8    in any drug related activities in violation of various Federal
9    and state criminal statutes and for various other reasons.

10    69. William further stated to Airbnb on June 17th 2017 that
11    he was Vice President for a publicly traded company and a former
12    startup CEO who has always admired Airbnb. William also stated
13    to Airbnb on June 17, 2017 that he doesn't fit the profile of
14    any sort of drug dealer, smuggler, etc. and that he doesn't need
15    the money. William also stated to Airbnb on June 17th 2017 "I'm
16    running the risk of being extremely gauche here, but there are
17    very serious matters on the line..., I [William Hendricks] make
18    around $350K a year and own 9 properties (only 1 STR
19    regrettably)." (See Exhibit 5-1).

20    70. William further stated to Airbnb on June 17th 2017
21    "What motivation would I [William Hendricks] have to run a drug
22    smuggling ring? Are drug smuggling rings even real outside of
23    the movies?" (See Exhibit 5-1).

24    71. William further stated to AIRBNB on June 17th 2017 that
25    William and his wife were in Iowa, and William falsely stated
26    that Victoria [Plaintiff]is the only person in the unit
27    regularly enough to run a drug smuggling ring although William's

PLAINTIFF'S COMPLAINT FOR DAMAGES

16

**Exhibit 3**
**-64-**

1  name was on the USPS delivery (See Exhibit 1) and despite the

2  fact he admitted the drugs were his and that he would have his

3  friend Inmer remove them from Unit #705. (See Exhibit 5-1).

4      72. William further stated to AIRBNB on June 17th 2017 that

5  his former property manager, Rommy, would attest to William's

6  character as Rommy managed the unit for William and Roxanne for

7  6 months and they never had any issues and William further

8  stated to Airbnb on June 17th 2017 that Rommy's father, is a

9  huge real estate developer in downtown LA. (See Exhibit 5-2).

10     73. William further stated to Airbnb on June 17th 2017

11  "Drugs never came up in my [William's] conversation with her

12  [Plaintiff] yesterday. She [Plaintiff] sent me a picture of some

13  pills, as I'm sure she [Plaintiff]sent you, too, it looked like

14  a handful at most that came in the mail. I [William] don't know

15  if that picture is real or photo-shopped. If it's real I

16  [William] don't know what those pills are supposed to be. They

17  better be worth about $1,000 each to make this headache worth it

18  - again, I [William] have thousands of dollars of booked and

19  potential reservations be canceled on me [William]. What is my

20  [William's] incentive supposed to be here and how much are those

21  pill supposed to be worth? Just for the sake of argument, let's

22  say the picture is real, without commenting on what the pills

23  might be. She [Plaintiff] opened my [William's] mail without my

24  permission. That is a federal felony. I [William] asked her

25  [Plaintiff] to check the mailbox and send me pics of the

26  envelopes, not open my private correspondence. If you take it

27  one step further and say they are a controlled substance, is

PLAINTIFF'S COMPLAINT FOR DAMAGES

17

Exhibit 3
-65-

1   that small amount in the picture enough to "smuggle" and make
2   money? I [William] don't know enough about drug smuggling to
3   comment, but it seems unlikely, unless they're made of solid
4   gold..." (See Exhibit 5-3). William further stated to AIRBNB on
5   June 17th 2017 that William's first priority is getting my unit
6   re-listed and servicing his and AIRBNB's joint customers. (See
7   Exhibit 5-3).

8       74.   Based upon information and belief, after AIRBNB
9   discussed the statements made by William listed in paragraghs 67
10  up to and including paragraph 73 above and various other
11  statements and after AIRBNB's employees spoke to William, Airbnb
12  disabled Plaintiff's profile and Airbnb cancelled all of
13  Plaintiff's upcoming reservations in an amount to be proven at
14  trial which Plaintiff had with Airbnb in the coming weeks and
15  months for Plaintiff's apartment in Los Angeles and Nevada and
16  Airbnb has refused to reimburse Plaintiff for the lost revenue
17  for the reservations that were cancelled and Plaintiff has been
18  damaged in an amount to be proven at trial.

19      75.   Plaintiff was an Airbnb host as well as an Airbnb
20  cohost when Airbnb disabled Plaintiff's profile in June 2017.

21      76.   Since on or about June 19th 2017, Airbnb has refused
22  to reactivate Plaintiff's Superhost profile which contained
23  numerous positive reviews enabling Plaintiff to rent her Las
24  Vegas and Los Angeles property and work as a cohost for AIRBNB
25  Hosts. When Airbnb disabled Plaintiff's profile, Plaintiff was
26  in discussions with multiple Airbnb hosts so Plaintiff could
27  work as a cohost for these Airbnb hosts. As a result of Airbnb

PLAINTIFF'S COMPLAINT FOR DAMAGES

18

Exhibit 3
-66-

1  disabling Plaintiff's profile and preventing Plaintiff from
2  working with these additional Airbnb hosts as a cohost,
3  Plaimtiff has been damaged in an amount to be proven at trial.
4      77.  Based upon information and belief, after Airbnb and
5  its employees discussed the statements made by William listed in
6  paragraphs 67 up to and including paragraph 73 above as well as
7  other statements made by William, and after Airbnb spoke to
8  William on the phone, Airbnb decided to reactivate William's
9  profile and Airbnb granted William his "Superhost" status again
10  and Airbnb and William have been servicing their joint customers
11  ever since.
12     78. Although Airbnb did not respond to Plaintiff's
13  concerns, the Los Angeles police department have commended
14  Plaintiff's actions. On June 24th, 2017 the Honorable Officer
15  Rudy Gonzalez of the Los Angeles Police Department also took the
16  time to email AIRBNB in an attempt to get Plaintiff's Airbnb
17  account re-activated. Officer Rudy Gonzalez even stated that he
18  admired Plaintiff's decision to come forward and he wished more
19  people would do as Plaintiff did and he said he would assist in
20  any way; however, based upon information and belief Airbnb
21  ignored Officer Rudy Gonzalez's statements and instead followed
22  William's recommendations on how to handle Plaintiff's Airbnb
23  account. See Exhibit 4 for Rudy Gonzalez's email to Airbnb.
24     79. Defendants Airbnb owed a duty to use reasonable care in
25  their conduct with regard to the health, safety, and rights of
26  Plaintiff. It was foreseeable and probable that Plaintiff would
27  suffer severe emotional distress from Defendants' conduct if

Exhibit 3
-67-

1  Plaintiff worked as an Airbnb cohost for Airbnb Superhost
2  William and Roxanne. Defendants were negligent by breaching the
3  duty of care they owed to Plaintiff because Defendants Airbnb
4  exposed Plaintiff to a working environment that contained drugs
5  and individuals whom transport drugs.

6      80. Defendants Airbnb owed a duty to use reasonable care in
7  their conduct with regard to the health, safety, and rights of
8  Plaintiff. It was foreseeable and probable that Plaintiff would
9  suffer severe emotional distress from Defendants' conduct if
10 Plaintiff was forced to continue to work as an Airbnb cohost for
11 A Superhost William and Roxanne after Plaintiff stated to Airbnb
12 Plaintiff wanted to quit and complained to AIRBNB about the drug
13 shipment Plaintiff discovered on June 6, 2017. Defendants were
14 negligent by breaching the duty of care they owed to Plaintiff
15 because Defendants Airbnb had now continuously exposed Plaintiff
16 to a working environment on and after June 6, 2017 that
17 contained drugs and individuals whom traffic drugs.

18     81.  Plaintiff suffered severe emotional distress and had
19 to check into a hospital emergency room and is receiving ongoing
20 medical treatment for this emotional distress as a result of
21 what occurred during Plaintiffs work as an Airbnb cohost for
22 William as aforesaid.

23     82.  Defendants Airbnb were a substantial factor in causing
24 Plaintiff's severe emotional distress. As a direct and proximate
25 cause of the tortious, unlawful, and wrongful acts of Airbnb as
26
27

PLAINTIFF'S COMPLAINT FOR DAMAGES

20

**Exhibit 3**
**-68-**

1    aforesaid, Plaintiff has suffered past and future special
2    damages and past and future general damages in an amount
3    according to proof at trial.

4        83. Plaintiff has been damaged emotionally and financially,
5    including but not limited to emotional suffering from emotional
6    distress and ridicule, as well as loss of income. As a direct
7    and proximate result of Defendants conduct, Veronica has
8    suffered and continues to suffer shock, anger, mental anguish,
9    frustration, humiliation and emotional distress.

10       84.   Based upon information and belief, in engaging in the
11   conduct as hereinabove alleged, Airbnb acted with malice, fraud,
12   and oppression and/or in conscious disregard of Plaintiff's
13   health, rights, and well-being, and intended to subject
14   Plaintiff to unjust hardship, thereby warranting an assessment
15   of punitive damages and exemplary damages in an amount
16   sufficient to punish Airbnb and deter others from engaging in
17   similar conduct.

18       85. Plaintiff is deeply scared and angry about the fact
19   that her profile was disabled by Airbnb as a result of her
20   decision to contact the Los Angeles Police Department and also
21   as a result of her complaining to Airbnb about William and as a
22   result of the conduct of Airbnb.

23       86. Plaintiff remains very much concerned to this day about
24   her personal safety when staying in a property not her own, and
25   this concern has negatively impacted her level of enjoyment in
26   travel-related activities.

27

PLAINTIFF'S COMPLAINT FOR DAMAGES

21

Exhibit 3
-69-

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Against Defendants AIRBNB)**

87. Paragraphs 1 through 86 are realleged as though fully set forth herein.

88. Defendant Airbnb created a business enterprise whereby they lease, offer to lease, place for rent, solicit listings of places for rent, solicit prospective tenants, solicit their own hosts to work with other hosts as cohosts and/or collect rent from real property in exchange for financial remuneration.

89. Airbnb's business enterprise depends upon bringing two or more parties together for the purpose of leasing a particular piece of property including efforts by Airbnb to bring two or more Airbnb hosts together for the purpose of cohosting a particular piece of property.

90. These affirmative acts by Airbnb of bringing lessors, Airbnb Hosts and Airbnb co-hosts and lessees of real property together through its Internet portal places upon Airbnb an obligation of ordinary care.

91. In failing to engage in little, if any, investigation of lessors before allowing lessors to post their property on the Internet portal, Airbnb created and continues to create a foreseeable risk of harm to parties such as this Plaintiff who relied upon Airbnb's assertion that it has created "a trusted community marketplace for people to list, discover, and book unique accommodations around the world."

PLAINTIFF'S COMPLAINT FOR DAMAGES

22

Exhibit 3
-70-

92. In this instance, Airbnb, upon information and belief, conducted no background investigation of lessors and AIRBNB hosts William and Roxanne, nor did the Defendants engage in any reasonable evaluation of these Lessors and Airbnb hosts William and Roxanne prior to posting their property upon the Internet portal, nor did Airbnb have reasonable policies and procedures in place in order to protect Airbnb cohosts who would give consideration to assisting with the management of the rental of William's property.

93. Such failure created a foreseeable risk of harm from the lessors and Airbnb hosts William and Roxanne for this Plaintiff, and, in fact, Plaintiff was subjected to a hostile, unsafe, intimidating, and humiliating environment during the time Plaintiff worked on the property in Unit #705.

94. AIRBNB breached its obligation of ordinary care for these delineated reasons.

95. As a direct and proximate result of Airbnb's misfeasance, Plaintiff has suffered special damages to be proven at the time of trial.

96. As a direct and proximate result of Airbnb's misfeasance, Plaintiff has suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress, and other damages to be proven at the time of trial.

97. Plaintiff, upon information and belief, alleges that Airbnb committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiff's rights.

PLAINTIFF'S COMPLAINT FOR DAMAGES

23

Exhibit 3

-71-

1  Accordingly, Plaintiff is entitled to recover punitive damages
2  in an amount according to proof.

3      98. Airbnb created a business enterprise whereby they
4  lease, offer to lease, place for rent, solicit listings of places
5  for rent, introduce Airbnb hosts to other Airbnb cohosts, solicit
6  prospective tenants and/or collect rent from real property in
7  exchange for financial remuneration.

8      99. Airbnb held out and continues to hold out to the
9  public, Airbnb hosts and Aorbnb cohosts that it is a "trusted
10 community" to attract the public to its website' Airbnb created
11 an appearance that its lessors are safer and more reliable by
12 issuing "Superhost" badge, allowing some lessors to have the
13 green check mark with the word "Verified" right next to their
14 names, offering free professional photography services to
15 lessors' real estate property to make it look professionally
16 managed and maintained, using words including but not limited to
17 "trust," "safety," "home," "trusted community" repeatedly on its
18 website to create a false sense of security.

19     100. As a real estate broker, Airbnb also owes a statutory
20 and common-law duty to conduct a reasonably competent and
21 diligent inspection of the real estate property and to disclose
22 to prospective lessees and cohosts all facts materially
23 affecting the desirability of the property that an investigation
24 would reveal.

25     101. Airbnb breached the duty by its failure to investigate
26 William, knowing that Plaintiff, was going to work as a cohost
27 at William's unit #705. Airbnb also breached the duty by its

PLAINTIFF'S COMPLAINT FOR DAMAGES

24

Exhibit 3
-72-

1  failure to investigate William after what transpired on June 6th,
2  2017 as aforesaid, knowing that Plaintiff, was going to have to
3  continue to work as a cohost for William in unit #705.

4      102. In addition, despite engaging in the activities
5  delineated within the California Business and Professions Code
6  Section 10131, Airbnb does not hold a broker's license pursuant
7  to Section 10130 of the California Business and Professions
8  Code.

9      103. The purpose of the statute is to protect the public
10 from incompetent and untrustworthy individuals engaging in the
11 enumerated activities within the real estate field.

12     104. Plaintiff falls within the class of people sought to
13 be protected by the statute.

14     105. Plaintiff suffered physical and psychological
15 injuries.

16     106. Defendants' breach is a substantial factor in causing
17 Plaintiff's injuries.

18     107. Airbnb held out and continues to hold out to the
19 public, Airbnb hosts and Airbnb cohosts as "a trusted and used
20 words including but not limited "trust," "safety," community"
21 repeatedly on its website to create a false sense of security to
22 describe its real estate service. Airbnb also issued and
23 continues to issue "Superhost" badges and green check marks with
24 the word "Verified" right next to its lessors and other features
25 on its website to create a false sense of security.

26

27

PLAINTIFF'S COMPLAINT FOR DAMAGES

25

**Exhibit 3**

**-73-**

1    108. The purpose of these features on the website was to
2   induce any person who reads it to feel safe to serve as an
3   Airbnb cohost and lease real estate property from Airbnb.
4    109. Plaintiff believed and relied upon the representations
5   made by Airbnb on Airbnb's website.
6    110. In reliance upon the false and/or misleading
7   representations made by Airbnb, Plaintiff accepted an offer from
8   William and Roxanne to work as an Airbnb cohost.
9    110. Plaintiff suffered physical and psychological
10  injuries.
11   111. Airbnb's false and/or misleading advertisement is a
12  substantial factor in causing Plaintiffs injuries.
13   112. Airbnb leased, offered to lease, placed for rent,
14  solicited listings of places for rent, solicited AIRBNB cohosts
15  to work for other Airbnb hosts, solicited prospective tenants
16  and/or collected rent from real property, thereby falling within
17  the definition of a real estate broker within §10131 of the
18  California Business and Professions Code.
19   113. Real estate brokers must be licensed in the State of
20  California pursuant to § 10130 of the California Business and
21  Professions Code.
22   114. The purpose of these statutes, i.e., the statutes
23  requiring those falling within the definition of a broker to
24  hold a broker's license, is to protect the public from
25  incompetent and untrustworthy individuals engaging in the
26  enumerated activities within the real estate field.
27

PLAINTIFF'S COMPLAINT FOR DAMAGES

26

Exhibit 3
-74-

115. Plaintiff falls within the class of people sought to be protected by these aforementioned statutes.

116. Despite engaging in the activities delineated within § 10131 of the California Business and Professions Code, Airbnb does not hold a broker's license pursuant to § 10130 of the California Business and Professions Code.

117. In fact, Airbnb's unlicensed actions are prohibited under § 10130 of the California Business and Professions Code.

118. In failing to engage in little, if any, investigation of lessors before allowing lessors to post their property on the Internet portal and allow William Hendricks to solicit other AIRBNB Hosts to work as a cohost, Airbnb created and continues to create a foreseeable risk of harm to parties such as this Plaintiff who rely upon Airbnb's assertion that it has created "a trusted community marketplace" to work as a cohost.

119. In this instance, Airbnb, upon information and belief, conducted no background investigation of the Lessors and Airbnb hosts William and Roxanne, nor did the Defendant engage in any reasonable evaluation of William and Roxanne prior to posting their property upon the Internet portal, nor did Airbnb investigate William and Roxanne after Plaintiff's complaints about William and Roxanne and their property as aforesaid, nor did Airbnb have reasonable policies and procedures in place in order to protect cohosts or those who would give consideration to the rental of William and Roxanne's property and any guests who would stay at the property.

PLAINTIFF'S COMPLAINT FOR DAMAGES

Exhibit 3
-75-

1    120. Such failure created a foreseeable risk of harm from

2    lessors William and Roxanne for this Plaintiff, and, in fact,

3    Plaintiff was subjected to a hostile, intimidating, and

4    humiliating environment during her work as a cohost at unit 705.

5    121. Such unscrupulous conduct lies at the heart of

6    protecting the public from unlicensed individuals and/or

7    companies carrying on activities that fall within the role of a

8    licensed broker.

9    122. As a direct and proximate result of Airbnb's failure

10    to adhere to state licensing requirements, Plaintiff has

11    suffered special damages to be proven at the time of trial.

12    123. As a direct and proximate result of Airbnb's failure

13    to adhere to state licensing requirements, Plaintiff has

14    suffered general damages, including, but not limited to,

15    humiliation, shock, embarrassment, intimidation, physical

16    distress and injury, fear, stress, and other damages to be

17    proven at the time of trial.

18    123. Plaintiff, upon information and belief, alleges that

19    Airbnb committed the acts delineated herein maliciously and

20    oppressively in conscious disregard for Plaintiff's rights.

21    Accordingly, Plaintiff is entitled to recover punitive damages

22    in an amount according to proof.

23    124. As a direct and proximate result of Airbnb's failure

24    to adhere to state licensing requirements, Plaintiff has

25    suffered special damages to be proven at the time of trial.

26    125. As a direct and proximate result of Airbnb's failure

27    to adhere to state licensing requirements, Plaintiff has

PLAINTIFF'S COMPLAINT FOR DAMAGES

28

Exhibit 3
-76-

1  suffered general damages, including, but not limited to,
2  humiliation, shock, embarrassment, intimidation, physical
3  distress and injury, fear, stress, and other damages to be
4  proven at the time of trial.
5      126. Plaintiff, upon information and belief, alleges that
6  Airbnb committed the acts delineated herein maliciously and
7  oppressively in conscious disregard for Plaintiff's rights.
8  Accordingly, Plaintiff is entitled to recover punitive damages
9  in an amount according to proof.
10              **SECOND CAUSE OF ACTION**
11        **VIOLATIONS OF CONSUMERS LEGAL REMEDIES ACT**
12              **CIVIL CODE 1750, ET SEQ.**
13             **(Against Defendants AIRBNB)**
14     127. Plaintiff refers to paragraph 1 - 126 above and
15  incorporates them into this cause of action as though fully set
16  forth herein.
17     128. Airbnb also includes unconscionable provisions in its
18  terms of service in a contract with its users including
19  Plaintiff. Airbnb also includes unconscionable provisions in its
20  cohost terms of service in a contract with its users including
21  Plaintiff.
22     129. Airbnb violated Consumers Legal Remedies Act by (1)
23  making false and misleading representations of the quality of
24  the services that it provides, (2) making advertisement that is
25  misleading or likely to deceive a reasonable consumer, host and
26  cohost, (3) engaging in unlawful practice of engaging in the
27  business of, act in the capacity of, advertise as, or assume to

PLAINTIFF'S COMPLAINT FOR DAMAGES

29

**Exhibit 3**
-77-

1  act as a real estate broker or a real estate salesperson without
2  first obtaining a real estate license, in violation of Section
3  10130 of the California Business and Professions Code; and (4)
4  including unconscionable provisions in its contract with its
5  users and cohosts.

6      130. Plaintiff has relied on the misrepresentation and
7  false and misleading advertisement.

8      131. Plaintiff has suffered damage as a result of the
9  unlawful and deceptive practice.

10              **THIRD CAUSE OF ACTION**
11     **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
12            **(Against Defendants AIRBNB)**

13     132. Plaintiffs refer to paragraph 1 – 131 above and
14  incorporate them into this cause of action as though fully set
15  forth herein.

16     133. Defendants exposing Plaintiff to William's drug
17  shipment activities in #705 is outrageous—it is so extreme that
18  it goes beyond all possible bounds of decency.

19     134. Defendants terminating Plaintiff's Super Host account
20  as a result of Defendants own actions and at the recommendation
21  of William is outrageous—it is so extreme that it goes beyond
22  all possible bounds of decency.

23     135. The deactivation of Plaintiffs Superhost profile
24  demonstrates an intention to cause or a reckless disregard of
25  the probability of causing emotional distress to this Plaintiff.

26     136. Defendants exposing Plaintiff to William's drug
27  shipment activities in #705 demonstrates an intention to cause

PLAINTIFF'S COMPLAINT FOR DAMAGES

30

Exhibit 3
-78-

1  or a reckless disregard of the probablilty of causing emotional

2  distress to this Plaintiff.

3      137. Defendants Airbnb intended or acted with reckless

4  disregard of the probability that Plaintiff would suffer

5  emotional distress.

6      138. Plaintiff has suffered severe psychological and

7  emotional distress.

8      139. Airbnb's conduct was a substantial factor in causing

9  Plaintiffs severe emotional distress.

10     140. As a proximate and direct result of Airbnb's conduct,

11 Plaintiff has suffered special damages to be proven at the time

12 of trial.

13     141. As a proximate and direct result of Airbnb's conduct,

14 Plaintiff has suffered general damages, including, but not

15 limited to, humiliation, shock, embarrassment, intimidation,

16 physical distress and injury, fear, stress, and other damages to

17 be proven at the time of trial.

18     142. Plaintiff, upon information and belief, alleges that

19 Airbnb committed the acts delineated herein maliciously and

20 oppressively in conscious disregard for Plaintiff's rights.

21 Accordingly, Plaintiff is entitled to recover punitive damages

22 in an amount according to proof.

23                    **FOURTH CAUSE OF ACTION**

24                    **BREACH OF FIDUCIARY DUTY**

25                  **(Against Defendants AIRBNB)**

26  143. Plaintiff refers to paragraph 1-142 above and incorporates

27 them into this cause of action as though fully set forth herein.

**Exhibit 3**
-79-

144. Airbnb created a business enterprise whereby they lease, offer to lease, place for rent, solicit listings of places for rent, solicit prospective tenants, introduce Airbnb hosts and Airbnb cohosts to one another and/or collect rent from real property in exchange for financial remuneration.

145. In doing so, Airbnb acted as a real estate broker for Plaintiff.

146. Airbnb owes a statutory and common law fiduciary duty: the highest good faith and undivided service and loyalty to Plaintiff relating to fostering Plaintiff's status as an Airbnb Host and relating to fostering the cohost relationship between Plaintiff and any Airbnb host who employed Plaintiff as a cohost.

147. Airbnb breached this fiduciary duty by failing to protect Plaintiff from William's actions, subjecting Plaintiff to an unreasonable risk of fear from being exposed to drugs; failing to disclose that Plaintiff would be exposed to William's actions and drugs in a property listed on Airbnb; by misrepresenting to Plaintiff a false sense of security by creating an appearance that William's rental property #705 was a safer and more reliable option because he was a "Superhost" and was "Verified" by Airbnb and that Airbnb was a "a trusted community." Plaintiff relied on the false representations in accepting an offer to work as a cohost for William.

148. Plaintiff has suffered emotional and psychological damages.

PLAINTIFF'S COMPLAINT FOR DAMAGES

32

Exhibit 3
-80-

149. Defendants Airbnb's conduct was a substantial factor in causing Plaintiff's harm.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, each of them, as follows:

1. For general and noneconomic damages according to proof;

2. For special and economic damages according to proof;

3. For punitive damages according to proof;

4. For costs of suit;

5. For restitution;

6. For attorneys' fees as allowed by law;

7. Pre-judgment interest; and

9. For such further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

**Plaintiff hereby demands a trial by jury.**

Dated: January 3, 2018

Respectfully submitted,
Michael Mogan (304107)
LAW OFFICE OF MICHAEL MOGAN P.C.
4470 West Sunset Blvd, #90256
Los Angeles, CA 90027
Telephone: (949)612-1868
mm@michaelmogan.com

By: _____
Michael Mogan

Attorney for Plaintiff
VERONICA MCCLUSKEY

PLAINTIFF'S COMPLAINT FOR DAMAGES

33

**Exhibit 3**
**-81-**

# EXHIBIT

# 1

---

Exhibit 3

-82-



Exhibit 3
-83-

# EXHIBIT



Exhibit 3
-84-



Exhibit 3
-85-

# EXHIBIT

# 3

Exhibit 3
-86-

Always google voice

████████-2782:

Roger on google voice

The only diff between a "primary" and "cohost" is who's phone number is in the listing. I'm not asking for additional work, just making it easier on everyone. We can chat later, have a meeting in 5 min

Veronica McCluskey:

I have 3 properties to check in today in 3 hours so today's too busy. I'd like to keep it as co host like my others thanks :)

████████-2782:

OK. Do you mind if I change my phone number to your google voice number? I'm still getting contacted by guests frequently because I'm the host

IMG_6661.PNG.png

Have you checked the mail recently? There's one piece of non junk i was hoping to receive while we were there. Thanks!

Veronica McCluskey:

The white envelope is hidden in the linen closet. You'll have to get someone to send it for you. I opened it by accident as I thought it was the USB. I don't feel comfortable sending drugs in the mail with my name attached :( sorry. I could get deported for being associated with any time of pain pills if they are not administrated for me.

IMG_4798.JPG

████████-2782:

I can understand that! That's not what I was asking about, although I do enjoy pain pills

Sorry about that

Was actually looking for my medical marijuana card. From Dr. Bob Blake

No need to apologize, that's my bad!

I'll have my friend Inmer meet you one day to grab that

Veronica McCluskey:

I spoke to my dad about it and even being in possession of something like that could get my deported instantly :( just not wanting to be apart of any of that whatsoever

I was wondering how to bring it up with you

████████-2782:

Yeah that's not cool

Exhibit 3-1

**Exhibit 3**



Veronica McCluskey:

Not really a comfortable thing to bring up

Hahah thought maybe you guys were smuggling drugs lol

And using Airbnb as a front

-2782:

Lol

I wish ;)

Just a bad habit

Let me see if my friend Inmer can meet you tomorrow while your cleaning if that's OK? He's a super nice guy, but I know you are a private person. He has nothing to do with those, but will get them out of there

Actually

Let's just get him a code

That way you don't have to be involved. Set a door code for him tomorrow?

Veronica McCluskey:

It'll stay at 1974 :)

I'll change Monday to 1975

Thank you for understanding

Just don't wanna be involved with that kinda stuff

-2782:

No worries at all. Sorry again!

It's in the wooden closet (vs mirrored) ?

Veronica McCluskey:

Yes

Wooden

-2782:

Thanks. I'll coordinate with you when my friend can swing by so you don't have to be there if you don't want to be

Veronica McCluskey:

Yeah I don't want any part in it thanks.

Exhibit 3-2

**Exhibit 3**
**-88-**

+████-2782:

👍

Very embarrassing. Needless to say, it won't happen again!

My friend is available to come by in a bit

When will you be there (so he can NOT come then) ?

Veronica McCluskey:

I'm going to clean tomorrow.

So I won't be there today.

+████-2782:

Perfect

1974?

Veronica McCluskey:

Yes :)

+████-2782:

All set

He's still there but it'll leave with him

Veronica McCluskey:

Great

+████-2782:

He's out now FYI

Unrelated :-)... any luck with the airbnb photog? I'm anxious to show off the new wares

Veronica McCluskey:

I already explained to Roxanne all that :)

I've reached my limit of 3, I reached out etc etc

There needs to be better communication I can't be repeating the same thing twice

I spoke to her in detail about pics

Exhibit 3-3

**Exhibit 3**
**-89-**

# EXHIBIT

## 4

Exhibit 3
-90-

**From:** Rudy Gonzalez <  >
**Date:** June 24, 2017 at 9:43:21 AM PDT
**To:** "LEOinfo@airbnb.com" <LEOinfo@airbnb.com>
**Subject: Veronica McCluskey**

To whom it may concern,
Good morning. My name is Officer Rudy Gonzalez with the Los Angeles Police Department.

It was brought to my attention that you needed some information from me regarding a former employee
of yours: Veronica McCluskey.

Miss McCluskey advised me that she has found herself in a difficult situation with your company. She
advised me that your company is requesting a report number to support her claims and clear her name of
making false accusations and also to have her funds processed.

I will be happy to assist in any way I can.

I received information from a Narcotics Officer regarding information received from Miss McCluskey. That
officer advised me on 6/19/2017

The information was given to me because i work an investigative unit. I then called Miss McCluskey
regarding her contact with my Department.

Miss McCluskey was very sincere and genuinely concerned with what she observed and felt morally
obligated to contact the Police. I admire her decision to come forward and wish more people would do as
she did.

Miss McCluskey also advised me that your company wanted a report number as proof. Unfortunately,
because she did not call 911, an incident number was not assigned. When I receive information from a
concerned citizen, it is just that... information and no report or incident numbers are assigned at that
point.

If you wish to speak to me further regarding this matter, please feel free to email me and provide me with
a telephone number where I may contact you. I can assure you that Miss McCluskey only did what she felt
in her heart was the right the right thing to do.

Thank you for your time and I look forward to speaking with you to resolve this issue and clear Miss
McCluskey from this unfortunate situation.

Thank you

Los Angeles Police Department
Gang and Narcotics Division
Parcel Squad
Police Officer III
Rudy Gonzalez 37014

Exhibit 4

**Exhibit 3**
**-91-**

# EXHIBIT

## 5

Exhibit 3
-92-



    

Oddly, when she first became our host, she was quite amused because the Airbnb app made it appear as if 15% of all of our property's revenue was just paid to her (I'd be happy to share that message, too), gleefully stating, "I'm rich!" In that conversation, she noted that occasionally the app has glitches.

Early on, she asked if we had "stolen" a pool photo from our building from her profile, quipping, "you can get delisted for that." She said she had already accused someone of doing this with this pool photo. Well...we did not use her photo, and based on that conversation, I was surprised when I realized she had posted a photo of our condo on her Instagram page (without our consent).

There definitely seems to be a history of retaliation via accusations that cause delisting.

Many thanks,
-Roxanne Hendricks

On Jun 17, 2017, at 9:12 PM, Bill Hendricks <████████████████> wrote:

    Hi Karmella,

    Thanks for taking the time to deal with this. I do hope we can resolve this expediently. The guest
    Andrew, who was going to check in tomorrow canceled and found another place. That's $302 lost and
    counting. Lia, who wants to do a 40 day, $4,500 booking is waiting patiently for us to be reactivated.
    If I lose the $4,500 booking, it'll be a huge bummer.

    Here's the additional information from my perspective. A lot of what I told you on the phone, but good
    to have it in writing. My wife and co-host, Roxanne, is cc'ed. She's way more put together than I am.
    Her only fault is being married to me for 12 years :)

    First a bit of character defense and common sense on my part:

    - I'm a 40 year old tech professional who's been in ZERO legal trouble in my life.
    - I have a flawless track record with Airbnb as a host, although I did have a host accuse me of not
    using a coaster when I stayed at her place in Connecticut....
    - In addition to the references and reviews, you'll see that - I'm Vice President for publicly traded
    company. I'm a former startup CEO, so I've always admired Airbnb :-). My LinkedIn profile -
    https://www.linkedin.com/in/billhendricks/. I have a few references in my profile. I can get several
    more if that helps. 1. not trying to brag, I'm pointing out that:  1) I don't fit the profile any sort of drug
    dealer / smuggler, etc.. 2) I don't need the money
    - I'm running the risk of being extremely gauche here, but there are very serious matters on the line...
    I make around $350K a year and own 9 properties (only 1 STR regrettably). What motivation would I
    have to run a drug smuggling ring? Are drug smuggling rings even real outside of the
    movies? When I lived in California all I needed was medical marijuana card and I was set :-)
    - Let's do a thought experiment... how exactly would I be running a drug smuggling ring thru the
    Airbnb in LA from my home in Cedar Rapids, Iowa? Are my guests mules or customers, buyers or
    sellers? Who is doing the dealing? My wife and I are in Iowa. Victoria is the only person in the unit
    regularly enough to do such a thing. This snark isn't aimed at you, it's to point out the absurdity of her
    claim... Her claim, btw, that she made only after she abandoned her post and quit during the middle of
    a stay over a different, imagined problem (that I was withholding her $) making us all look

$Exhibit\ 5-1$

**Exhibit 3**
**-93-**



unprofessional, inc. Airbnb.

- My former property manager, Rommy Sjy, will attest to my character. Rommy managed the unit for us for ~ 6 months and we never had any issues. His father, by the way, is is a huge real estate developer in downtown LA. All of the buildings that begin with "SB" like our "SB Grand", "SB Loft" and "SB Spring" were developed by Rommy's father, ███████.

Let's talk about her character for a moment before we get further into the facts. On the phone I informed you hat she requested we text her only once a month or so. That simply isn't going to work for me - I'm entrusting a very expensive asset to someone I just met. Trust can be earned, but I'm not going to give anyone the keys to the car and not check in on them. We have one friend in LA, we live in Iowa.

- She **says she been** de-listed at least once in a place she either hosted or co-hosted
- She **says she been** caught with a "Nest like" camera in a place she either hosted or co-hosted. **This is illegal in addition to highly inappropriate.** If this is true, I think she should be exiled from the Airbnb family for it alone.
- She does not user her real name on Airbnb, which violates your Terms of Service, I believe
- **She's bragged about her ability to get people de-listed, including us, as both a competitive and vindictive measure**
- She's paranoid to the point of refusing to be alone in the apartment wit any male, especially Hispanics and other non-whites. Definitely not consistent with https://www.airbnb.com/help/article/1405/airbnb-s-nondiscrimination-policy--our-commitment-to-inclusion-and-respect, which I was thrilled to sign.

OK, enough of that. Hopefully your systems can corroborate the fist few points. I'm repeating what **she told us**, so if she's a pathological liar...

Here are the facts:

Veronica McCluskey (who goes by the fake name Victoria Whithall on Airbnb, contact info: ███████████████, v█████████@████████.com, (███) ███-████, ((███) ███-████) started co-hosting for us on 5/20/17. She was co-hosting for us until the night of 6/16/17 (yesterday), when she abruptly quit (0 days notice, down from 30 days to 2 weeks as our lack of compatibility was becoming more evident. She quit in the middle of a guest's stay - Jeremy - she said she went over to the unit to drop off her keys with the guest (again not a good look for any of us). My wife and I scrambled today to find a cleaning service so today's guest has a good experience.

**It's been clear for a little while we weren't very compatible**, but she just started working for us on May 20th so we wanted to give her a chance to succeed. We wanted her to succeed - finding a good co-host is hard (no offense). Here are some of the reasons she was not working well for us:
1. She had a much lower standard of customer service than I'm accustomed to
2. A good example of this is the two guests in row tried to book the unit on 6/16, point # 6 below. She also refused to call customers when they were struggling with the lockbox, rather just said things like "I don't know what to tell you..." sometimes to guests that had just gotten off long international flights. She only gave guests the check in code (for the code to the deadbolt that she recommended and we purchased) the morning of their check-in, not he 1-2 days that is standard.
3. She told us we should only contact her approximately once per month and flew off the handle with a text storm when I asked her one question she and Roxanne had discussed previously
4. The exact scope of her duties was hard to nail down. She claimed to manage the listing but clearly hadn't read it because she was unaware of the lead time requirement. She said she would help with price (tweaking your smart pricing algo) but never did, and I believe (OK, non-fact alert) that part of the reason she was so upset yesterday was she wasn't happy at the price I'd set when it looked it was going to be empty.

**Yesterday, Friday 6/16, things snowballed out of control:**
5. **She accused me of stealing from her by turning off her co-hosting payments**, something that is a:) demonstrably false, b) curious because she has been paid for every guest since she started on 5/19. **See attached screen shots for proof.** And again, what is my motivation? I live in Iowa and the unit is almost always booked. How does not paying her advance my cause? Rhetorical question obviously.
6. She was out of town Friday 6/16 while unit was available. Jeremy, despite not knowing how late "late checkin" would be, booked it at ~ 1 PM (so 26 hours before check in). She again tried to turn he

Exhibit 5-2

**Exhibit 3**
**-94-**



and James (2nd guest trying to book the unit) away multiple times saying *"Would have to be a late check in unfortunately so not sure if you're ok with this"* **without specifying a time.** Jeremy booked anyway and she still wouldn't commit to a time. Come to find out she was out of town, unable to perform her duties.

7. She quit with 0 days notice in the middle of a stay with a guest, dropping her keys off at the unit while the guest was staying in it - making us all look unprofessional

8. She tried to turn away 2 guests, Jeremy and James who both wanted to book the unit on 6/16-9. She accused me of stealing from her by withholding her co-host payments, which is demonstrably false - see first 2 screen shots attached. Somehow the setting for co-host payments got turned off (not by me as you can see in the activity log), but as you can see in the transaction history, she was still getting paid. Or if she wasn't, I had no way of knowing.

10. She then tried to extort me based on this misunderstanding / non-issue, saying she would not clean the unit or handle the check-in until I fixed an issue I didn't cause. See attached screen shots, the activity log, transaction log from your site and a text message conversation showing the extortion / negligence of duties

11. My wife then did some online research and saw the attached Instagram photo Veronica took from our unit, breaking the "No photo shoots" rule we've had in place from day 1.

Drugs never came up in my conversation with her yesterday. She sent me a picture of some pills, as I'm sure she sent you, too, it looked like a handful at most that came in the mail. I don't know if that picture is real or photo-shopped. If it's real I don't know what those pills are supposed to be. They better be worth about $1,000 each to make this headache worth it - again, I have thousands of dollars of booked and potential reservations be canceled on me. What is my incentive supposed to be here and how much are those pill supposed to be worth?

Just for the sake of argument, let's say the picture is real, without commenting on what the pills might be. **She opened my mail without my permission. That is a federal felony.** I asked her to check the mailbox and send me pics of the envelopes, not open my private correspondence. If you take it one step further and say they are a controlled substance, is that small amount in the picture enough to "smuggle" and make money? I don't know enough about drug smuggling to comment, but it seems unlikely, unless they're made of solid gold, instead of let's say Ativan, which I have a legal prescription for.

**Thanks for reading my novel! Obviously my first priority is getting my unit re-listed and servicing our joint customers.** After that, I ask you to consider:
- Veronica should not be paid for Jeremy, the guest from 6/16 as she quit in the middle of his stay. In fact, I do not authorize another dime of my $ to go to her. I assume removing her as co-host will accomplish this?
- Consider if you want her representing Airbnb's brand in the market. I certainly do not.
- To be compensated for all lost revenue, ideally from Veronica's co-hosting fees - this is not Airbnb's fault. So far that figure is $302 (from Andrew who was to check in on 6/18 but had his reservation canceled) but will be grow every day this is unresolved I am sure.
Multiple supporting documents are attached. I have more, she picked the wrong person to slander. I assume you don't need me to retrieve info from your messaging app.

Best Regards,
Bill Hendricks
cc: Roxanne Hendricks

------ Original Message ------
From: response@airbnb.com
To: "Bill Hendricks" <bill@_____>
Sent: 6/17/2017 1:40:30 PM
Subject: Airbnb: Airbnb Trust and Safety

$E x h i b i t \ 5 - 3$

**Exhibit 3**
**-95-**

# EXHIBIT

## 6

**Exhibit 3**
**-96-**



**Karmella, Jun 17, 13:40 CDT:**

Hi Bill,

This is Karmella with Airbnb's Trust and Safety Team. We spoke on the phone.

First of all, thank you for taking the time to speak with me. Hearing from your perspective is helpful.

The safety of our community is our priority so we take reports like this seriously. I will be reaching out to you within the next 48 HOURS to inform you of the results of our investigation.

These situations are rare and we value people like you on our platform. So when these incidents occur we want you to know and feel our support.

If you have anything further to add or any concerns you would like to discuss, please let us know by responding directly to this email.

Kind regards,

Karmella
www.airbnb.com/help.

THIS EMAIL IS A SERVICE FROM AIRBNB CUSTOMER EXPERIENCE



THIS EMAIL IS A SERVICE FROM AIRBNB CUSTOMER EXPERIENCE.

For more information visit our _Help Center_

<Activity Log.png>

<Transaction History.png>

<Airbnb rule showing no photo shoots.png>

<Veronica doing a photo shoot in our apartment.png>

<Shared earnings SNAFU.eml>

<chat log.zip>



Exhibit 6

**Exhibit 3**
-97-

# EXHIBIT

## 7

Exhibit 3
-98-

On Jun 17, 2017, at 1:20 AM, "response@airbnb.com" <response@airbnb.com> wrote:

# airbnb

**Alex, Jun 17, 03:19 CDT:**

Hi Victoria,

My name is Alex, and I'm a specialist in the Airbnb's Trust & Safety team. Thank you for reporting this incident to us. My colleague from the same timezone as you will be reaching out to you soon to provide better timezone assistance. Meanwhile, please feel free to reach out to me for further inquiries and information.

First of all, please contact the local authorities if you feel your personal safety is threatened as they are best equipped on ground to assist you. Any information inquires from the law enforcement officer for your case can be directed to:LEOinfo@airbnb.com. This communication channel is reserved for legal inquiries from law enforcement agencies only.

Second, we have received the 3 screenshots of the offsite messages between you and Bill, as well as the 3 photos of the alleged drug and postage. We will definitely be investigating into this case. That said, please forward any more information you feel pertinent to this matter.

Lastly, it would be great if you could further provide detail to exactly when this occurred and during which reservation if there was one going on.

Thank you once again for reaching out to us for assistance. Please do not hesitate to call the local authorities for any immediate security threats. My colleague will be reaching out to you soon.

Best regards,

Alex

www.airbnb.com/help

THIS EMAIL IS A SERVICE FROM AIRBNB C-DOM-2-NYTK, 319



THIS EMAIL IS A SERVICE FROM AIRBNB C-DOM-2-NYTK, 319
*Help Center*

Exhbit 7

**Exhibit 3**
**-99-**